**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| IN RE: HARLEY-DAVIDSON AFTERMARKET PARTS MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | **CASE NO. 2:23-MDL-3064-WCG**<br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br>**JURY DEMAND**<br>**Electronically Filed** |

## TABLE OF CONTENTS


NATURE OF THE ACTION ..... 1

THE PARTIES ..... 2

JURISDICTION AND VENUE ..... 5

BACKGROUND ..... 6

- A. Harley-Davidson Motorcycles ..... 6
- B. Harley-Davidson's Warranty ..... 7
- C. Warranty Coverage ..... 8
- D. The Parts Universe ..... 9

TRADE AND COMMERCE ..... 9

I. ANTITRUST VIOLATIONS ..... 10

RELEVANT MARKET ..... 10

- A. The New Market for American-Made Large, Roadgoing Motorcycles ..... 10
- B. The Compatible Parts Market ..... 14
- C. Impossibility of Lifecycle Pricing ..... 21
- D. Geographic Markets ..... 26
- E. Barriers to Entry ..... 26

HARLEY'S MARKET POWER ..... 28

HARLEY'S ANTICOMPETITIVE TYING CONDUCT ..... 29

INJURY TO COMPETITION ..... 29

II. WARRANTY VIOLATIONS ..... 30

MAGNUSON-MOSS WARRANTY ACT ..... 30

- The FTC Investigation ..... 31
- Restrictions Associated with Harley-Davidson's Limited Warranty ..... 33
- Violations of the Magnuson-Moss Warranty Act ..... 35

CLASS ACTION ALLEGATIONS ..... 37

- A. Rule 23(a) Prerequisites ..... 39
- B. Rule 23(b) Requirements ..... 41

III. NATIONWIDE CAUSES OF ACTION ..... 41

COUNT I WISCONSIN ANTITRUST LAW WISCONSIN STAT. §§133.01 *ET SEQ.* (ON BEHALF OF MULTISTATE ANTITRUST CLASS) ..... 42

COUNT II MAGNUSON-MOSS WARRANTY ACT (“MMWA”) 15 U.S.C. § 2301, *ET SEQ.* (ON BEHALF OF ALL CLASS MEMBERS) ... 43

IV. VIOLATIONS OF COMMON LAW ... 45

V. VIOLATIONS OF STATE STATUTES ... 51

PRAYER FOR RELIEF ... 226

JURY DEMAND ... 228

Plaintiffs bring this class action for injunctive relief against Harley-Davidson Motor Company Group, LLC and Harley Davidson Motor Company Inc. ("Harley-Davidson", "Harley", or "Defendants") on behalf of themselves and a Class (defined below) of all other similarly situated indirect purchasers under Rule 23 of the Federal Rules of Civil Procedure, the Wisconsin Antitrust Law, the Magnuson-Moss Warranty Act (15 U.S.C. § 2301), as well as damages pursuant to state antitrust and consumer protection laws and common law claims allowing indirect-purchaser remedy under this Court's supplemental jurisdiction against Defendants.

## NATURE OF THE ACTION

1. This is an antitrust and consumer class action directed at Harley-Davidson's anticompetitive and fraudulent conduct: Harley-Davidson used its warranty to try to force Harley owners to use its own parts, instead of the many quality aftermarket parts available for its motorcycles. It did so in plain contravention of law, including the Magnuson-Moss Warranty Act. This conduct constitutes a violation of federal and state antitrust laws.

2. Harley-Davidson is one of the most recognizable vehicle brands in the world, and indeed, one of the oldest. The company will celebrate its 120th year in operation this year, and accounts for approximately half of all roadgoing motorcycles with engine displacements in excess of 601cc.

3. Because of the longevity and ubiquity of its motorcycles, and because of the loyalty of the Harley-Davidson faithful and their willingness to keep older Harley-Davidsons on the road for generation after generation and to customize them in seemingly infinite ways, there is a vast aftermarket for parts to repair and customize Harleys.

4. However, Harley-Davidson itself makes approximately 15% of its considerable annual revenue from parts. In order to maximize its parts revenue and profit, Harley-Davidson has

used its warranty to try to force those Harley owners under warranty to use only Harley-Davidson's own parts.

5. In June 2022, the Federal Trade Commission intervened to halt Harley-Davidson's unlawful practice. The Federal Trade Commission, however, lacks the authority to recover consumers' damages. Because Harley-Davidson illegally tied its motorcycles and, specifically, the factory warranties that go with them to its parts, Harley-Davidson's parts have been overpriced, forcing the company's loyal following to pay this cost, which they should not have. In this litigation, Plaintiffs seek to recoup from Defendant that overpayment.

## THE PARTIES

6. Plaintiffs Jacqueline and Robert Assise are residents of Cook County, Illinois, and purchased a new 2019 Tri-Glide Harley-Davidson motorcycle on July 12, 2019. They purchased one or more Harley-Davidson branded parts while under the Limited Warranty.

7. Plaintiff Edward Heymer is a citizen of California residing in Murrieta, Riverside County. Mr. Heymer purchased his 2019 Harley-Davidson Iron 883 in or about March 2019, from Riverside Harley-Davidson located in Riverside, California. Mr. Heymer also purchased one or more Harley-Davidson branded parts on from Riverside Harley-Davidson while under the Limited Warranty.

8. Plaintiff Vladimir Lipkin is a resident of Cook County, Illinois, and purchased a 2021 Harley-Davidson Road Glide Special motorcycle in July 2021. He purchased one or more Harley-Davidson branded parts from City Limits Harley-Davidson in Palatine, Illinois and Lake Shore Harley-Davidson in Libertyville, Illinois while under the Limited Warranty.

9. Plaintiff Anzhela Demkiv is a resident of Cook County, Illinois, and purchased a 2016 Harley-Davidson Street Glide Special motorcycle in June 2016. She purchased one or more

Harley-Davidson branded parts from City Limits Harley-Davidson in Palatine, Illinois and Lake Shore Harley-Davidson in Liberty, Illinois while under the Limited Warranty.

10. Plaintiff Scott Koller is domiciled in, and a citizen of, California. He is, and was, at all relevant times, a resident of Brentwood, California. Plaintiff makes his permanent home in California and intends to remain in California. In March of 2017, Plaintiff purchased a new 2017 Harley-Davidson Road-Glide Special motorcycle from a Harley-Davidson dealer in Livermore, California. Plaintiff purchased one or more Harley-Davidson branded parts while under the Limited Warranty.

11. Plaintiff Rita Weaver is a resident of Delanson, New York and purchased a Harley-Davidson FLHTCUTGSE motorcycle from a dealership in Albany, New York in September 2021.

12. Plaintiff James Billings is a resident of Beverly, Massachusetts and a citizen of Massachusetts. Mr. Billings bought a Harley-Davidson FLTRX motorcycle from a dealership in August 2021 which was delivered to his home in Massachusetts.

13. Plaintiff Curtis Perry is a resident of Minneapolis, Minnesota. Mr. Perry bought a Harley-Davidson Model FLTRXS Motorcycle from a dealership in Minnesota. Mr. Perry purchased one or more branded Harley-Davidson parts while under the Limited Warranty from a Harley-Davidson Dealership in Minnesota.

14. Plaintiff Vincent Romeo is a resident of Mount Airy, North Carolina and a citizen of North Carolina. Mr. Romeo bought a Harley-Davidson Tri Glide from a dealership in Florida in or around March 2019.

15. Plaintiff Debra Plinck is a resident of Pahrump, Nevada and a citizen of Nevada. Ms. Plinck bought a Harley-Davidson Street Bob from a dealership in Nevada in or around February 2022.

16. Plaintiff Thomas Navarette is a resident of Hobbs, New Mexico and a citizen of New Mexico. Mr. Navarette bought a Harley-Davidson Street Glide from a dealership in Oklahoma in or around November 2019, and bought one or more Harley-Davidson branded parts in but not limited to Oklahoma while under the Limited Warranty.

17. Plaintiff Gary Chelenyak is a resident of Livonia, Michigan and a citizen of Michigan. Mr. Chelenyak bought a Harley-Davidson CV Roadglide from a dealership in Michigan in or around March 2023.

18. Plaintiff Richard Hawkins is a resident of Boynton Beach, Florida and a citizen of Florida. Mr. Hawkins bought a Harley-Davidson FLSL/Softail Slim in 2020 from Treasure Coast Harley-Davidson in Stuart, Florida.

19. Plaintiff Aaron Harris is a resident of Liberty Lake, Washington, and a citizen of Washington. In February 2021, Mr. Harris purchased a new 2021 Harley-Davidson Road-Glide motorcycle from Lone Wolf Harley-Davidson dealer in Spokane, Washington.

20. Defendant Harley-Davidson Motor Company Group, LLC is a Wisconsin limited liability company domiciled in and, with its principal place of business located in Milwaukee, Wisconsin. At all times relevant hereto, Defendant Harley-Davidson Motor Company Group, LLC has done business throughout the United States. Harley-Davidson Motor Company Group, LLC has manufactured, advertised, offered for sale, sold, and distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

21. Harley-Davidson Motor Company, Inc. is a Wisconsin corporation domiciled in and, with its principal place of business located in Milwaukee, Wisconsin. At all times relevant hereto, Harley-Davidson Motor Company, Inc. has done business throughout the United States. Harley-Davidson Motor Company, Inc. has manufactured, advertised, offered for sale, sold, and

distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

## JURISDICTION AND VENUE

22. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the causes of action arise under the laws of the United States. This Court also has supplemental jurisdiction over the damage causes of action asserted under state law pursuant to 28 U.S.C. § 1367 because these causes of action are so related to the causes of action within the Court's federal question jurisdiction that they form part of the same case or controversy.

23. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendants.

24. Defendants are subject to personal jurisdiction in this District because they have their principal places of business in this District. They are also subject to personal jurisdiction in each of the transferor Districts for those actions filed in other Districts and transferred to this District under 28 U.S.C. § 1407 because Defendants purposefully availed themselves of the benefit of doing business in those Districts by selling their products in interstate commerce to those Districts and throughout the United States, including through a program of licensed dealers and authorized service providers, and Plaintiffs' purchases occurred in those Districts.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because Defendants are doing business in, have and had agents in, and are found to transact business in this

District. For the same reasons, venue was proper in the transferor Districts for those actions filed in other Districts and transferred to this District under 28 U.S.C. § 1407.

## BACKGROUND

### A. Harley-Davidson Motorcycles

26. Harley-Davidson was founded in Milwaukee, Wisconsin in 1903 and, by 1920, had quickly become the largest motorcycle manufacturer in the world. Along with Indian Motorcycle Inc. ("Indian"), Harley-Davidson is one of only two American motorcycle brands to have survived the Great Depression.

27. Around the 1970s, Harley-Davidson faced waning popularity and near-bankruptcy in the wake of cost-cutting measures that resulted in low quality bikes, as well as the introduction of the so-called Universal Japanese Motorcycle ("UJM") – a new category of very similar, accessible motorcycles manufactured by the big four Japanese motorcycle manufacturers – Honda, Kawasaki, Yamaha, and Suzuki; which appealed to American consumers.

28. In the next decade, however, Harley-Davidson managed to make a complete turn-around, saving itself from ruin and vaulting its status and image into what they are today. It did so via its adoption of the large-displacement motorcycle, aided by the Reagan administration's tariffs against foreign imports of this kind of model, which caused Japanese makers to concentrate on smaller displacements.

29. The large-displacement motorcycle was easily distinguishable, moreover, from the UJM, and created an entire new and separate category of bike, predominated by a single manufacturer whose brand now became shorthand for the American motorcycle.

**B. Harley-Davidson's Warranty**

30. As of June 2022, Harley-Davidson sold as a bundle with its motorcycles a warranty valid for twenty-four months (the "Limited Warranty"), "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle."[1]

31. Harley-Davidson's 2021 warranty stated, in relevant part, that:

- "Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."
- "This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual… 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details."
- The "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

---

[1] *See* Exhibit A attached hereto, Complaint before the Federal Trade Commission in *In the Matter of Harley-Davidson Motor Company Group, LLC,* a limited liability company ("FTC Complaint").

- In "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."

**C. Warranty Coverage**

32. Even when customers have endeavored to obey Harley-Davidson's dictate that they only choose Harley-Davidson branded Compatible Parts, they still risk losing warranty coverage, which the company seeks to limit even beyond the scope of its language.

33. For example, according to comments in public forums, consumers have experienced situations where their dealers record and report repairs that ought to be covered by their warranty as non-warranty repairs, claiming that the customer has impermissibly altered their bike by performing modifications unrelated to the issue for which the customer has brought in their bike,[2] including simply mounting a flag.[3]

34. Upon information and belief, the basis of which is public comment by persons with knowledge of dealer practices, Harley incentivizes the dealers to do this by structuring repair reimbursements – which reportedly can be up to 30 cents on the dollar – differently depending on whether they are reported as covered or not. Repairs will get reimbursed immediately for uncovered repairs, but for warranty repairs, dealers must wait up to ninety days to be compensated.[4]

---

[2] https://youtu.be/eIxCLZl5I7M at 6:40 (discussing comment by individual called Jim Redmond)

[3] *Id.* at 6:30 (discussing comment by individual called Tim Barnett)

[4] *Id*. at 8:20

35. By incentivizing the dealers to void warranties, thus "flipping warranty situations into non-warranty situations,"[5] Harley-Davidson is able to profit in two ways – first, by dodging the repair labor cost, and then making the part into revenue.

**D. The Parts Universe**

36. The Parts at issue in this suit are those compatible with Harley-Davidson motorcycle models. Because Harley monopolizes the large American-manufactured motorcycle market, such parts generally refer to those compatible not only with Harley bikes but also with large cc American bikes in general. One notable differentiator between Harley compatible parts and parts compatible with, for example, Japanese bikes is the use of imperial or SAE units as opposed to metric units. There are, to be sure, a multitude of parts manufacturers that make and sell such parts, which are marketed as Harley-compatible. Various online retailers, for example, have sections specifically labeled as Harley-Davidson compatible under which both Harley-branded and third-party manufactured parts are sold. Such third-party parts, which may often be priced lower than Harley-branded parts, are a direct threat to the revenue that Harley enjoys from its parts segment – a threat that Harley has scrambled to control through its unlawful, anti-competitive tying scheme.

## TRADE AND COMMERCE

37. Harley has sold and continues to sell motorcycles and parts in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district. Harley's annual revenue exceeds $5 billion dollars, and it is the single largest

---

[5] *Id.* at 9:20

maker of motorcycles for the U.S. market, including roughly a majority of roadgoing motorcycles with engine displacements over 601cc.

38. Harley's business activities were intended to have and have had a substantial effect on interstate trade and commerce in the United States, including in this judicial district. There are Harley-Davidson motorcycles registered and on the road in all fifty states and the District of Columbia. These motorcycles, inevitably, will need repairs. Independent parts makers make a dizzying array of repair parts as well as performance and cosmetic upgrade parts for Harley-Davidson motorcycles. Despite this, Harley-Davidson has kept a larger share of the parts market for itself, and commanded higher prices for its repair parts, because it has used its warranty to unlawfully force Harley owners to use its own branded parts.

## I. ANTITRUST VIOLATIONS

## RELEVANT MARKET

### A. The New Market for American-Made Large, Roadgoing Motorcycles

39. There are two relevant product markets here. The first is the market for motorcycles, specifically American-made, new, large roadgoing bikes, which are sold as a bundle with factory warranties. The second relevant product market is the market for motorcycle parts compatible with Harley-Davidson motorcycles (hereinafter "Compatible Parts"). Compatible Parts are distinguishable from parts for other brands of motorcycle by their technological compatibility.

40. Large, roadgoing motorcycles are a separate product market from non-roadgoing motorcycles, and likewise American-made motorcycles are a separate product market from non-American made motorcycles. American-manufactured, large roadgoing motorcycles thus constitute their own separate product market.

41. Roadgoing motorcycles are registered with the Department of Motor Vehicles in the state where the owner resides, and can be ridden on the road.[6] A bike that cannot be registered cannot be legally ridden on the road, and for that reason is not a substitute. So-called "pure" dirt bikes,[7] for example, suitable only for off-road use, serve a different function to their riders and so constitute a different market. Prices of dirt bikes thus do not discipline the price of large roadgoing motorcycles, and vice versa.

42. Harley-Davidson's own reports categorize "large" displacement motorcycles as those with engine displacements of 601 cc, and it makes no roadgoing bike smaller than this size. Smaller displacement engines are almost universal in dirt bikes, and common in certain kinds of road bikes, including sport bikes, a market dominated by the aforementioned Big 4 Japanese makers. Smaller motorcycles, however, lack the passenger and cargo capacities of large roadgoing motorcycles, the torque and horsepower that only a larger engine can offer, and the look and feel of large roadgoing motorcycles. For this reason, they attract different buyers than small displacement motorcycles. Thus, the prices of smaller bikes do not discipline the prices of large roadgoing motorcycles, and vice versa.

43. Harley has in fact recognized the discreteness of large roadgoing motorcycle category in its public reporting, defining its own market share by roadgoing motorcycles with engine displacement larger than 601cc.

---

[6] Three-wheeled bikes, known as "trikes", are legally considered to be motorcycles in states like New York and Florida, though they are not in states including California, where they require only a standard driver's license. Still, even in the latter category of states, they are legally allowed to be driven on the road and are therefore included in this definition.

[7] One category of motorcycle, alternately known as "adventure" bikes, or "dual-sport" motorcycles, are suitable for both roads and off-road use, and typically are registerable. These motorcycles, as they are able to be ridden on the road, are part of the large roadgoing market.

44. New, large roadgoing motorcycles are sold as a bundle with manufacturers' warranties. Manufacturers' warranties are neither useful nor available without the motorcycle they cover. The availability and terms of manufacturer warranties distinguish new large roadgoing motorcycles from used large roadgoing motorcycles.

45. Next, American-made motorcycles are distinguishable from non-American motorcycles, even within the aforementioned category of large, roadgoing bikes. They are a discrete submarket that does not experience cross-elasticity of demand with, for example, Japanese-manufactured large, roadgoing, motorcycles. Indeed, American-made motorcycles – both Harley and its smaller competitors in this space – enjoyed their own dedicated publication for thirty years with American Iron Magazine, thereby demonstrating that there was a distinct ridership and following for American-made motorcycles, sufficient to support its own universe of print media.

46. In contrast to other kinds of vehicles, like cars, for example, motorcycles elicit a specific kind of cultural commitment from their consumers. Motorcycle riders routinely form organizations centered around shared homes and/or cultural heritage, and the bikes that they ride frequently serve as vehicles to express their patriotism. Indeed, Harley-Davidson offers a variety of American flag kits and other kinds of patriotic memorabilia that can be attached to their motorcycles or worn by riders. The consumer base of Harley-Davidson would find it incongruous with their belief structure to ride a Japanese make of bike, even if such a motorcycle was for all intents and purposes the same thing as Harley's version and similar or cheaper in price.

47. The company's loyal consumer base is organized into the so-called "Harley Owners Group," or "HOG" – a Harley-sponsored fan club (the logo of which includes a bald eagle) that seeks to brand Harley Davidson as a distinctly American icon, specifically to appeal to an all-

American fan base seeking to celebrate via their motorcycles a shared national heritage.[8] Indeed, the all-American branding effort was a conscious one on Harley's part as part of its 1980s comeback wherein the company sought to distinguish itself from the increasingly popular Japanese motorcycle. As an American-based, American-manufactured brand, it was able to capture new consumers to the world of motorcycling that would not have otherwise joined.

48. As a 1993 market research study on Harley-Davidson found, "[t]he homogeneous styles and activities of subcultures of consumption… make them significant to marketers as self-defining market segments that tend to transcend cultural contexts."[9] A 1995 ethnography of Harley riders described the group's "subculture of consumption," or "a distinctive subgroup of society that self-selects on the basis of a shared commitment to a particular product class, brand, or consumption activity."[10] The study showed how this burgeoning class of riders, bolstered by Harley's own marketing efforts and establishment of its so-called Harley Owners Group, centered around Harleys as a distinctly American form of bike. Japanese motorcycles, which might appear due to market share to be direct competitors, would only be bought by Harley aspirants as temporary stopgaps until they could afford the much more expensive Harley.[11] While other American brands do figure in this market, notably Indian, which markets itself as the oldest

---

[8] https://books.google.com/books?id=L5QgZxUgVkYC&pg=PA36#v=onepage&q&f=false.

[9] Schouten, John W. and James H. McAlexander, *Market Impact of a Consumption Subculture: The Harley Davidson Mystique,* European Advances in Consumer Research (Vol 1., 1993), available at https://www.acrwebsite.org/volumes/11476/volumes/e01/E%20-%2001.

[10] Schouten, John W. and James H. McAlexander, *Subcultures of Consumption: An Ethnography of the New Bikers*, Journal of Consumer Research (June 1995) at 43.

[11] For its part, Japanese motorcycling has had its own separate and distinct subculture, known as "Bōsōzoku", develop in the post-World War II era, which is based aesthetically on Kamikaze pilots. https://haenfler.sites.grinnell.edu/subcultures-and-scenes/bosozoku/.

American brand of motorcycle, Harley's scale dwarfs these competitors and is thus the most visible choice to these consumers who will only ride American.

49. If a Harley bike is totaled, or breaks down beyond repair, its rider will not shop around for its replacement – he will rather buy another Harley automatically. In terms of its distinct American heritage (and marketing thereof), the only real comparison is Indian, which holds comparably miniscule market share. Harley's presence simply dwarfs it and any other American brand in the market, and its nearest competitors in terms of market size are the Japanese Big 4, and then BMW. Other American brands are comparatively unknown and do not figure in the general awareness of the American biking community. Harleys, moreover, can be bought in an abundance of colors, makes, and configurations, which further reduce any desire on the part of riders to look to other brands.

50. As of June 2022, Harley captures 21.1% of the overall market share for new, large roadgoing motorcycles in the United States, according to Statista research.[12] The next four brands on the list are the Big 4 Japanese brands – Honda (17.5%), Kawasaki (12.8%), Yamaha (11.3%), and Suzuki (4.9%) – while BMW, a German manufacturer, has the next highest percentage at 3.7%. No other American manufacturer sells enough motorcycles to even merit a mention on this list – not even Indian, Harley's next largest competitor for American motorcycles. This data means that Harley is at minimum 5.86 times larger than Indian.

**B. The Compatible Parts Market**

51. The Compatible Parts Market is defined by compatibility with Harley-Davidson motorcycles. To repair or customize a Harley-Davidson motorcycle, the owner must purchase a

---

[12] https://www.statista.com/statistics/252210/market-share-of-major-motorcycle-manufacturers-in-the-us/

Compatible Part. The prices of parts that are not compatible with Harley-Davidson motorcycles do not, and cannot, discipline the prices of parts that are compatible with Harley-Davidson motorcycles.

52. There is a robust market for Harley-Davidson Compatible Parts. This is a functioning marketplace even setting aside the parts and services manufactured and distributed by Harley-Davidson. If Harley-Davidson did not use its illegal warranty restrictions to skew the market in its favor, this marketplace would likely include an even greater market presence from its aftermarket manufacturer and retail competitors.

53. Harley-Davidson motorcycle owners can purchase either OEM parts (i.e., Harley-Davidson's own Compatible Parts sold under its own brand) or aftermarket parts (i.e., Compatible Parts made and sold by a variety of manufacturers). Either type of Compatible Parts works with Harley-Davidson motorcycles for repairs or customization, although Harley-Davidson has illegally restricted owners of bicycles that are under warranty from using aftermarket Compatible Parts.

54. Consumers have a wide variety of options to purchase Harley-Davidson Compatible Parts, both online and from brick-and-mortar businesses.

55. Harley-Davidson sells its own branded Compatible Parts through its website.[13] Consumers can shop by bike model and model year, and a wide array of branded Compatible Parts are available for purchase. It also distributes OEM Compatible Parts through its network of authorized dealers, described in more detail below.

---

[13] https://www.harley-davidson.com/us/en/shop/c/motorcycle-parts (last visited Apr. 11, 2023).

56. Major retailers, which sell almost everything, sell aftermarket Compatible Parts. For instance, Amazon.com and its marketplace sellers sell a variety of Compatible Parts. For instance, top search results for "Harley Davidson compatible parts" include aftermarket open belt drive assemblies, LED turn signals and covers, front end springers, headlights, auxiliary fog lights, starters, seat backrests, and rear shocks, among other items, all of which are aftermarket and which generally purport to be compatible with particular year and model Harley bikes.

57. Similarly, Walmart's website offers numerous aftermarket Compatible Parts for sale, which are sold both by Walmart and marketplace sellers.[14] These include, for example, aftermarket batteries, windshield trim, mirrors, foot pegs, regulators, and fork seals. None appear to be available in store.

58. Finding suitable and appropriately priced Compatible Parts is often a source of discussion for Harley owners. For instance, Harley owners and enthusiasts on the Harley forum on Reddit (the subreddit r/Harley) have discussed where to find reasonably priced parts and accessories, both Harley-brand and aftermarket. Those subreddit users noted a variety of alternatives, such as RevZilla, Dennis Kirk, and J&P Cycles; as well as well-known general shopping websites and retailers such as Amazon, Walmart, and eBay. One commenter noted a preference for aftermarket parts made or sold by Kuryakyn.[15]

59. Consumers who prefer one brand of aftermarket Compatible Parts over another have choices. For instance, retailer Deadbeat Customs states on its website that it offers "parts for all Harley Davidson models" as well as certain other bikes, and it touts its supply of "some of the

---

[14] https://www.walmart.com/search?q=harley-davidson+compatible+parts (last visited Apr. 11, 2023).

[15] https://www.reddit.com/r/Harley/comments/91u3ly/best_source_for_reasonably_priced_parts/ (last visited Apr. 10, 2023).

best brands available such as Biltwell, TC Bros, Gasbox, Trask, Burly Brand, Legends and more."[16] Deadbeat Customs focuses on motorcycle riders who wish to customize their bikes, and it has a store in Tewksbury, Massachusetts, as well as a series of warehouses throughout the United States that it uses to fulfill online orders nationwide.[17]

60. One notable manufacturer and distributor of aftermarket Compatible Parts, Custom Chrome, focuses exclusively on Harley-Davidson Compatible Parts.[18] It manufactures aftermarket Compatible Parts under several brand names, including RevTech, MotorFactory, Jammer Cycle Products, and Santee.[19] Custom Chrome operates throughout the United States and internationally. Custom Chrome does not sell parts directly to consumers.[20] Through its network of dealers, Custom Chrome has amassed a reported 15% of the Compatible Parts market and is the world's largest aftermarket supplier of Compatible Parts.[21]

61. Custom Chrome is not the only company to focus exclusively on manufacturing Harley-Davidson Compatible Parts. For instance, JIMS focuses on designing and manufacturing "a variety of parts and tools specifically designed for your Harley-Davidson motorcycle."[22] JIMS

---

[16] https://deadbeatcustoms.com/about-deadbeat-customs (last visited Apr. 24, 2023).

[17] https://deadbeatcustoms.com/faq (last visited Apr. 24, 2023).

[18] https://customchrome.com/history/index.aspx (last visited Apr. 24, 2023).

[19] *Id.*

[20] https://customchrome.com/blog/info.aspx?itemid=4537 (last visited Apr. 24, 2023).

[21] https://www.referenceforbusiness.com/history2/70/Custom-Chrome-Inc.html (last visited Apr. 24, 2023).

[22] https://www.jimsusa.com/ (last visited Apr. 24, 2023).

advertises its parts to consumers as "performance parts" that are manufactured through a process designed to ensure "precision and quality."[23]

62. Similarly, V-Twin markets itself as "one of the original Aftermarket Companies supplying products for Harley-Davidson Motorcycles… since 1969."[24] It manufactures and distributes many exclusive items. V-Twin claims to "inventory over 30,000 different part numbers, including: hard to find parts for engine and transmission rebuilding, carburetion, chassis, fork components, and wheels to fit models from the 1930s to the current M8 models."

63. Consumers often have a preference to avoid Harley-Davidson's own service and retail channels, when they are not restricted from doing so by Harley-Davidson's illegal warranty practices. On another Reddit post to the r/Harley forum, commenters largely stated that they either preferred to purchase aftermarket Compatible Parts from local independent bike shops or from online retailers.[25] Some users expressed a preference for purchasing Harley-brand Compatible Parts through licensed Harley dealers, although they noted a significant price increase (without any corresponding quality increase) associated with buying Harley-brand Compatible Parts.[26]

64. There can also be supply issues with Harley-brand parts. On another Reddit post, one user remarked on "having trouble getting parts from the dealer" and solicited advice on

---

[23] *Id.*

[24] https://www2.vtwinmfg.com/about_us (last visited Apr. 24, 2023).

[25] https://www.reddit.com/r/Harley/comments/etab5w/where_do_you_purchase_your_harley_davidson_parts/ (last visited Apr. 11, 2023).

[26] *Id.*

aftermarket online purchase options for that reason.[27] One commenter noted that they "work at an independent Harley shop" that supplies aftermarket Compatible Parts.

65. RevZilla, mentioned in the Reddit posts discussed above, sells certain OEM and aftermarket motorcycle parts for a variety of brands. However, it sells only Honda, Kawasaki, Yamaha, and Suzuki OEM parts.[28] It sells aftermarket parts for a wider variety of makes, including Harley, BMW, Ducati, Triumph, Honda, Kawasaki, Yamaha, and Suzuki.[29] These include aftermarket parts for a variety of Harley bikes. RevZilla provides parts and gear to bike enthusiasts, and it attracts customers with deals such as free shipping, price matching, loyalty rewards, a large selection, and easy returns.[30] RevZilla is primarily an online retailer, although it also has showrooms in Newport Beach, Brooklyn, Denver, and Philadelphia.[31]

66. Dennis Kirk is a retailer with one store in Rush City, Minnesota, as well as a website where it sells products online.[32] Among other makes, Dennis Kirk sells Compatible Parts for Harley-Davidson motorcycles.[33] Dennis Kirk sells everything from fuel filters to ball bearings to complete engine blocks.[34] These are primarily aftermarket Compatible Parts, although the

---

[27] https://www.reddit.com/r/Harley/comments/w32qr6/im_having_trouble_getting_parts_from_the_dealer/ (last visited Apr. 11, 2023).

[28] https://www.revzilla.com/oem-motorcycle-parts (last visited Apr. 10, 2023).

[29] https://www.revzilla.com/all-parts (last visited Apr. 10, 2023).

[30] https://www.revzilla.com/why-revzilla (last visited Apr. 10, 2023).

[31] https://www.revzilla.com/revzilla-stores (last visited Apr. 10, 2023).

[32] https://www.denniskirk.com/help/about-dennis-kirk (last visited Apr. 11, 2023).

[33] https://www.denniskirk.com/harley-davidson (last visited Apr. 11, 2023).

[34] https://www.denniskirk.com/harley-davidson (last visited Apr. 11, 2023).

company sells at least one Harley-Davidson "approved" part, the Dunlop D401 Harley-Davidson Series Tire.[35]

67. J&P Cycles operates "[f]rom coast-to-coast," with retail stores in Iowa, Florida, Tennessee, Arizona, South Dakota, and Michigan, in addition to online shopping through its website.[36] Consumers can initiate product returns within 90 days of the invoice date and generate return labels online.[37] J&P sells a wide array of aftermarket Compatible Parts for a variety of motorcycle makes, including Harley.[38] J&P does not sell Harley-brand Compatible Parts.

68. Consumers may also purchase parts from dealers or mechanics, either as standalone purchases or as part of servicing or customizing their motorcycles.

69. As noted above, Harley-Davidson has a network of authorized dealers, which it refers to as H-D® Authorized Service.[39] Authorized dealers generally service bikes and sell the parts necessary to do so. There are over 1,400 Harley-Davidson dealers worldwide.[40] Of those, a reported 675 are located in the United States.[41]

70. Harley-Davidson's website includes a find-a-dealer tool.[42] According to that webpage, there is one dealer in Green Bay, Wisconsin; there are another four within sixty miles.

---

[35] https://www.denniskirk.com/dunlop/d401-harley-davidson-series-tire.pfp540849.prdf (last visited Apr. 11, 2023).

[36] https://www.jpcycles.com/about (last visited Apr. 11, 2023). `

[37] https://www.jpcycles.com/customer-service (last visited Apr. 11, 2023).

[38] https://www.jpcycles.com/harley-parts (last visited Apr. 11, 2023).

[39] https://www.harley-davidson.com/us/en/content/motorcycle-maintenance/authorized-service.html (last visited Apr. 11, 2023).

[40] https://www.harley-davidson.com/us/en/about-us/careers/locations.html (last visited Apr. 11, 2023).

[41] https://www.scrapehero.com/location-reports/Harley-Davidson-USA/ (last visited Apr. 11, 2023).

[42] https://www.harley-davidson.com/us/en/tools/find-a-dealer.html (last visited Apr. 11, 2023).

There are no authorized dealers in Minneapolis, but there are five within thirty miles. There are no authorized dealers in Buffalo, New York, although there are five within forty miles. There are no authorized dealers in Taos, New Mexico; the closest is 58 miles away. As these examples illustrate, a Harley owner may have to travel to obtain Compatible Parts or service repairs from an authorized dealer.

71. Many independent mechanics and repair shops nationwide service motorcycles, including Harleys.[43] Harley owners frequently discuss where to service their bikes on internet forums, including Harley-Davidson forums and on Reddit. These discussions consistently include Harley owners stating that authorized dealers inevitably charge higher prices for the same work, and may provide reduced service quality.[44]

**C. Impossibility of Lifecycle Pricing**

72. When dealing with aftermarket parts or repairs for equipment, such as Harley-Davidson motorcycles, the "relevant market" or "relevant product market" is or includes the choices or reasonably interchangeable "substitutes" available to the equipment owners. As stated in *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451 (1992), "[b]ecause service and parts for Kodak equipment are not interchangeable with other manufacturers' service and parts,

---

[43] There were approximately 15,000 motorcycle mechanics in the United States in May 2021. *See* https://www.bls.gov/oes/current/oes493052.htm (last visited Apr. 11, 2023). The exact number of motorcycle mechanics who are not affiliated with authorized Harley-Davidson dealers is unknown to Plaintiffs at this time.

[44] https://www.hdforums.com/forum/general-harley-davidson-chat/12507-independent-repair-shop-guy.html (last visited Apr. 11, 2023); https://www.hdforums.com/forum/general-harley-davidson-chat/1323358-dealership-vs-independent-shop-for-maintenance-3.html (last visited Apr. 11, 2023); https://www.reddit.com/r/Harley/comments/ulzvre/wheres_the_best_place_to_get_your_bike_serviced/ (last visited Apr. 11, 2023); https://www.reddit.com/r/motorcycles/comments/ih87cu/routine_maintenance_at_the_dealership_almost_cost/ (last visited Apr. 11, 2023).

the relevant market from the Kodak equipment owner's perspective is composed of only those companies that service Kodak machines." *Id.* at 482.

73. Here, and during the class period, repair services and technicians for Harley-Davidson motorcycles are not interchangeable with parts and technicians from other manufacturers. There are no viable substitutes for Harley Repair services.

74. Moreover, there is no responsive connection between the aftermarket parts and services and the foremarket purchase of new Harley-Davidson motorcycles.

75. For the service-market price to affect equipment demand, consumers must inform themselves of the total cost of the "package"—equipment, service, and parts—at the time of purchase; that is, consumers must engage in accurate lifecycle pricing. Accurate lifecycle pricing requires a sophisticated analysis based on a wealth of information, and over dozens of different variables, with the calculation likely to be customer specific. Much, if not most, of the information required is difficult—some of it impossible—to acquire at the time of purchase.

76. Even if this information is technically available, most Harley-Davidson customers cannot begin to perform the necessary calculations because doing so is not cost efficient or is inconsistent with a customer's procurement practices. Competition in the foremarket does not and cannot discipline process or anticompetitive conduct in the Harley Repair Services aftermarket.

77. The new, large roadgoing motorcycles are sold bundled with manufacturer's warranties that lock the purchaser into Harley-Davidson parts or Harley-Davidson certified repair technicians. This bundling precludes the opportunity to buy competitors' Compatible Parts, or even service the Harley's themselves, which many motorcycle enthusiasts are willing and wanting to do themselves.

78. Harley-Davidson consumers cannot possibly understand the real cost of the lifecycle of the motorcycle ownership let alone conduct a pricing analysis ex ante to the purchase no matter how much data is disclosed in the contracts by Harley-Davidson. Indeed, the cost of regularly used Harley-Davidson parts can vary wildly with more than an 85% price difference for the same part—be it a starter, battery, or a standard forward control kit, as shown in the charts below (parts from Harley-Davidson website shown in **bold**):

**Starters**

| | Description | Price |
|---|---|---|
| ▪ | Twin Power 215503 Starter Motor 1.4 kW Chrome Harley Twin Cam 06-17 OE 31618-06A, Eastern Performance Cycles, *https://www.easternperformance.com/twin-power-215501-starter-motor-1-4-kw-chrome-harley-twin-cam-06-17-oe-31618-06a.html* (last accessed April 10, 2023) | $320.04 |
| | | |
| ▪ | Twin Power 1.4 kW Starter For Harley Twin Cam 2006-2017, J&P Cycles, *https://www.jpcycles.com/product/twin-power-14-kw-starter-for-harley-twin-cam-2006-2017?sku_id=10233264* (last accessed April 10, 2023) | $452.95 |
| | | |
| ▪ | **Genuine High Performance 1.4 KW Starter, Harley Davidson,** *https://www.harley-davidson.com/us/en/shop/genuine-high-performance-14kw-starter/p/31621-06A* **(last accessed April 10, 2023)** | **$598.95** |
| | | |

**Battery**

| | Description | Price |
|---|---|---|
| ▪ | H-D Original Equipment Batteries, Kegel Harley-Davidson, *https://shopkegelhd.com/products/h-d-original-equipment-batteries* (last accessed April 10, 2023) | $94.95 |
| | | |

| | | |
|---|---|---|
| ▪ | Original Equipment Harley-Davidson Replacement Battery, Throttle X, *https://www.throttlexbatteries.com/product/hdx16/* (last accessed April 10, 2023) | $129.95 |
| | | |
| ▪ | **H-D AGM Original Equipment Battery, Harley Davidson,** *https://www.harley-davidson.com/us/en/shop/genuine-high-performance-14kw-starter/p/31621-06A* **(last accessed April 10, 2023)** | **$145.95** |
| | | |

**Standard Forward Control Kit**

| | Description | Price |
|---|---|---|
| ▪ | Standard Forward Control Kit (Black), Ronnie's Harley-Davidson, *https://partsfinder.onlinemicrofiche.com/ronnies/showmodel.asp?make=hdmc* (H-D Part Number #50700060) (last accessed April 10, 2023) | $479.99 |
| | | |
| ▪ | Harley-Davidson Standard Forward Control Kit, Wisconsin Harley-Davidson, *https://www.wisconsinharley.com/harley-davidson-standard-forward-control-kit-fits-18-later-fxbb-fxlr-50700060/* (last accessed April 10, 2023) | $516.95 |
| | | |
| ▪ | **Standard Forward Control Kit, Harley-Davidson,** *https://www.harley-davidson.com/us/en/shop/standard-forward-control-kit/p/50700060* **(last accessed April 10, 2023)** | **$532.95** |

79. These Harley-Davidson parts are regularly costlier than a compatible alternative.

80. No person, and certainly no ordinary Harley-Davidson consumer can accurately predict the need for replacement parts, the location where such a part might be needed, the availability of a Harley-Davidson certified technician to make the repair, or the time that it might take (with all the attendant costs of that time). Parts break. Accidents occur. Ordinary wear and

tear renders motorcycles unusable. These things just happen – which, by their very nature, make them unpredictable.

81. Furthermore, Harley-Davidson motorcycles are becoming more complex and computerized, with specific sensor relays and electronic components that only Harley-Davidson technicians can even repair or gain access to, thus rendering the aftermarket electronic part market for new Harley-Davidson's non-existent as only Harley-Davidson certified shops or technicians can perform the repairs. This process of restoring the motorcycle's functionality can be difficult and expensive. An owner cannot simply replace the broken part. Nor can an owner ask a local independent repair shop to service the motorcycle. Instead, the owner of the Harley-Davidson must pay—and wait for—a technician authorized by Harley-Davidson, as only Harley-Davidson certified technicians and dealers have the proprietary software that can fully access the computer sensor information to determine the parts or problem or reset an overzealous sensor.

82. Harley-Davidson customers do not know which digital computerized electronic parts these are, how frequently they break, who nearby is certified to repair these items or the costs and time for these repairs.

83. Indeed, Harley-Davidson intends to deny its customers the freedom to perform certain repairs without the use of Harley-Davidson's authorized or certified network, even when the repair could efficiently be performed by any mechanically-inclined motorcyclist or by more convenient independent mechanics. Harley-Davidson has deliberately designed its new motorcycles so that both the diagnosis and the completion of a repair frequently requires Harley-Davidson software tools and other Harley-Davidson-required or accessible resources only available to certified dealers or technicians. Without this proprietary software and accompanying instructions, customers (or independent mechanics) cannot troubleshoot the computers on each

motorcycle that determine how—and if—the motorcycle will operate. Nor may an ordinary motorcyclist or independent mechanic replace any such computer boards/chips that break. These computers monitor many sensors. And if a sensor notices a problem, such as a broken part, or if a "glitch" occurs, the computer can render the motorcycle inoperable.

84. Because Harley-Davidson warranty bundling includes requirements for Harley-Davidson certified parts or technicians, there is no way to predict accurately the cost or price of the total package.

**D. Geographic Markets**

85. The United States is the relevant geographic market for both large roadgoing motorcycles and parts.

86. Harley-Davidson distributes its motorcycles throughout the U.S. through a network of independently-owned, authorized dealerships.

87. Harley-Davidson also distributes Compatible Parts throughout the United States through its dealer network as well as via its online website.

**E. Barriers to Entry**

88. There are significant barriers to entry in both relevant markets that allow Harley to protect and maintain its market power. The first is technical and regulatory. Motor vehicles for operation on public roads are complex and heavily regulated machines. Engineering a new make of large, roadgoing motorcycle from scratch is an expensive engineering challenge, requiring formidable economic backing. Harley-Davidson's significant competitors are the four large Japanese makers, three of which are conglomerates making non-motorcycle products for a global market – Honda, Suzuki, and Yamaha. Effective entry into the relevant markets would require

developing expertise in design engineering in addition to obtaining certifications and approvals necessary to U.S. road registration, including for safety and emissions.

89. Even a new entrant with the engineering expertise could have no guarantee of success because of the importance of brand identity in the market. Harley-Davidson has a 120-year-old brand. Because of the importance of brand heritage in large, roadgoing motorcycles, the new entries by American and even British makers have tended to be revivals of pre-WWII brands, including American names Henderson (which failed after two years), the aforementioned Indian (backed by offroad giant Polaris), and, among British marques, Triumph. There are only a limited number of available defunct American motorcycle brands that have names that would still resonate among potential customers today.

90. A new entrant would also need to secure distribution, contending with the legal restrictions many states place on road vehicle dealerships and with the existing dealer networks that could not afford to alienate their suppliers.

91. The capital outlay necessary to secure a recognizable brand or build one from scratch, to design and market a new motorcycle, and secure nationwide distribution, are very formidable. Most major motorcycle makers in the U.S. other than Defendants (with their venerable brand and fanatical following) have the backing and name of companies with an array of products in markets across the globe. A new entrant to displace Harley-Davidson's dominance would need to be prepared to bear a large initial investment and keep that capital at risk for a protracted period to build the name necessary to become sustainable and profitable.

92. Harley-Davidson's own conduct challenged herein created a barrier to entry into the Compatible Parts market. Harley-Davidson's conditioning of its warranty on the use of Harley-Davidson parts provided a powerful disincentive to dealers stocking and riders choosing

competing Compatible Parts. A new entrant would have to contend with an already robust market in Compatible Parts for those Harley owners who were not covered by manufacturer warranties or intended to void them; and the new entrant would have no more access to the Class Members, those owners still under warranty, then any of the existing competitors in the Compatible Parts market.

## HARLEY'S MARKET POWER

93. Harley-Davidson has substantial market power in both relevant markets.

94. Harley-Davidson has a monopoly in the market for large roadgoing motorcycles. The remainder of the market is fragmented, and indeed the next four firms in market share are the aforementioned Japanese makers – Honda, Suzuki, Yamaha, and Kawasaki.

95. Harley-Davidson also possesses substantial market power in the market for Compatible Parts. Its next closest competitor, parts seller Custom Chrome, has an annual revenue of approximately $21.2 million,[45] while Harley's revenue for parts in 2021 equaled approximately $741.8 million. [46] Assuming that the U.S. market share for parts holds an equivalent ratio to said market share for new motorcycle registrations, its total U.S. revenue for parts would be approximately $482.2 million – almost 23 times the size of its nearest competitor.

96. In its February 2022 guidance, as published in its 2021 10-K, Defendants stated that they expected "revenue growth from parts and accessories and apparel and licensing" and that "***growth in revenue from higher-margin parts and accessories*** and apparel, will more than offset the expected cost inflation across the supply chain." (emphasis added).[47]

---

[45] https://www.datanyze.com/companies/custom-chrome/28581444

[46] *Id.*

[47] *Id.*

## HARLEY'S ANTICOMPETITIVE TYING CONDUCT

97. To maintain its dominant position in the market for parts, Harley uses its monopoly power in the large, roadgoing American bike market (and specifically the manufacturer's warranty bundled with the new bike) to coerce customers not to purchase Compatible Parts from its competitors. Up until the month before this filing, Harley-Davidson did this by unlawfully tying its warranty to its parts by requiring customers who bought its bikes to only use Harley-Davidson's Compatible Parts – or else risk voiding the warranty. This is illegal under the Magnuson-Moss Warranty Act. In June 2022, the Federal Trade Commission ordered Harley to stop this practice going forward, but did not and indeed lacks the authority to recoup the past overpayments for parts from all affected Harley owners.

98. As a result of Harley-Davidson's anticompetitive conduct, and in addition to the harm from the violation of the MMWA, Harley owners have been harmed in two ways. First, Harley-Davidson has been able to charge and has charged more for its parts than it would have been able to, had it limited its warranty terms to what the law allows. Second, Harley-Davidson's riders have been deprived of access to the full range of aftermarket parts that the market could support. While there is already a robust market for parts, Harley owners whose bikes were under warranty were not free to choose from that array of parts because the choice to use competitor parts came with the threat of loss of warranty coverage.

## INJURY TO COMPETITION

99. Harley-Davidson's anticompetitive practices in tying the bikes and warranties to the parts have restrained trade, and have preserved and entrenched Harley-Davidson's market power. Harley-Davidson's conduct has injured competition in the market for parts and has caused injury to owners in the form of anti-competitive pricing for parts.

100. The injury to competition has caused injury to its competitors, as well as antitrust price injury for its independent dealers – injury that is then passed on, all or in part, to the ridership in the form of anti-competitive pricing. Harley bike owners have paid higher prices for parts because of the tying, which has also impermissibly limited competitive choice for the riders.

101. Harley-Davidson's tying was unlawful under the Magnuson-Moss Warranty Act. It had and could have no legitimate business or pro-competitive justifications, because it is unlawful. Unless injunctive and equitable relief is granted, Harley-Davidson may resume its unlawful conduct in whole or in part, and continue the resulting injury to competition.

## II. WARRANTY VIOLATIONS

### MAGNUSON-MOSS WARRANTY ACT

102. This class action challenges Harley-Davidson's practice of selling motorcycles with conditional warranties that cover repairs only if the consumer has all services and repairs undertaken by an authorized Harley-Davidson dealer and uses only replacement parts and accessories from authorized Harley-Davidson manufacturers for the duration of their Limited Warranty. Authorized Harley-Davidson dealers sell warranty-related services, replacement parts and accessories at a premium compared to other motorcycle repairers. By conditioning sales of motorcycles to the requirements of their Limited Warranties, Defendants are able to extract higher-than-usual profits from the repair businesses. For this reason, tying sales to the use of a specific repair service or the use of authorized parts and/or accessories in this manner violates state and federal law, including the MMWA.

103. Defendants' practice also prevents Harley-Davidson customers, including Plaintiffs, from undertaking routine maintenance and minor repairs on their own, instead of going

to a Harley-Davidson authorized dealer, for fear that such maintenance will void the Limited Warranty.

104. Defendants exacerbate state and federal violations by failing to comply with the MMWA's requirement to provide consumers with access to any written warranty prior to the point of sale. *See* 15 U.S.C. § 2302(b). Warrantors must provide sellers with materials to make the terms of a product's written warranty "readily available for examination by the prospective buyer" as federal law requires for any product with a written warranty that costs more than $15.00. 16 C.F.R. § 702.3(b). Defendants unlawfully fail to require their dealers to disclose the written warranty terms to Plaintiff and Class Members prior to the point of sale and fail to disclose material terms of the Limited Warranty including the requirement to use Harley-Davidson specified dealers, parts and accessories.

105. Finally, Defendants unlawfully fail to comply with the MMWA's requirement as to full and conspicuous disclosure of the terms and conditions of the Limited Warranty "to the extent required by rules of the [FTC.]" *See* 15 U.S.C. § 2302(a). The FTC Act further requires that a warranty "shall clearly and conspicuously disclose in a single document in simple and readily understood language . . . (2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2). Harley-Davidson's Limited Warranty does not include the full terms of the warranty; instead, it instructs consumers to consult with a Harley-Davidson dealer for full details.

**The FTC Investigation**

106. In May 2021, the FTC released a report titled, "Nixing the Fix: an FTC Report to Congress on Repair Restrictions," condemning manufacturers that restrict consumers from

choosing how they repair products.[48]

107. On July 9, 2021, President Biden signed an Executive Order promoting competition in the U.S. economy.[49] The Order includes a specific directive to the FTC to pursue "Right-To-Repair" issues.[50]

108. In July 2021, the FTC unanimously adopted a policy statement to prioritize enforcement of repair restrictions.[51] As the FTC has explained, "[t]hese types of restrictions can significantly raise costs for consumers, stifle innovation, close off business opportunity for independent repair shops, . . . delay timely repairs, and undermine resiliency."[52]

109. Shortly thereafter, the FTC filed a complaint against Defendant Harley-Davidson Motor Co. Group LLC alleging that Harley-Davidson unlawfully conditioned its written warranties to consumers on the use of Harley-Davidson branded parts and accessories and Harley-Davidson authorized services and failed to properly disclose all terms of its Limited Warranty in

---

[48] *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, Federal Trade Commission (May 2021) https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf

[49] *Executive Order on Promoting Competition in the American Economy,* THE WHITE HOUSE (July 9, 2021) https://www.whitehouse.gov/briefing-room/presidential-actions/2021/07/09/executive-order-on-promoting-competition-in-the-american-economy/

[50] *"*To address persistent and recurrent practices that inhibit competition, the Chair of the FTC, in the Chair's discretion, is also encouraged to consider working with the rest of the Commission to exercise the FTC's statutory rulemaking authority, as appropriate and consistent with applicable law, in areas such as: . . . (ii) unfair anticompetitive restrictions on third-party repair or self-repair of items, such as the restrictions imposed by powerful manufacturers that prevent farmers from repairing their own equipment*" Id.*

[51] Press Release: *FTC to Ramp Up Law Enforcement Against Illegal Repair Restrictions*, FEDERAL TRADE COMMISSION (July 21, 2021) https://www.ftc.gov/news-events/news/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions

[52] *Id.*

a single document to the consumer. The FTC alleged that these terms harm consumers and competition.[53]

110. On June 22, 2022, the FTC announced the settlement of the action against Harley-Davidson.[54] On October 21, 2022, the FTC issued a final order with consent decree regarding the case brought against Harley-Davidson.[55]

**Restrictions Associated with Harley-Davidson's Limited Warranty**

111. Harley-Davidson has been selling motorcycles for more than a century and has a strong reputation among consumers for being a well-made, American, luxury motorcycle. Harley-Davidson motorcycles are generally more expensive than competitors, in large part because of the reputation that the company has built over time. To many Harley-Davidson customers, there are no close substitute products in the market.

112. Harley-Davidson sells motorcycles with a 24-month, standard manufacturer's warranty, as defined in the MMWA, 15 U.S.C. § 2301(6)(B).

113. Harley-Davidson's Limited Warranty, which is summarized in the motorcycle owners' manual, is valid for twenty-four months, "starting from the earlier of (a) the date of the

---

[53] Complaint, *In re HarleyDavidson Motor Co. Grp., LLC*, No. 2123140, FEDERAL TRADE COMMISSION (June 23, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonComplaint.pdf; *see also* Harley-Davidson Motor Company, FEDERAL TRADE COMMISSION https://www.ftc.gov/legal-library/browse/cases-proceedings/212-3140-harley-davidson-motor-company

[54] *Statement of Chair Lina M. Khan Joined by Commissioner Rebecca Kelly Slaughter In the Matter of Harley-Davidson Motor Company Group, LLC and MWE Investments, LLC Commission*, File Nos. 2123140, 2223012, FEDERAL TRADE COMMISSION (June 22, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2223012_2123140HarleyMWEChairStatement.pdf

[55] Complaint, Decision, and Order, FEDERAL TRADE COMMISSION (Oct. 21, 2022) https://www.ftc.gov/system/files/ftc_gov/pdf/2123140-Harley-Davidson-combined-package-without-signatures.pdf; *see also supra* n.5.

initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle."[56]

114. The Limited Warranty, under the heading "Keeping it all Harley-Davidson" states in pertinent part:

> Use only Harley-Davidson approved parts and accessories that have been designed, tested and approved for your model and model year motorcycle . . . . Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact.[57]

115. The Limited Warranty does not include free replacement of all parts and accessories. Harley-Davidson charges a significant premium for the purchase of authorized parts and accessories, and many Harley-Davidson dealers also charge premiums for labor associated with replacing parts and adding accessories.

116. Harley-Davidson's Limited Warranty additionally provides that the "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and, under the heading "Service Records," that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."[58]

---

[56] *See, e.g.*, 2019 Harley-Davidson Owner's Manual: Sportster Models, Warranties and Responsibilities ▸ Limited Motorcycle Warranty, H-D SERVICE INFORMATION PORTAL https://serviceinfo.harley-davidson.com/sip/content/document/view?id=1465741510034236679&groupId=16 (last visited Nov. 23, 2022)

[57] *Id.*

[58] *Id.*

**Violations of the Magnuson-Moss Warranty Act**

117. The restrictions embodied in Harley-Davidson's Limited Warranty violates the MMWA (15 U.S.C. §§ 2301, *et seq*.) which regulates consumer warranties and the procedures used to resolve warranty disputes. It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

118. The MMWA prohibits a warrantor from conditioning a warranty for a consumer product that costs more than $5.00 on the consumer's use of an article or a service (other than an article or a service provided without charge) which is identified by brand, trade, or corporate name, unless the warrantor applies for and receives a waiver from the Commission. 15 U.S.C. § 2302(c); *see also* 16 C.F.R. § 700.10.

119. An FTC Rule interpreting this provision specifically bars warranty language used by Harley-Davidson:

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

120. In addition, the MMWA provides that the Commission shall prescribe rules regarding the terms of a warranty to be made available to the consumer prior to the sale of the

product. *See* 15 U.S.C. § 2302(b). Under the FTC Act's Pre-Sale Availability Rule, warrantors are required to provide sellers with all materials necessary to comply with the Pre-Sale Availability Rule which states that the seller "shall make a text of the warranty readily available for examination by the prospective buyer by: (1) Displaying it in close proximity to the warranted product . . . or (2) . . . placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request." 16 C.F.R. § 702.3(b).

121. Harley-Davidson violates this regulation because it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase.

122. The MMWA also lays out the requirements to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty" as required by the FTC. *See* 15 U.S.C. §2302(a). The FTC Act's corollary regulation further defines the Rule Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, 16 C.F.R. § 701 ("the Disclosure Rule"), stating that, a warranty must disclose, clearly and conspicuously in a single document and in simple and readily understood language "[a] clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2).

123. Harley-Davidson violates this regulation because it conceals the full terms of the Limited Warranty and instead instructs consumers to consult with a Harley-Davidson dealer for full details. In particular, the Limited Warranty states that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized

Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."[59]

124. Plaintiffs each purchased new Harley-Davidson motorcycles for personal, family, or household purposes; and were told by the Limited Warranty documents that in order to maintain the two-year warranty coverage that they would need to purchase Harley-Davidson-branded parts rather than aftermarket parts manufactured by a competitor and had to have any servicing done at a Harley-Davidson dealer, or they would lose the warranty coverage. Accordingly, Plaintiffs paid above-market prices for parts and servicing during the Limited Warranty Period.

## CLASS ACTION ALLEGATIONS

125. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

126. Plaintiffs seek to represent a nationwide class seeking damages pursuant to the Magnuson-Moss Warranty Act on behalf of themselves and a nationwide class encompassing ("Nationwide Warranty Class"):

> All current and former owners of a Harley-Davidson roadgoing motorcycle under factory warranty that was purchased in the fifty States, the District of Columbia, Puerto Rico, Guam, and all other United States territories and/or possessions from May 12, 2019 through the present ("Class Period").

127. In addition, and in the alternative to the above, Plaintiffs also bring this action on behalf of themselves and as a class action seeking damages pursuant to state antitrust laws on behalf of purchasers in the following states, territories, and the District of Columbia (the "Multistate Antitrust Class"): Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts,

[59] *Id.*

Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (hereinafter, the "Antitrust States"), defined as the following:

> All current and former owners of a Harley-Davidson roadgoing motorcycle under factory warranty who purchased branded Compatible Parts in the Antitrust States as far back as the state allows.

128. Plaintiffs also bring this action on behalf of themselves and as a class action seeking damages pursuant to the state warranty law of each of the fifty states, the District of Columbia, Puerto Rico, Guam, and all other United States territories and/or possessions (hereinafter, referred to as the "Warranty States") (the "State Warranty Classes"), defined as:

> All current and former owners of a Harley-Davidson roadgoing motorcycle under factory warranty that was purchased in the Warranty States as far back as the state allows.

129. Plaintiffs also bring this action on behalf of themselves and as a class action seeking damages pursuant to the common laws of each of the fifty states, the District of Columbia, Puerto Rico, Guam, and all other United States territories and/or possessions (hereinafter, referred to as the "Common Law States") (the "Common Law Classes"):

> All current and former owners of a Harley-Davidson roadgoing motorcycle under factory warranty that was purchased in the Warranty States as far back as the state allows.

130. Plaintiffs also bring this action on behalf of themselves and as a class action seeking damages pursuant to the consumer protection and/or common laws of Alaska, Arizona, Arkansas, California, Colorado, Delaware, District of Columbia, Idaho, Illinois, Iowa, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia,

Washington, and West Virginia, (hereinafter, referred to as the "Consumer Protection States") (the "State Consumer Protection Classes"), defined as:

> All current and former owners of a Harley-Davidson roadgoing motorcycle under factory warranty who purchased branded Compatible Parts in the Consumer Protection States as far back as the state allows.

131. Excluded from the Nationwide, Damages, and various State Classes (together, the "Classes") are Defendants, their parent companies, subsidiaries, and affiliates; federal government entities and instrumentalities of the federal government; states and their subdivision, agencies, and instrumentalities; and judges and court staff assigned to this matter.

132. This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**A. Rule 23(a) Prerequisites**

133. Prosecution of the claims of the Classes as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedures are met:

(a) The number of persons in the Classes is in the thousands, and the members of the Classes are therefore so numerous that joinder of all members of the Classes is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Classes, the need to expedite judicial relief, and Plaintiffs' lack of knowledge of the identity and addresses of all members of the Classes.

(b) There are numerous questions of law and fact arising from Harley-Davidson's anticompetitive conduct which are common to the members of the Classes. These include, but are not limited to, common issues as to: (1) whether Defendants have engaged in the conduct alleged herein; (2) whether Defendants' alleged conduct violates applicable law; (3) whether Defendants used their warranty to try to force Harley owners under warranty to use Harley Davidson's own

parts or risk voiding the warranty; (4) whether Defendants tied the sale of its motorcycles and manufacturer's warranty to the purchase of its Compatible Parts by conditioning the warranty on the use of their own parts; (5) whether Defendants forced warranty-holders to buy only Harley-Davidson branded parts or lose warranty coverage; (6) whether Defendants breached their express warranty; (7) whether Defendants breached their implied warranty; (8) whether Defendants' anticompetitive practices in tying the bikes and warranties to the parts have injured competition in the market and impermissibly limited competitive choice for riders; (9) whether the Class members overpaid for parts because of the tying; (10) whether the members of the Classes are entitled to damages, restitution, disgorgement, statutory damages, exemplary damages, equitable relief, and/or other relief; (11) the amount and nature of relief to be awarded to Plaintiffs and the other members of the Classes; and (12) whether this conduct, taken as a whole, has materially caused continuing and threatened antitrust price injury to be inflicted on indirect purchasers in the Multistate Antitrust Class, as well as denial of free competitive choice.

134. Plaintiffs purchased branded Compatible Parts at artificially inflated prices as a result of Harley-Davidson's anticompetitive, unlawful conduct. Plaintiffs' interests are coincident with and not antagonistic to those of the other members of the Classes. Plaintiffs are members of the Classes, have claims that are typical of the claims of the members of the Classes, and will fairly and adequately protect the interests of the Classes. Plaintiffs and the members of the Classes are similarly or identically harmed by the same systematic and pervasive concerted action.

135. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of Class members. There are no material conflicts between the claims of Plaintiffs and the members of the Classes that would make class certification inappropriate. Counsel for the Classes will

vigorously assert the claims of the Class Representative Plaintiffs and the other members of the Classes.

### B. Rule 23(b) Requirements

136. The prosecution of the claims of the Classes as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a) Questions of law or fact common to the members of the Classes predominate over any questions affecting only their individual members;

(b) A class action is superior to other methods for the fair and efficient resolution of the controversy, and no unusual difficulties are likely to be encountered in the management of this class action; and

(c) The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the other members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if these Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device, as intended by Congress, presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## III. NATIONWIDE CAUSES OF ACTION

137. Plaintiffs seek to certify a class under Wisconsin law for all class members in the Antitrust States as defined previously.

**COUNT 1**
**WISCONSIN ANTITRUST LAW**
**WISCONSIN STAT. §§133.01 *ET SEQ.***
**(ON BEHALF OF MULTISTATE ANTITRUST CLASS)**

138. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

139. This cause of action serves as a multistate antitrust claim for the Multistate Antitrust Class, including all class members domiciled in the Antitrust States as defined previously.

140. Chapter 133 of the Wisconsin Statutes governs trusts and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

141. Multistate Antitrust Class members purchased branded Compatible Parts within the State of Wisconsin and other states during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

142. Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a). Moreover, non-Wisconsin residents who are indirect purchasers may bring an action under the Wisconsin Antitrust Act where actionable conduct occurred within Wisconsin, even if the effects of the conduct are felt primarily outside Wisconsin.

143. Through their unlawful tying scheme, the Defendants engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. §§ 133.01, *et seq*.

144. Defendants' conduct has a significant nexus to Wisconsin because Defendant is headquartered in the state of Wisconsin and hatched and implemented the unlawful tying scheme in Wisconsin. Defendants' unlawful conduct caused Class Members to pay supra-competitive prices nationwide.

145. Members of the Multistate Antitrust Class were injured with respect to purchases of Compatible Parts in the Antitrust States in that the actions alleged herein substantially affected the Class members who paid substantially higher prices for Defendants' Compatible Parts in the Antitrust States.

146. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under Wis. Stat. § 133.01, *et seq*.

**COUNT 2**
**MAGNUSON-MOSS WARRANTY ACT ("MMWA")**
**15 U.S.C. § 2301, *ET SEQ.***
**(ON BEHALF OF ALL CLASS MEMBERS)**

147. Plaintiffs bring each of the claims in this Section on behalf of the Nationwide Class under the federal Magnuson-Moss Warranty Act. Each Plaintiff also brings an individual claim on their own behalf.

148. Plaintiffs and Class members are "consumers," Harley-Davidson is a "supplier" and "warrantor," and the motorcycles are "consumer products," as defined by the MMWA.

149. Each purchase of Defendants' motorcycle included a "written warranty," as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

150. In connection with the marketing and sale of the motorcycles, Harley-Davidson has conditioned a warranty on the consumer's using, in connection with the warranted product, only

an authorized repair service and/or authorized replacement parts. This violates the MMWA's anti-tying provision which provides that "No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name" unless the warrantor has obtained a waiver from the FTC pursuant to the Act. 15 U.S.C. § 2302(c); *see also* 16 C.F.R. § 700.10.

151. Specifically, Harley-Davidson states, *inter alia*, that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

152. Consistent with 16 C.F.R. § 702.3, as a warrantor of consumer products with written warranties, for all products costing more than $15, Defendants must provide sellers with the necessary materials to display product warranties in close proximity to the relevant product, or place signs reasonably calculated to elicit consumers' attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). Defendants do neither of these things.

153. Defendants also failed to include, for all their motorcycles, each of which cost consumers well in excess of $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). To the contrary, by stating, in the written warranty without limitation, "See an authorized Harley-Davidson dealer for details," "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures *may* void

the limited warranty," and "Check with your local Harley-Davidson dealer for local requirements," Defendants knowingly and intentionally hid (and continue to hide) from Plaintiffs, and those similarly situated, and the general public, "a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty"

154. The acts or practices of Defendants, as described above, violate the anti-tying provision of the MMWA, the Pre-Sale Availability Rule, the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

155. As a direct and proximate result of Harley-Davidson's violation of the MMWA, Plaintiffs and Class Members received goods in a condition that substantially impairs their value. Plaintiffs and Class Members have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Finally, Harley-Davidson's conduct caused Plaintiffs, and other Class Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendants not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

156. As a direct and proximate result of Harley-Davidson's unlawful conduct as set forth above, Plaintiffs and the Class have been damaged, and are entitled to relief as set forth hereunder.

## IV. VIOLATIONS OF COMMON LAW

157. Plaintiffs incorporate by reference all preceding allegations.

158. The following claims for relief are pleaded under the common laws of each jurisdiction identified below on behalf of the indicated class.

**COUNT 3**
**UNJUST ENRICHMENT – COMMON LAW**
**(ON BEHALF OF ALL CLASS MEMBERS)**

159. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

160. Defendants received and/or were conferred a benefit from Plaintiffs through the purchase of Harley-Davidson Motorcycles and branded Compatible Parts at supra-competitive prices, and due to their unlawful conduct it is inequitable for Defendants to retain these profits.

161. As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits for Compatible Parts.

162. Defendants' retention of this benefit is unjust.

163. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiffs and members of the Classes in the following states and territory: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

**COUNT 4**
**FRAUD – COMMON LAW**
**(ON BEHALF OF ALL CLASS MEMBERS)**

164. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

165. As discussed above, Defendant provided Plaintiffs Class members with false or misleading material information about the Products.

166. Specifically, Harley-Davidson knowingly and intentionally indicated to Plaintiffs that they would be unable to use parts not authorized by Defendants on the products that they had just purchased, and thus were barred from repairing their motorcycles using non-Harley-Davidson brand parts that may be cheaper or more effective than authorized Harley-Davidson brand parts.

167. Further, Defendants indicated to Plaintiff and members of the Class that they would be unable repair the motorcycles that they purchased unless they used authorized service providers. Defendants added this provision knowingly in order to encourage Plaintiffs and members of the Class to purchase authorized service at inflated prices rather than purchase cheaper or more effective independent service, or repair the products themselves.

168. Defendants misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

169. Defendants added these provisions and made them to consumers knowingly in order to encourage Plaintiffs to purchase new branded replacement parts at inflated prices rather than purchase third-party parts. Defendants were on actual and constructive notice that their warranties were unlawful because federal and state law explicitly forbade these actions.

170. These misrepresentations regarding the warranty are material in that a reasonable consumer would find that information important when deciding whether to buy the motorcycles, as well as when deciding whether and how to conduct repairs.

171. Harley-Davidson fraudulently and intentionally concealed to Plaintiffs the facts described above with the intent to defraud Plaintiffs and for the purpose of inducing Plaintiffs to

act thereon by purchasing the motorcycles. Harley-Davidson knew that Plaintiffs would not purchase the motorcycles, or would pay less for them, if Harley-Davidson had disclosed the unlawful warranty terms.

172. Had Harley-Davidson disclosed the true warranty terms, Plaintiffs would not have purchased the motorcycles, or would have paid less for them. As a direct and proximate result of Harley-Davidson's breach of its duties, Plaintiffs received goods in a condition that substantially impairs their value. Plaintiffs have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Further, Harley-Davidson's conduct caused Plaintiffs, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendants not made the fraudulent representations that conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

173. As a direct and proximate cause of Harley-Davidson's misconduct, Plaintiffs have suffered actual damages in that they have or will have to continue to pay for unwanted or inflated Harley-Davidson authorized repairs, service visits and parts. Plaintiffs have also suffered unreasonable diminution in value of the motorcycles as a result of Harley-Davidson's misconduct.

174. Under common law, Defendants should not be permitted to retain the benefits conferred on them by fraudulently-induced overpayments by Plaintiffs and members of the Classes in the following states and territory: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South

Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

175. Harley-Davidson's misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

176. The fraudulent actions of Defendants caused damage to Plaintiffs in the form of price premiums. Plaintiffs and are entitled to damages and other legal and equitable relief as a result.

**COUNT 5**
**FRAUDULENT CONCEALMENT/OMISSION – COMMON LAW**
**(ON BEHALF OF ALL CLASS MEMBERS)**

177. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

178. At all relevant times, Harley-Davidson knowingly and intentionally failed to disclose to Class members that the motorcycles' warranties included an unlawful restriction that ostensibly prevented Plaintiffs from repairing their motorcycles with their preferred service personnel, including themselves, and/or using non-Harley-Davidson brand parts. Defendants misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

179. Further, Defendants indicated to Plaintiffs that they would be unable to repair the motorcycles that they purchased unless they used authorized service providers and parts. Defendants added this provision knowingly in order to encourage Plaintiffs of the Class to purchase authorized service and replacement parts at inflated prices rather than purchase cheaper or more effective independent service and/or parts.

180. Defendants exacerbated these misrepresentations because the unlawful repair restrictions were not revealed to Plaintiffs until after the point of sale.

181. The false and misleading omissions were made with knowledge of their falsehood. Harley-Davidson manufactures, markets, and sells consumer products nationwide and knows that the FTC has stated that repair restrictions of the type in the Harley-Davidson's warranty are unlawful. Nonetheless, Harley-Davidson continued to include its unlawful repair restrictions in its motorcycle warranties and continues to fail to reveal such restrictions to consumers until after the point of sale.

182. The concealed information regarding the warranty is material in that a reasonable consumer would find that information important when deciding whether to buy the motorcycles.

183. Harley-Davidson was and is under a duty to Plaintiffs to disclose these facts because Harley-Davidson is in a superior position to know the truth about the quality and nature of its warranty. Harley-Davidson was also under a duty to Plaintiffs because it had a statutory duty under the MMWA, § 5 of the FTC Act, as well as applicable state statutes detailed below not to engage in the unlawful warranty practices described herein.

184. Harley-Davidson fraudulently and intentionally concealed from and/or failed to disclose to Plaintiffs the facts described above with the intent to defraud Plaintiffs and for the purpose of inducing Plaintiffs to act thereon by purchasing the motorcycles. Harley-Davidson knew that Plaintiffs would not purchase the motorcycles, or would pay less for them, if Harley-Davidson had disclosed the unlawful warranty terms.

185. Had Harley-Davidson disclosed the true warranty terms, Plaintiffs would not have purchased the motorcycles, or would have paid less for them. As a direct and proximate result of Harley-Davidson's breach of its duties, Plaintiffs received goods in a condition that substantially

impairs their value. Plaintiffs have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Further, Harley-Davidson's conduct caused Plaintiffs, to pay for Harley-Davidson authorized services or parts that they would not have paid for, or, at a minimum, would have paid less for, had Defendants not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

186. As a direct and proximate cause of Harley-Davidson's misconduct, Plaintiffs have suffered actual damages in that they have or will have to continue to pay for unwanted or inflated Harley-Davidson authorized repairs, service visits and parts. Plaintiffs have also suffered unreasonable diminution in value of the motorcycles as a result of Harley-Davidson's misconduct.

187. Under common law, Defendants  remediate the aforementioned damages to the Plaintiffs and members of the Classes in the following states and territory: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

188. Harley-Davidson's misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

## V. VIOLATIONS OF STATE STATUTES

189. Plaintiffs incorporate by reference all preceding allegations.

190. The following claims for relief are pleaded under the antitrust, consumer protection, warranty, and/or common laws of each jurisdiction identified below on behalf of the indicated class.

**COUNT 6**
**ALASKA'S UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT**
**ALASKA STAT. §§45.50.471 *ET SEQ.***
**(ON BEHALF OF THE ALASKA CLASS)**

191. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

192. The Alaska Statutes prohibit unfair methods of competition and any unfair or deceptive trade practices. AS §45.40.471.

193. Through their unlawful conduct, Defendants have violated AS §45.40.471 including, but not limited to AS §45.40.471(b)(4), (6), (11), (12), (14), (15).

194. Alaska Class members purchased Harley-Davidson Compatible Parts within Alaska during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

195. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

196. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Alaska, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

197. Defendants also knowingly and willfully made false and misleading representations in connection to the sale of its Harley-Davidson motorcycles, which were

received by Plaintiffs and the Alaska Class within Alaska at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle. These false representations also included statements about the nature and extent of the warranty associated with the sale of Defendants' product.

198. These affirmative misrepresentations misled Plaintiffs and members of the Alaska Class as purchasers of those products.

199. Plaintiffs and members of the Alaska Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

200. Defendants engaged in the aforesaid conduct, which is unfair, unconscionable, and deceptive.

201. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Alaska.

202. As a direct and proximate result of Defendants' unlawful conduct, members of the Alaska Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

203. Members of the Alaska Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Alaska in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

204. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, treble damages, as well as reasonable attorneys' fees,

costs, and injunctive relief available under the Alaska Statutes §§45.50.471, *et seq.*, and §45.50.531(a).

**COUNT 7**
**ARIZONA'S UNIFORM STATE ANTITRUST ACT**
**ARIZONA REV. STAT. §§ 44-1401 *ET SEQ*.**
**(ON BEHALF OF THE ARIZONA CLASS)**

205. Plaintiffs incorporate by reference all preceding allegations.

206. Arizona Class members purchased branded Harley-Davidson Compatible Parts within Arizona during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

207. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona.

208. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

209. Defendants' violations of Arizona law were flagrant.

210. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Arizona.

211. As a direct and proximate result of Defendants' unlawful conduct, members of the Arizona Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

212. By the foregoing, members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Statute § 44-1401, *et seq*.

**COUNT 8**
**ARIZONA CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. § 44-1521, *ET SEQ.*)**
**(ON BEHALF OF THE ARIZONA CLASS)**

213. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

214. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

215. Harley-Davidson directed the foregoing deceptive acts and practices at consumers. Members of the Arizona Class are "consumers" under the Arizona Consumer Fraud Act.

216. Under Ariz. Rev. Stat. § 44-1522(A), "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

217. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

218. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits

unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. "It is the intent of the [Arizona] legislature, in construing [Ariz. Rev. Stat. § 44-1522] subsection A, that the courts may use as a guide the interpretations given by the federal trade commission and the federal courts to 15 United States Code sections 45, 52 and 55(a)(1)." Ariz. Rev. Stat. § 44-1522(C).

219. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

220. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

221. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular Ariz. Rev. Stat. § 13-3622(A)), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

222. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

223. Harley-Davidson's conduct actually and proximately caused actual damages to Arizona Class members. Arizona Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

224. Arizona Class Members seek to enjoin the unlawful acts and practices described herein, to recover his actual damages, punitive damages, and reasonable attorneys' fees.

225. Arizona Class Members seek equitable relief pursuant to Ariz. Rev. Stat. § 44-1521, *et seq*. on behalf of himself and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Arizona, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Arizona Consumer Fraud Act alleged to have been violated herein.

226. Arizona Class Members seek equitable relief pursuant to Ariz. Rev. Stat. § 44-1521, *et seq*. on behalf of himself and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged

herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Arizona, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Arizona Consumer Fraud Act alleged to have been violated herein.

**COUNT 9**
**ARKANSAS' DECEPTIVE TRADE PRACTICES ACT**
**ARKANSAS CODE ANNOTATED §§4-88-101 *ET SEQ.***
**(ON BEHALF OF THE ARKANSAS CLASS)**

227. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

228. The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits any unconscionable trade conduct as well as a false or deceptive action or practice in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a)(10).

229. Arkansas Class members purchased branded Harley-Davidson Compatible Parts within Arkansas during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

230. Through their unlawful tying scheme, Defendants improperly used economic leverage to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arkansas.

231. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

232. Defendants engaged in the aforesaid conduct, which is unconscionable, false, or deceptive. Defendants' acts affront the sense of justice, decency, and/or reasonableness and violate public policy.

233. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Arkansas.

234. As a direct and proximate result of Defendants' unlawful conduct, members of the Arkansas Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

235. Members of the Arkansas Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in Arkansas in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

236. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Ark. Code Ann. §4-88-101, *et seq*.

**COUNT 10**
**CAL. BUS. & PROF. CODE §§ 16700, *ET SEQ.***
**CALIFORNIA'S CARTWRIGHT ACT**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

237. Plaintiffs incorporate by reference all preceding allegations.

238. The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

239. California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

240. Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this complaint. Cal. Bus. & Prof. Code § 16750(a).

241. A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. *Id.* at § 16726.

242. California Class members purchased branded Harley-Davidson Compatible Parts within California during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

243. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within California.



Case 2:23-md-03064-WCG Filed 07/17/23 Page 63 of 232 Document 33

244. Defendants willfully acquired the power to control prices and/or exclude competition with respect to Compatible Parts.

245. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within California, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

246. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, in part, through their subsidiaries, affiliates, and/or network of authorized dealerships.

247. Defendants, through their coercive and anticompetitive scheme, imposed restraints to which its authorized dealers and Class members involuntarily adhered to.

248. Defendants' unlawful conduct substantially affected intrastate trade and commerce in California.

249. As a direct and proximate result of Defendants' unlawful conduct, members of the California Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

250. Plaintiffs and members of the California Class are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

**COUNT 11**
**CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA CLASS)**

251. Plaintiffs incorporate by reference all preceding allegations.

252. California Class members purchased branded Harley-Davidson Compatible Parts within California during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

253. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within California.

254. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within California, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

255. Defendant has violated the unlawful prong of the UCL. Defendant's predicate violations of the Magnuson-Moss Warranty Act, The Song-Beverly Warranty Act, the CLRA, and the other statutes identified in this Complaint are independently actionable under the UCL.

256. Defendants have also violated the fraud prong of the UCL. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the deceptive acts and practices specified above. Members of the California Subclass relied upon Defendants' statements that is warranties would be voided if consumers used non-Harley-Davidson approved parts and services. As described above, Defendants' fraudulent statements were material to consumer's purchasing decisions, and Defendants knew they were false and misleading when it made them.

257. Defendants' unlawful, unfair, and fraudulent conduct substantially affected intrastate trade and commerce in California.

258. This claim is instituted pursuant to sections 17203 and 17204 of California

Business and Professions Code, to obtain restitution from Defendant for acts, as alleged herein, that violated the UCL.

259. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct, members of the California Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

260. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the deceptive acts and practices specified above.

261. Defendants' unlawful conduct substantially affected intrastate trade and commerce in California.

262. This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violated the UCL.

263. As a direct and proximate result of Defendants' unlawful conduct, members of the California Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

**COUNT 12**
**SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIV. CODE §§ 1791, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA CLASS)**

264. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

265. By its conduct alleged herein, Harley-Davidson violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, et seq. ("Song-Beverly Act" or "SBCWA").

266. The motorcycles purchased by California Class members are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

267. Harley-Davidson is a "retailer" within the meaning of Cal. Civ. Code § 1791(l).

268. Cal. Civil Code § 1793.1(a)(1) states that "Every manufacturer, distributor, or retailer making express warranties with respect to consumer goods shall fully set forth those warranties in simple and readily understood language, which shall clearly identify the party making the express warranties, and which shall conform to the federal standards for disclosure of warranty terms and conditions set forth in the federal Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (15 U.S.C. Sec. 2301, et seq.), and in the regulations of the Federal Trade Commission adopted pursuant to the provisions of that act."

269. Harley-Davidson does not conform to the standards for disclosure of warranty terms and conditions set forth in the MMWA because it failed to adequately disclose the terms of its express warranty. Instead, it did not provide complete terms until after the point of sale and instructs consumers to consult with a Harley-Davidson dealer for full details of the warranty. And, as set forth above, Harley-Davidson's warranty unlawfully includes a tying arrangement which provides, inter alia, that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

270. Harley-Davidson's conduct caused the motorcycles to be worth less than what Plaintiffs and California Class Members paid for them and deprived Plaintiffs and California Class Members of the benefit of the bargain. Furthermore, Harley-Davidson's conduct caused Plaintiffs, and other California Class Members, to pay for Harley-Davidson authorized services or parts that

they would not have paid, or, at a minimum, would have paid less for, had Defendants not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

271. As a direct and proximate result of Harley-Davidson's breach of its duties, California Class Members received goods in a condition that substantially impairs their value. Plaintiffs and California Class Members have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Finally, Harley-Davidson's conduct caused Plaintiffs and other California Class Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendants not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

272. Plaintiffs and the California Class Members have met all of their obligations under the warranty, or otherwise have been excused from performance of such obligations, as a result of Harley-Davidson's conduct.

273. Under Cal. Civil Code § 1794, Plaintiffs and California Class Members are entitled to damages and other legal and equitable relief, including the purchase price of the motorcycles or the amount representing overpayment for or reduction in value of their motorcycles, and are also entitled to their attorneys' fees and costs.

**COUNT 13**
**CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA CLASS)**

274. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

275. Harley-Davidson's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods and services to consumers.

276. Each Defendant is a "person" under Cal. Civ. Code § 1761.

277. Plaintiffs and other California Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

278. The motorcycles that Plaintiffs and other similarly situated California Class Members purchased from Harley-Davidson were "goods" within the meaning of California Civil Code § 1761(a).

279. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, § 1770(a)(5), § 1770(a)(8), § 1770(a)(9), § 1770(a)(14), and § 1770(a)(15) of the CLRA. In violation of California Civil Code §1770(a)(5), Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of California Civil Code §1770(a)(8), Harley-Davidson has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of California Civil Code §1770(a)(14), Harley-Davidson has represented that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law. In violation of California Civil Code §1770(a)(15), Harley-Davidson represented that a part, replacement, or repair service is needed when it is not.

280. Plaintiffs request that this Court enjoin Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Harley-Davidson is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

281. Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Consumer Legal Remedies Act alleged to have been violated herein.

282. CALIFORNIA CIVIL CODE § 1782 NOTICE. Plaintiffs notice and demand that within thirty (30) days from the date of the filing of this Complaint that Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein. Plaintiffs previously provided notice under § 1782 in the Complaint in *Koller v. Harley Davidson Motor Company Group, LLC, et al.*, Case No. 4:2022-cv-04534 (N.D. Cal.), filed

August 5, 2022, and *Heymer v. Harley-Davidson Motor Company Group,* LLC, No. 5:22-cv-2085 (C.D. Cal.), filed November 23, 2022.

283. Because the violations herein alleged have not been corrected, repaired, replaced or rectified as required by California Civil Code § 1782 within 30 days with respect to all California Class Members, Plaintiffs hereby amend this Class Action Complaint to seek, on behalf of each California Class Member, actual damages of at least $1000, punitive damages, an award of $5000 for each California Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

284. Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**COUNT 14**
**COLORADO CONSUMER PROTECTION ACT**
**COLORADO REV. STAT. ANN. §§6-1-101 *ET SEQ.***
**(ON BEHALF OF THE COLORADO CLASS)**

285. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

286. Defendants have violated the Colorado Consumer Protection Act ("CCPA") Colorado Rev. Stat. Ann. §§6-1-101, *et seq*. through their unfair and/or deceptive practices.

287. Plaintiffs and the Colorado Class are victims of the consumer fraud perpetuated by Defendants. Including but not limited to the unlawful actions in contravention of C.R.S.A. §§6-1-105(1)(e), (g), (n)(III), (r), (rrr), (3).

288. Defendants knowingly and willfully misrepresented the characteristics of their warranty, including the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle. These false representations regarding the nature and extent of the warranty associated with the sale of their product had the capacity or tendency to deceive.

289. These affirmative misrepresentations misled Plaintiffs and members of the Colorado Class as purchasers of those products and significantly impacted, and continue to impact, the public, including Plaintiffs and the Colorado Class as actual consumers of Defendants' goods and services.

290. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

291. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Colorado, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

292. Defendants engaged in the aforesaid conduct which is unfair and deceptive.

293. Plaintiffs and members of the Colorado Class have suffered an ascertainable loss of money and/or property as a result of Defendants' unlawful conduct.

294. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Colorado Class.

295. Defendants' conduct substantially affected commerce and consumers in Colorado throughout the Class Period.

296. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the CCPA, C.R.S.A. §§6-1-101, *et seq*.

## COUNT 15
## CONNECTICUT ANTITRUST ACT
## C.G.S.A. §§ 35-26, *ET SEQ.*
## (ON BEHALF OF THE CONNECTICUT CLASS)

297. Plaintiffs incorporate by reference all preceding allegations.

298. Under C.G.S.A. §§ 35-46a(1), indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.

299. Connecticut Class members purchased branded Harley-Davidson Compatible Parts within Connecticut during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

300. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Connecticut.

301. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Connecticut, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

302. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Connecticut.

303. As a direct and proximate result of Defendants' unlawful conduct, members of the Connecticut Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

## COUNT 16
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
## C.G.S.A. §§ 42-110A, *ET SEQ.*
## (ON BEHALF OF THE CONNECTICUT CLASS)

304. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

305. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the repair restriction was unlawful and unenforceable.

306. Harley-Davidson directed the foregoing deceptive acts and practices at consumers. Plaintiffs and members of the Connecticut Class are "consumers" under the Connecticut Consumer Fraud Act.

307. Defendants are "persons" as defined by Conn. Gen. Stat. Ann. § 42-110a.

308. Plaintiffs and class members purchased the Products and related services for personal purposes.

309. Under Conn. Gen. Stat. Ann. § 42-110b(a), "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

310. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

311. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. "It is the

intent of the legislature that in construing subsection (a) of [Conn. Gen. Stat. § 42-110b], the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." Conn. Gen. Stat. § 42-110b(b).

312. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

313. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

314. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

315. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

316. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Connecticut Class members. Connecticut Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

317. On behalf of themselves and other members of the Connecticut Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive damages, and reasonable attorneys' fees.

318. Plaintiffs seek equitable relief pursuant to Conn. Gen. Stat. § 42-110g(d), *et seq*. on behalf of themselves and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Connecticut, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Connecticut Consumer Fraud Act alleged to have been violated herein.

**COUNT 17**
**DELAWARE CONSUMER FRAUD ACT**
**6 DEL. CODE §§2511 *ET SEQ.***
**(ON BEHALF OF THE DELAWARE CLASS)**

319. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

320. The Delaware Consumer Fraud Act, 6 Del. Code §2511, *et seq*., prohibits any person from engaging in deception, fraud, false pretense, false promise, misrepresentation, unfair practices, or the concealment, suppression, or omission of any material fact in connection with the sale or lease of any merchandise.

321. Defendants have violated the Delaware Consumer Fraud Act, 6 Del. Code §2511, *et seq*., through their unfair and/or deceptive practices.

322. Plaintiffs and the Delaware Class are victims of the consumer fraud perpetuated by Defendants.

323. Defendants knowingly and willfully made false statements, and engaged in consumer fraud regarding their product, including the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle.

324. These affirmative misrepresentations misled Plaintiffs and members of the Delaware Class as purchasers of those products.

325. Plaintiffs and members of the Delaware Class have suffered an ascertainable loss of money and/or property as a result of Defendant's false representations.

326. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Delaware Class.

327. Defendants' conduct substantially affected commerce and consumers in Delaware throughout the Class Period.

328. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Delaware Consumer Fraud Act, 6 Del. Code §2511, *et seq*.

**COUNT 18**
**DISTRICT OF COLUMBIA ANTITRUST ACT**
**D.C. CODE §§ 28-4501 *ET SEQ.***
**(ON BEHALF OF THE DISTRICT OF COLUMBIA CLASS)**

329. Plaintiffs incorporate by reference all preceding allegations.

330. The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

331. Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the D.C. Code based on the facts alleged in this Complaint, because "any indirect purchaser in the chain of manufacture, production or distribution of goods. . . shall be deemed to be injured within the meaning of this chapter." D.C. Code § 28-4509(a).

332. District of Columbia Class members purchased branded Harley-Davidson Compatible Parts within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

333. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia.

334. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

335. Defendants' unlawful conduct substantially affected intrastate trade and commerce in the District of Columbia.

336. As a direct and proximate result of Defendants' unlawful conduct, members of the District of Columbia Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

337. Plaintiffs and the Class are entitled to all forms of relief, including actual damages, treble damages, and interest, and reasonable attorneys' fees and costs.

**COUNT 19**
**DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT**
**D.C. CODE § 28-3901, *ET SEQ.***
**(ON BEHALF OF THE DISTRICT OF COLUMBIA CLASS)**

338. Plaintiffs incorporate by reference all preceding allegations.

339. Plaintiffs and the Class purchased branded Compatible Parts for personal, family, or household purposes.

340. Defendants are merchants within the meaning of D.C. Code § 28-3901(a)(3).

341. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of D.C. Code §28-3901, *et seq.*

342. District of Columbia Class members purchased Harley-Davidson Compatible Parts within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

343. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia.

344. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

345. Defendants' unlawful conduct substantially affected intrastate trade and commerce in the District of Columbia.

346. Plaintiffs and members of the Class were not aware of Defendants' misconduct and were therefore unaware that they were being unfairly and illegally overcharged.

347. As a direct and proximate result of Defendants' unlawful conduct, members of the District of Columbia Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

348. Plaintiffs and the Class are entitled to all forms of relief, including actual damages, treble damages, and interest, and reasonable attorneys' fees and costs.

## COUNT 20
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## FLA. STAT. §§ 501.201(2) *ET SEQ.*
## (ON BEHALF OF THE FLORIDA CLASS)

349. Plaintiffs incorporate by reference all preceding allegations.

350. The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, et seq. (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

351. Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("anyone aggrieved by a violation of this [statute] may bring an action . . .").

352. Plaintiffs and Florida Class members purchased Harley-Davidson Compatible Parts within Florida during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

353. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Florida.

354. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Florida, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

355. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Florida.

356. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs members of the Florida Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

357. By reason of the foregoing, Plaintiffs and Florida Class members are entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and

declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to Florida Stat. § 501.211.

**COUNT 21**
**GEORGIA FAIR BUSINESS PRACTICES ACT**
**GEORGIA CODE §§10-1-390 *ET SEQ.***
**(ON BEHALF OF THE GEORGIA CLASS)**

358. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

359. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

360. Defendants are each a "person" as defined by Ga. Code Ann. § 10-1-371.

361. Plaintiffs and class members purchased the Products and related services for personal purposes.

362. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, § 10-1-372(5), -(7), -(8), -(9), and -(12) of the Georgia Deceptive Trade Practices Act. In violation of Ga. Code Ann. § 10-1-372(5), Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of Ga. Code Ann. § 10-1-372(7), Harley-Davidson represents that the motorcycles and authorized parts and services are of a particular standard, quality, or grade, when they are of another. In violation of Ga. Code Ann. § 10-1-372(8), Harley-Davidson has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of Ga. Code Ann. § 10-1-372(9), Harley-Davidson has

advertised the motorcycles with intent not to sell them as advertised. In violation of Ga. Code Ann. § 10-1-372(12), Harley-Davidson has engaged in conduct which creates a likelihood of confusion or of misunderstanding.

363. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

364. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

365. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

366. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

367. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and

substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

368. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

369. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Georgia Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

370. On behalf of themselves and other members of the Georgia Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover his actual damages, punitive damages, and reasonable attorneys' fees.

371. Plaintiffs seek equitable relief pursuant to Ga. Code Ann. § 10-1-371, *et seq*. on behalf of himself and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Georgia, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly

situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Georgia Deceptive and Unfair Trade Practices Act alleged to have been violated herein.

**COUNT 22**
**GEORGIA FAIR BUSINESS PRACTICES ACT**
**GEORGIA CODE §§10-1-390 *ET SEQ.***
**(ON BEHALF OF THE GEORGIA CLASS)**

372. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

373. The Georgia Fair Business Practices Act prohibits and unfair or deceptive acts or practices in the conduct of consumer transactions. Ga. Code Ann. § 10-1-393.

374. Georgia Class members purchased branded Harley-Davidson Compatible Parts within Georgia during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

375. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

376. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Georgia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

377. Defendants also knowingly and willfully made false and misleading representations in connection to the sale of its Harley-Davidson motorcycles, which were received by Plaintiffs and the Georgia Class within Georgia at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle. These false representations also included

statements about the nature and extent of the warranty associated with the sale of Defendants' product.

378. These affirmative misrepresentations misled Plaintiffs and members of the Georgia Class as purchasers of those products.

379. Plaintiffs and members of the Georgia Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

380. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Georgia.

381. As a direct and proximate result of Defendants' unlawful conduct, members of the Georgia Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

382. Members of the Georgia Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Georgia in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

383. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, treble damages, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Ga. Code Ann. § 10-1-390, et seq.

## COUNT 23
## GUAM ANTITRUST LAW
## GUAM CODE ANN. TIT. 9 § 69.10, *ET SEQ*.
## ON BEHALF OF THE GUAM CLASS

384. Plaintiffs incorporate by reference all preceding allegations.

385. Guam Class members purchased branded Harley-Davidson Compatible Parts within Guam during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

386. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Guam.

387. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Guam, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

388. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Guam.

389. As a direct and proximate result of Defendants' unlawful conduct, members of the Guam Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

390. By reason of the foregoing, the Plaintiffs and members of the Guam Class are entitled to seek all forms of relief, including treble damages and reasonable attorney's fees and costs under Guam.

**COUNT 24**
**HAWAII ANTITRUST ACT**
**HAW. REV. STAT. §§ 480-1, *ET SEQ.***
**(ON BEHALF OF THE HAWAII CLASS)**

391. Plaintiffs incorporate by reference all preceding allegations.

392. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480- 1, *et seq*.

393. Hawaii Class members purchased branded Harley-Davidson Compatible Parts within Hawaii during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

394. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Hawaii.

395. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Hawaii, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

396. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Hawaii.

397. As a direct and proximate result of Defendants' unlawful conduct, members of the Hawaii Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

**COUNT 25**
**IDAHO CONSUMER PROTECTION ACT**
**IDAHO CODE §§48-601 *ET SEQ.***
**(ON BEHALF OF THE IDAHO CLASS)**

398. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

399. The Idaho Consumer Protection Act was enacted to protected consumers against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. I.C. §48-601, *et seq*.

400. Through their unlawful conduct, Defendants have violated I.C. §48-601, *et seq.*, including, but not limited to, I.C. §48-603(5), (13), (16), (17), (18), and I.C. §48-603C.

401. Idaho Class members purchased branded Harley-Davidson Compatible Parts within Idaho during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

402. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

403. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Idaho, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

404. Defendants also knowingly and willfully made false and misleading representations in connection to the sale of its Harley-Davidson motorcycles, which were received by Plaintiffs and the Idaho Class within Idaho at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle. These false representations also included statements about the nature and extent of the warranty associated with the sale of Defendants' product.

405. These affirmative misrepresentations misled and deceived Plaintiffs and members of the Idaho Class as purchasers of those products.

406. Plaintiffs and members of the Idaho Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

407. Defendants engaged in the aforesaid conduct, which is unfair, unconscionable, and deceptive.

408. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Idaho.

409. As a direct and proximate result of Defendants' unlawful conduct, members of the Idaho Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

410. Members of the Idaho Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Idaho in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

411. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, treble damages, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Idaho Consumer Protection Act, I.C. §§48-601, et seq.

**COUNT 26**
**ILLINOIS ANTITRUST ACT**
**740 ILL. COMP. STAT. ANN. 10/3(1), *ET SEQ.***
**(ON BEHALF OF THE ILLINOIS CLASS)**

412. Plaintiffs incorporate by reference all preceding allegations.

413. Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

414. Illinois Class members purchased branded Harley-Davidson Compatible Parts within Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

415. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois.

416. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

417. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Illinois.

418. As a direct and proximate result of Defendants' unlawful conduct, members of the Illinois Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

419. Plaintiffs and the Illinois Class are entitled to all forms of relief, including actual damages, treble damages, and reasonable attorneys' fees and costs.

**COUNT 27**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILL. COMP. STAT. ANN. 505/10A, *ET SEQ.***
**(ON BEHALF OF THE ILLINOIS CLASS)**

420. Plaintiffs incorporate by reference all preceding allegations.

421. Illinois Class members purchased branded Harley-Davidson Compatible Parts within Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

422. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois.

423. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

424. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within Illinois.

425. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Illinois.

426. As a direct and proximate result of Defendants' unlawful conduct, members of the Illinois Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

427. By reason of the foregoing, Plaintiffs and members of the Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Illinois Compiled Statutes 505/10a, *et seq*.

## COUNT 28
## INDIANA DECEPTIVE CONSUMER SALES ACT
## IND. CODE §§ 24-5-0.5-1 *ET SEQ*.
## (ON BEHALF OF THE INDIANA CLASS)

428. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

429. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the repair restriction was unlawful and unenforceable.

430. Defendants are each a "person" as defined by Ind. Code §§ 24-5-0.5-2.

431. Defendants are each a "supplier" as defined by Ind. Code §§ 24-5-0.5-2.

432. The Product sales and associated services are "consumer transactions," under Ind. Code §§ 24-5-0.5-2.

433. Plaintiffs and class members purchased the Products and related services for personal purposes.

434. The Product sales and associated services are "uncured deceptive acts," under Ind. Code §§ 24-5-0.5-2.

435. Under Ind. Code §§ 24-5-0.5-3(a), a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, Ind. Code §§ 24-5-0.5-3(b)(1), -(2),

-(6), -(8), and -(17) of the Indiana Deceptive Consumer Sales Act. In violation of Ind. Code §§ 24-5-0.5-3(b)(1), Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of Ind. Code §§ 24-5-0.5-3(b)(2), Harley-Davidson represents that the motorcycles and authorized parts and services are of a particular standard, quality, or grade, when they are of another. In violation of Ind. Code §§ 24-5-0.5-3(b)(6), Harley-Davidson represents that the motorcycles and authorized parts and services have a specific price advantage that they do not. In violation of Ind. Code §§ 24-5-0.5-3(b)(8), Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of Ind. Code §§ 24-5-0.5-3(b)(9), Harley-Davidson represents that the motorcycles and authorized parts and services involve or do not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations.

436. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

437. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

438. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus,

the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

439. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

440. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

441. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

442. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Indiana Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

443. On behalf of themselves and other members of the Indiana Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

444. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Indiana, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Indiana Deceptive Consumer Sales Act alleged to have been violated herein.

## COUNT 29
## IOWA COMPETITION LAW
## IOWA CODE §§ 553.1 *ET SEQ.*
## (ON BEHALF OF THE IOWA CLASS)

445. Plaintiffs incorporate by reference all preceding allegations.

446. The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

447. Iowa Class members purchased branded Harley-Davidson Compatible Parts within Iowa during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

448. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa.

449. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

450. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Iowa.

451. As a direct and proximate result of Defendants' unlawful conduct, members of the Iowa Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

452. Plaintiffs and the Class are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

**COUNT 30**
**IOWA CONSUMER FRAUDS ACT**
**IOWA CODE §§ 714H.1 *ET SEQ.***
**(ON BEHALF OF THE IOWA CLASS)**

453. Plaintiffs incorporate by reference all preceding allegations.

454. Plaintiffs have received authorization by the Attorney General to bring this claim as required by Iowa Code § 714H.

455. The Iowa Private Right of Action for Consumer Frauds Act ("IPRACFA") makes unlawful "a practice or act [a] person knows or reasonably should know is an unfair practice . . . with the intent that others rely upon [the practice or act]." Iowa Code § 714H.3(1).

456. "Unfair practice" means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16.

457. Defendant are persons within the meaning of this statute.

458. Defendants know or reasonably should know that their misconduct constituted an unfair practice.

459. Defendants acted with the intent that Plaintiffs and the Iowa Class rely upon its misconduct.

460. There is no requirement that Plaintiffs and the Iowa Class individually relied on Defendants' misconduct.

461. Iowa Class members purchased branded Harley-Davidson Compatible Parts within Iowa during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

462. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa.

463. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Iowa, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

464. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Iowa.

465. As a direct and proximate result of Defendants' unlawful conduct, members of the Iowa Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

## COUNT 31
## KANSAS RESTRAINT OF TRADE ACT
## KAN. STAT. ANN. §§ 50-101 *ET SEQ.*
## (ON BEHALF OF THE KANSAS CLASS)

466. Plaintiffs incorporate by reference all preceding allegations.

467. The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

468. Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

469. Kansas Class members purchased branded Harley-Davidson Compatible Parts within Kansas during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

470. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Kansas.

471. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Kansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

472. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, in part, through their subsidiaries, affiliates, and/or network of authorized dealerships.

473. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Kansas.

474. As a direct and proximate result of Defendants' unlawful conduct, members of the Kansas Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

475. Plaintiffs and the Class are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

**COUNT 32**
**KANSAS CONSUMER PROTECTION ACT**
**KAN. STAT. ANN. §§ 50-623 *ET SEQ.***
**(ON BEHALF OF THE KANSAS CLASS)**

476. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

477. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the warranties' repair restriction was unlawful and unenforceable.

478. Plaintiffs are "consumers" as defined by Kansas Stat. Ann. § 50-624.

479. Defendants are each a "person" as defined by Kansas Stat. Ann. § 50-624.

480. Defendants are each a "supplier" as defined by Kansas Stat. Ann. § 50-624.

481. The Product sales and associated services are "consumer transactions" and "services," respectively, under Kansas Stat. Ann. § 50-624.

482. Plaintiffs and class members purchased the Products and related services for personal purposes.

483. Under Kansas Stat. Ann. § 50-626(a), "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Harley-Davidson's acts and practices

described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, §§ 50-626(b)(1)(A), -(D), and -(F), and 50-626(b)(4), -(5), and -(8) of the Kansas Consumer Protection Act. In violation of Kansas Stat. Ann. § 50-626(b)(1)(A) and -(F), Harley-Davidson represents that the motorcycles and authorized parts and services have characteristics or benefits that they do not have. In violation of Kansas Stat. Ann. § 50-626(b)(1)(D), Harley-Davidson represents that the motorcycles and authorized parts and services are of a particular standard, quality, or grade, when they are of another. In violation of Kansas Stat. Ann. § 50-626(b)(1)(F), Harley-Davidson represents that the motorcycles and authorized parts and services have characteristics or benefits that they do not have. In violation of Kansas Stat. Ann. § 50-626(b)(4), Harley-Davidson has advertised the motorcycles and authorized parts and services by disparaging the goods and services of another. In violation of Kansas Stat. Ann. § 50-626(b)(5), Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of Kansas Stat. Ann. § 50-626(b)(8), Harley-Davidson falsely states, with knowledge that is false, that the motorcycles and authorized parts and services involve consumer rights, remedies or obligations that do not exist.

484. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

485. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

486. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms

in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

487. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

488. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

489. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

490. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiff and Class members. Kansas Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

491. On behalf of himself and other members of the Kansas Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

492. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief under Kansas Stat. Ann. § 50-634, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Kansas, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Kansas Consumer Protection Act alleged to have been violated herein.

**COUNT 33**
**KENTUCKY CONSUMER PROTECTION ACT**
**KY. REV. STAT. ANN. § 367.110, *ET SEQ.***
**(ON BEHALF OF THE KENTUCKY CLASS)**

493. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

494. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that these repair restrictions was unlawful and unenforceable.

495. Defendants are each a “person” as defined by Ky. Rev. Stat. Ann. § 367.110.

496. Plaintiffs and class members purchased the Products and related services for personal purposes.

497. Under Ky. Rev. Stat. Ann. § 367.170, “[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.”

498. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product’s repair restriction in a way intended to discourage legal repair of the Products.

499. Defendants’ conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

500. Defendants’ conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

501. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

502. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

503. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

504. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Kentucky Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

505. On behalf of themselves and other members of the Kentucky Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

506. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief under Ky. Rev. Stat. Ann. § 367.220, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Kentucky, unless

specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Kentucky Consumer Protection Act alleged to have been violated herein.

**COUNT 34**
**LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**LA. REV. STAT. TIT. § 51:1401, *ET SEQ.***
**(ON BEHALF OF THE LOUISIANA CLASS)**

507. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

508. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

509. Plaintiffs are "consumers" as defined by La. Rev. Stat. tit. § 51:1402.

510. Defendants are each a "person" as defined by La. Rev. Stat. tit. § 51:1402.

511. Plaintiffs and class members purchased the Products and related services for personal purposes.

512. Under La. Rev. Stat. tit. § 51:1405, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

513. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

514. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

515. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

516. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

517. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

518. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

519. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Louisiana Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

520. On behalf of themselves and other members of the Louisiana Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

521. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief under La. Rev. Stat. tit. § 51:1409, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Louisiana, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Louisiana Unfair Trade Practices and Consumer Protection Act alleged to have been violated herein.

**COUNT 35**
**MAINE MONOPOLIES AND PROFITEERING LAW**
**ME. REV. STAT. TIT. 10, § 1101 *ET SEQ.***
**(ON BEHALF OF THE MAINE CLASS)**

522. Plaintiffs incorporate by reference all preceding allegations.

523. Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

524. Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

525. Maine Class members purchased branded Harley-Davidson Compatible Parts within Maine during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

526. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine.

527. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

528. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Maine.

529. As a direct and proximate result of Defendants' unlawful conduct, members of the Maine Class have been injured in their business or property and are threatened with further injury

in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

530. Plaintiffs and members of the Maine Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs.

**COUNT 36**
**MAINE UNFAIR TRADE PRACTICES ACT**
**ME. REV. STAT. TIT. 5 § 207 *ET SEQ.***
**(ON BEHALF OF THE MAINE CLASS)**

531. Plaintiffs incorporate by reference all preceding allegations.

532. "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." 5 Me. Rev. Stat. § 207.

533. Maine Class members are "person[s] who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207." Me. Rev. Stat. tit. 5, § 213.

534. Maine Class members purchased branded Harley-Davidson Compatible Parts within Maine during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

535. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine.

536. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maine, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

537. Defendants' violations of Maine law were flagrant.

538. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Maine.

539. As a direct and proximate result of Defendants' unlawful conduct, members of the Maine Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

540. By reason of the foregoing, the Plaintiffs and the members of the Maine Class are entitled to seek all forms of relief, including treble damages, reasonable attorneys' fees and costs, and injunctive relief available under Me. Rev. Stat. Ann. tit. 5 § 213.

**COUNT 37**
**MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**ME. REV. STAT. TIT. 10 § 1211 *ET SEQ.***
**(ON BEHALF OF THE MAINE CLASS)**

541. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

542. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

543. Defendants are each a "person" as defined by 10 M.R.S.A. § 1211.

544. Plaintiffs and class members purchased the Products and related services for personal purposes.

545. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have

violated, and continue to violate, §§ 1211.1.E, -.G, -.I, and -.L of the Maine Uniform Deceptive Trade Practices Act. In violation of 10 M.R.S.A. § 1211.1.E, Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of 10 M.R.S.A. § 1211.1.G, Harley-Davidson represents that the motorcycles and authorized parts and services are of a particular standard, quality, or grade, when they are of another. In violation of 10 M.R.S.A. § 1211.1.H, Harley-Davidson disparages the goods, services or business of another by false or misleading representation of fact. In violation of 10 M.R.S.A. § 1211.1.I, Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of 10 M.R.S.A. § 1211.1.L, Harley-Davidson engages in conduct that creates a likelihood of confusion or of misunderstanding.

546. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

547. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. "It is the intent of the Legislature that in construing [the Maine Unfair Trade Practices Act] the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act (15 United States Code 45(a)(1)), as from time to time amended." 5 M.R.S.A. § 207.1.

548. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts,

characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

549. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

550. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

551. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

552. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Maine Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

553. On behalf of themselves and other members of the Maine Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

554. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief under 10 M.R.S.A. § 1213, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Maine, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Maine Uniform Deceptive Trade Practices Act alleged to have been violated herein.

**COUNT 38**
**MARYLAND ANTITRUST ACT**
**MD. CODE ANN. COMM. LAW §§ 11-201 *ET SEQ.***
**(ON BEHALF OF THE MARYLAND CLASS)**

555. Plaintiffs incorporate by reference all preceding allegations.

556. Maryland Class members purchased branded Harley-Davidson Compatible Parts within Maine during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

557. Under Md. Code Ann. Comm. Law § 11-209, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.

558. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maryland.

559. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Maryland, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

560. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Maryland.

561. As a direct and proximate result of Defendants' unlawful conduct, members of the Maryland Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

562. By reason of the foregoing, members of the Maryland class are entitled to all forms of relief, including actual damages, treble damages, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief available under Md. Code Ann. Comm. Law §§ 11-201.

**COUNT 39**
**MARYLAND CONSUMER PROTECTION ACT**
**MD. CODE ANN. COMM. LAW §§ 13-101 *ET SEQ.***
**(ON BEHALF OF THE MARYLAND CLASS)**

563. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

564. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants'

warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

565. Plaintiffs are "consumers" as defined by Md. Code Ann. Com. Law § 13-101.

566. Defendants are each a "person" as defined by Md. Code Ann. Com. Law § 13-101.

567. Plaintiffs and class members purchased the Products and related services for personal purposes.

568. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, §§ 13-301(1), -(2), -(3), -(4), -(5), and -(9), of the Maryland Consumer Protection Act. In violation of Md. Code Ann. Com. Law § 13-301(1), Harley-Davidson makes false and misleading representations. In violation of Md. Code Ann. Com. Law § 13-301(2), Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have and are of a particular standard, quality, or grade, when they are of another. In violation of Md. Code Ann. Com. Law § 13-301(3), Harley-Davidson omits material facts in a manner that tends to deceive consumers. In violation of Md. Code Ann. Com. Law § 13-301(4), Harley-Davidson disparages the goods, services or business of another by false or misleading representation of fact. Md. Code Ann. Com. Law § 13-301(5), Harley-Davidson has advertised the motorcycles and authorized parts and services with intent not to sell them as advertised. In violation of Md. Code Ann. Com. Law § 13-301(9), Harley-Davidson has sold the motorcycles and authorized parts and services using false and misleading statements with the intent that a consumer rely on the same in connection with the sale of consumer goods and services and with the subsequent performance of a merchant with respect to an agreement of sale.

569. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

570. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. "It is the intent of the General Assembly [of Maryland] that in construing the term 'unfair or deceptive trade practices,' due consideration and weight be given to the interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts" Md. Code Ann. Com. Law § 13-105.

571. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

572. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

573. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and

the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

574. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

575. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Maryland Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

576. On behalf of themselves and other members of the Maryland Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

577. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Maryland, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants

are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Maryland Consumer Protection Act alleged to have been violated herein.

**COUNT 40**
**MASSACHUSETTS CONSUMER PROTECTION LAW**
**MASS. GEN. LAWS CHAPTER 93A**
**(ON BEHALF OF THE MASSACHUSETTS CLASS)**

578. Plaintiffs incorporate by reference all preceding allegations.

579. Massachusetts Class members purchased branded Harley-Davidson Compatible Parts within Massachusetts during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

580. Under Mass. Gen. Laws ch. 93A §11, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.

581. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Massachusetts.

582. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

583. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Massachusetts.

584. As a direct and proximate result of Defendants' unlawful conduct, members of the Massachusetts Class have been injured in their business or property and are threatened with further

injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

585. By reason of the foregoing, members of the Massachusetts class are entitled to all forms of relief, including actual damages, treble damages, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief available under Mass. Gen. Laws ch. 93A § 11.

586. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

587. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

588. Harley-Davidson directed the foregoing deceptive acts and practices at consumers. Members of the Massachusetts Class are "persons" under the Massachusetts Regulation of Business Practice and Consumer Protection Act. M.G.L.A. 93A, § 1(a).

589. Under M.G.L.A. 93A, § 2(a), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

590. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

591. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. Under

M.G.L.A. 93A, § 2(b),"[i]It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." This action is brought under M.G.L.A. 93A, § 9.

592. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

593. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

594. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy; are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

595. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

596. Harley-Davidson's conduct actually and proximately caused actual damages to Massachusetts Class members. Massachusetts Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

597. Members of the Massachusetts Class seek to enjoin the unlawful acts and practices described herein, to recover his actual damages, double or treble damages, punitive damages, and reasonable attorneys' fees.

598. Plaintiffs served notice of this claim and a written demand for relief on Defendant on October 17, 2023, at least thirty (30) days prior to the filing of this amended complaint. Plaintiffs are thus entitled to receive actual damages or statutory damages of $25 per violation, doubled or trebled as set forth in M.G.L.A., 93A, ¶ 9(3) if Defendants' violation and/or refusal to grant relief is found knowing or made in bad faith.

599. Plaintiffs seek equitable relief pursuant to M.G.L.A., 93A, § 9 on behalf of himself and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Massachusetts, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated,

and/or other consumers have no other adequate remedy at law to ensure future compliance with the Massachusetts Consumer Protection Act alleged to have been violated herein.

**COUNT 41**
**MICHIGAN ANTITRUST REFORM ACT**
**MICH. COMP. LAWS ANN. §§ 445.771, *ET SEQ.***
**(ON BEHALF OF THE MICHIGAN CLASS)**

600. Plaintiffs incorporate by reference all preceding allegations.

601. The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce . . . to prohibit monopolies and attempts to monopolize trade or commerce . . . [and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

602. Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

603. Michigan Class members purchased branded Harley-Davidson Compatible Parts within Michigan during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

604. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Michigan.

605. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Michigan, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

606. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Michigan.

607. As a direct and proximate result of Defendants' unlawful conduct, members of the Michigan Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

608. Members of the Michigan Class are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

**COUNT 42**
**MICHIGAN CONSUMER PROTECTION ACT**
**MICH. COMP. LAWS ANN. §§ 445.901, *ET SEQ.***
**(ON BEHALF OF THE MICHIGAN CLASS)**

609. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

610. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the warranties' repair restriction was unlawful and unenforceable.

611. Defendants are each a "person" as defined by M.C.L.A. § 445.902.

612. Plaintiffs and class members purchased the motorcycles, warranties, parts, and related services for personal purposes.

613. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, §§ 445.903(1)(c), -(e), -(f), -(g), and -(n), of the Michigan Consumer Protection Act. In violation of Md. Code Ann. Com. Law § 13-301(1), Harley-Davidson makes false and misleading representations. In violation of M.C.L.A. § 445.903(1)(c), Harley-

Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of M.C.L.A. § 445.903(1)(e), Harley-Davidson represents that the motorcycles and authorized parts and services are of a particular standard, quality, or grade, when they are of another. In violation of M.C.L.A. § 445.903(1)(f), Harley-Davidson disparages the goods, services or business of another by false or misleading representation of fact. In violation of M.C.L.A. § 445.903(1)(g), Harley-Davidson has advertised the motorcycles and authorized parts and services with intent not to sell them as advertised. In violation of M.C.L.A. § 445.903(1)(n), Harley-Davidson has sold the motorcycles and authorized parts and services using false and misleading statements that cause a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

614. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

615. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

616. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus,

the acts or practices of the Defendants violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

617. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

618. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

619. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

620. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Michigan Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

621. On behalf of themselves and other members of the Michigan Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

622. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Michigan, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Michigan Consumer Protection Act alleged to have been violated herein.

**COUNT 43**
**MINNESOTA ANTITRUST LAW**
**MINN. STAT. §§ 325D.49, *ET SEQ.***
**(ON BEHALF OF THE MINNESOTA CLASS)**

623. Plaintiffs incorporate by reference all preceding allegations.

624. The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

625. Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

626. Plaintiffs Minnesota Class members purchased Harley-Davidson Compatible Parts within Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

627. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Minnesota.

628. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Minnesota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

629. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Minnesota.

630. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Minnesota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

**COUNT 44**
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**MINN. STAT. §§ 325F.44, *ET SEQ.***
**(ON BEHALF OF THE MINNESOTA CLASS)**

631. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

632. Harley-Davidson's actions, representations and conduct have violated, and continue to violate, the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") because

they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods and services to consumers.

633. Each Defendant is a "person" under Minn. Stat. § 325F.43.

634. Plaintiffs and other Minnesota Class Members are "consumers" as that term is defined by the MUDTPA in Minn. Stat. § 325F.43.

635. The motorcycles that Plaintiffs and other similarly situated Minnesota Class Members purchased from Harley-Davidson were "goods" within the meaning of Minn. Stat. § 325F.43.

636. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product and related services to and by the consuming public and have violated, and continue to violate, § 325F.44(1)(5), § 325F.44(1)(8), § 325F.44(1)(9), § 325F.44(1)(14), and § 325F.44(1)(15) of the CLRA. In violation of Minn. Stat. 325F.44(1)(5), Harley-Davidson represents that the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of Minn. Stat. 325F.44(1)(8), Harley-Davidson has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of Minn. Stat. 325F.44(1)(9), Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of Minn. Stat. 325F.44(1)(13), Harley-Davidson engages in conduct which similarly creates a likelihood of confusion or of misunderstanding.

637. Plaintiffs request that this Court enjoin Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Minn. Stat. 325F.45, subd. 1. If Harley-Davidson is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

638. Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Minn. Stat. 325F.45, subd. 1. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendant's ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Minnesota, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Minnesota Uniform Deceptive Trade Practices Act alleged to have been violated herein.

639. Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to Minn. Stat. 325F.45, subd. 2.

**COUNT 45**
**MINNESOTA CONSUMER FRAUD ACT**
**MINN. STAT. §§ 325F.68, *ET SEQ.***
**(ON BEHALF OF THE MINNESOTA CLASS)**

640. Plaintiffs incorporate by reference all preceding allegations.

641. This cause of action is brought pursuant to Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a.

642. This cause of action will benefit the public because Harley-Davidson's unfair and deceptive conduct is aimed generally at Harley owners and consumers throughout the state.

643. By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, *et seq*.

644. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within Minnesota.

645. Defendants' conduct was willful.

646. Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

647. Defendants' misrepresentations and omissions affected the Compatible Parts market.

648. Plaintiffs and Minnesota Class members purchased Harley-Davidson Compatible Parts within Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

649. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Minnesota.

650. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Minnesota, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

651. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Minnesota.

652. Defendants' conduct created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

653. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Minnesota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

654. Plaintiffs and the Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs under Minn. Stat. § 325F68, *et seq*. and applicable case law.

**COUNT 46**
**MISSISSIPPI ANTITRUST ACT**
**MISS. CODE ANN. §§ 75-21-1 *ET SEQ.***
**(ON BEHALF OF THE MISSISSIPPI CLASS)**

655. Plaintiffs incorporate by reference all preceding allegations.

656. Mississippi Class members purchased branded Harley-Davidson Compatible Parts within Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

657. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, in part, through their subsidiaries, affiliates, and/or network of authorized dealerships.

658. Mississippi has at least four Harley-Davison dealerships, including Harley-Davidson of Jackson, which is one of the largest dealerships in the Southern United States.

659. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Mississippi.

660. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which

occurred within Mississippi, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

661. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Mississippi.

662. As a direct and proximate result of Defendants' unlawful conduct, members of the Mississippi Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

**COUNT 47**
**MISSISSIPPI CONSUMER PROTECTION ACT**
**MISS. CODE ANN. §§ 75-24-1 *ET SEQ.***
**(ON BEHALF OF THE MISSISSIPPI CLASS)**

663. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

664. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

665. Defendants are each a "person" as defined by Miss. Code Ann. § 75-24-1.

666. Plaintiffs and class members purchased new motorcycles and branded parts for personal purposes.

667. Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the products and related services to and by the consuming public and have violated, and continue to violate, §§ 445.903(1)(e), -(g), -(h), and -(i) of the Mississippi Consumer Protection Act. In violation of Miss. Code Ann. § 75-24-1(2)(e), Harley-Davidson represents that

the motorcycles and authorized parts and services have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of Miss. Code Ann. § 75-24-1(2)(g), Harley-Davidson represents that the motorcycles and authorized parts and services have or are of a particular standard, quality, or grade, when they are of another. In violation of Miss. Code Ann. § 75-24-1(2)(h), Harley-Davidson disparages the goods, services or business of another by false or misleading representation of fact. In violation of Miss. Code Ann. § 75-24-1(2)(i), Harley-Davidson has advertised the motorcycles and authorized parts and services with intent not to sell them as advertised.

668. The foregoing deceptive acts and practices are unfair, deceptive, and misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

669. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission. "It is the intent of the [Mississippi] Legislature that in construing what constitutes unfair or deceptive trade practices that the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USCS 45(a)(1)) as from time to time amended." Miss. Code Ann. § 75-24-3(c).

670. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus,

the acts or practices of the Defendant, as violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

671. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

672. In addition, Harley-Davidson engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular § 5 of the FTCA and the Disclosure Rule), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

673. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

674. Harley-Davidson's conduct actually and proximately caused actual damages to Plaintiffs and Class members. Mississippi Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

675. On behalf of himself and other members of the Mississippi Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive and/or treble damages, and reasonable attorneys' fees.

676. Plaintiffs seek equitable relief on behalf of themselves and those similarly situated, including injunctive relief, enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Mississippi, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Mississippi Consumer Protection Act alleged to have been violated herein.

**COUNT 48**
**MISSOURI MERCHANDISING PRACTICES ACT**
**MO. STAT. §§ 407.010 ET SEQ.**
**(ON BEHALF OF THE MISSOURI CLASS)**

677. Plaintiffs incorporate by reference all preceding allegations.

678. Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

679. Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint.

680. Missouri Class members purchased branded Harley-Davidson Compatible Parts within Missouri during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

681. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Missouri.

682. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Missouri, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

683. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Missouri.

684. As a direct and proximate result of Defendants' unlawful conduct, members of the Missouri Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

685. Members of the Missouri Class were injured with respect to purchases of Compatible Parts in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

**COUNT 49**
**MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**MONTANA CODE ANN. §§30-14-101 *ET SEQ.***
**(ON BEHALF OF THE MONTANA CLASS)**

686. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

687. The Montana Unfair Trade Practices and Consumer Protection Act of 1973 ("MUTPCPA") prohibits any unfair methods of competition and unfair or deceptive acts or practices in business, commerce, or trade. MCA 30-14-103.

688. Defendants have violated MUTPCPA through their unfair and/or deceptive practices.

689. Montana Class members purchased branded Harley-Davidson Compatible Parts within Montana during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

690. Plaintiffs are consumers within the plain meaning of the MUTPCPA, having bought or leased their Harley-Davidson motorcycles and having bought Compatible Parts for personal, family, or household use.

691. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

692. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Montana, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

693. Defendants engaged in the aforesaid conduct which is unfair and deceptive.

694. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Montana.

695. As a direct and proximate result of Defendants' unlawful conduct, members of the Montana Class have been injured in their business or property and are threatened with

further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

696. Members of the Montana Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Montana in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

697. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the MUTPCPA 30-14-101, *et seq*.

**COUNT 50**
**NEBRASKA JUNKIN ACT**
**NEB. REV. STAT. §§59-801 *ET SEQ.***
**(ON BEHALF OF THE NEBRASKA CLASS)**

698. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

699. Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

700. Nebraska Class members purchased branded Compatible Parts within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

701. Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

702. Through their unlawful tying scheme, Defendants engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of Nebraska, and

monopolized or attempted to monopolize the market for Compatible Parts within the intrastate commerce of Nebraska by possessing monopoly power in the market and willfully maintaining that power, in violation of Neb. Rev. Stat. §§ 59-801, *et seq*.

703. Defendants' conduct has a significant nexus to Nebraska because the Nebraska Class members are located in Nebraska, purchased, repaired, and owned motorcycles in Nebraska, and engaged in repair services in Nebraska, all of which are activities affected by Defendants' unlawful conduct and cause Class Members to pay supra-competitive prices in Nebraska.

704. Defendants' unlawful conduct caused proximate, distinct, and palpable injury to class members located in the state of Nebraska.

705. Members of the Nebraska Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Nebraska in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

706. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Junkin Act, Neb. Rev. Stat. §59-801, et seq.

**COUNT 51**
**NEBRASKA CONSUMER PROTECTION ACT**
**NEB. REV. STAT. §§59-1601 *ET SEQ.***
**(ON BEHALF OF THE NEBRASKA CLASS)**

707. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

708. The Nebraska Consumer Protection Act deems unlawful any unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce. Neb. Rev. Stat. §59-1602.

709. Defendants have violated Neb. Rev. Stat. §59-1601, *et seq*. through their unfair and/or deceptive practices.

710. Nebraska Class members purchased branded Harley-Davidson Compatible Parts within Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

711. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

712. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Nebraska, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

713. Defendants engaged in the aforesaid conduct which is unfair and deceptive.

714. Defendants' unlawful conduct substantially affected intrastate trade and commerce in Nebraska.

715. As a direct and proximate result of Defendants' unlawful conduct, members of the Nebraska Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

716. Members of the Nebraska Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Nebraska in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

717. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Neb. Rev. Stat. §59-1601, *et seq*.

**COUNT 52**
**NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**NEB. REV. STAT. §§87-301 *ET SEQ.***
**(ON BEHALF OF THE NEBRASKA CLASS)**

718. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

719. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

720. Plaintiffs and Class members are persons who purchased Harley-Davidson products for personal purposes.

721. Defendants, Plaintiffs, and Class members are "persons" under the statute. Neb. Rev. Stat. § 87-301(19).

722. The Harley-Davidson motorcycles, service, and parts are goods and services under the statute. Neb. Rev. Stat. §§ 87-301(10), (15).

723. Under Neb. Rev. Stat. § 87-302 states a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she" "(2) Causes

likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;" "(6) Represents that goods or services do not have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they have or that a person does not have a sponsorship, approval, status, affiliation, or connection that he or she has;" "(10) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person;" and "(16) Uses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme[.]"

724. Neb. Rev. Stat. § 87-303.01 further states "(1) An unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of the Uniform Deceptive Trade Practices Act. (2) The unconscionability of an act or practice shall be a question of law for the court. If it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination."

725. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

726. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

727. Defendants' conduct is also materially misleading because Defendants, a warrantor, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

728. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs and Class relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

729. In addition, Defendants engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular Neb. Rev. Stat. §§ 59-801, *et seq.*, and Neb. Rev. Stat. §§ 87-301, *et seq.*), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

730. Defendants knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

731. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and the Class members. Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

732. Plaintiffs and the Nebraska Class seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive damages, and reasonable attorneys' fees.

733. Plaintiffs and Class members seek equitable relief pursuant to Neb. Rev. Stat. §§ 87-303.09 including injunctive relief enjoining Defendants from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiff's remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Nebraska, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Nebraska Unfair and Deceptive Trade Practices Act alleged to have been violated herein.

**COUNT 53**
**NEVADA UNFAIR TRADE PRACTICES ACT**
**NEVADA REV. STAT. §§598A.010 *ET SEQ.***
**(ON BEHALF OF THE NEVADA CLASS)**

734. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

735. The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and competitive production and sale of commodities and services is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

736. Nevada Class members purchased branded Compatible Parts within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

737. The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include, *inter alia*, price fixing, division of markets, allocation of customers, tying arrangements, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060(1).

738. Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. § 598A.210(2).

739. Defendants acted through their unlawful tying scheme to restrain the trade of Compatible Parts in Nevada and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and willfully maintain that monopoly, within the intrastate commerce of Nevada, in violation of Nev. Rev. Stat. Ann. §§ 598A, *et seq*.

740. Defendants' conduct has a significant nexus to Nevada because the Nevada Class members are in Nevada, purchased motorcycles from Defendants, repaired, and owned motorcycles in Nevada, and engaged in repair services in Nevada, all of which are activities affected by Defendants' unlawful conduct and cause Class Members to pay supra-competitive prices in Nevada.

741. Defendants' unlawful conduct caused proximate, distinct, and palpable injury to class members located in the state of Nevada.

742. Plaintiffs and members of the Nevada Class were injured and are threatened with injury with respect to purchases of Compatible Parts in Nevada in that at least thousands of sales of Defendants' Compatible Parts took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

743. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the NUTPA Nevada Rev. Stat. Ann. §§ 598A.010 *et seq*.

**COUNT 54**
**NEVADA DECEPTIVE TRADE PRACTICES ACT**
**NEVADA REV. STAT. §§598.0903 *ET SEQ.***
**(ON BEHALF OF THE NEVADA CLASS)**

744. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

745. Defendant has violated the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598.0903, *et seq*., through their unfair and/or deceptive practices.

746. Plaintiffs and the Nevada Class are victims of the consumer fraud perpetuated by Defendants.

747. Defendants knowingly and willfully misrepresented the characteristics of their product, including the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle.

748. These affirmative misrepresentations misled Plaintiffs and members of the Nevada Class as purchasers of those products.

749. Plaintiffs and members of the Nevada Class have suffered an ascertainable loss of money and/or property as a result of Defendant's false representations.

750. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Nevada Class.

751. Defendants' conduct substantially affected commerce and consumers in Nevada throughout the Class Period.

752. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the NDTPA, Nev. Rev. Stat. § 598.0903, *et seq*.

**COUNT 55**
**NEW HAMPSHIRE ANTITRUST LAW**
**N.H. REV. STAT. ANN. §§356:1 *ET SEQ.***
**(ON BEHALF OF THE NEW HAMPSHIRE CLASS)**

753. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

754. Title XXXI, Chapter 356 of the New Hampshire Statutes deems unlawful every "contract, combination, or conspiracy in restraint of trade." N.H. Rev. Stat. Ann. § 356:2.

755. Title XXXI, Chapter 356 of the New Hampshire Statutes also deems "the establishment, maintenance or use of monopoly power, or any attempt to establish, maintain or use monopoly power over trade or commerce for the purpose of affecting competition or controlling, fixing or maintaining prices" as unlawful. N.H. Rev. Stat. Ann. § 356:3.

756. New Hampshire Class members purchased branded Compatible Parts within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

757. Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

758. Through their unlawful tying scheme, Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts Market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred in New Hampshire, in violation of N.H. Rev. Stat. Ann. §§ 356:1, *et seq*.

759. Defendants' conduct has a significant nexus to New Hampshire because the New Hampshire Class members are located in New Hampshire, purchased, repaired, and owned motorcycles in New Hampshire, and engaged in repair services in New Hampshire, all of which are activities affected by Defendants' unlawful conduct and cause Class Members to pay supra-competitive prices in New Hampshire.

760. Members of the New Hampshire Class were injured and are threatened with injury with respect to purchases of Compatible Parts in New Hampshire in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendants' unlawful conduct.

761. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the New Hampshire antitrust law, N.H. Rev. Stat. Ann. § 356:1, *et seq*.

**COUNT 56**
**NEW HAMPSHIRE CONSUMER PROTECTION ACT**
**N.H. REV. STAT. ANN. §§358-A:1 *ET SEQ.***
**(ON BEHALF OF THE NEW HAMPSHIRE CLASS)**

762. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

763. The New Hampshire Consumer Protection Act ("NHCPA") deems it unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within the state. N.H. Rev. Stat. Ann. §358-A:2.

764. Defendants have violated N.H. Rev. Stat. Ann. §358-A:1, et seq. through their unfair method of competition and/or unfair or deceptive practices.

765. New Hampshire Class members purchased branded Harley-Davidson Compatible Parts within New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

766. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

767. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part

of which occurred within New Hampshire, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

768. Defendants also knowingly and willfully made misrepresentations, which were received by Plaintiffs and the New Hampshire Class within New Hampshire at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle.

769. These affirmative misrepresentations misled Plaintiffs and members of the New Hampshire Class as purchasers of those products.

770. Plaintiffs and members of the New Hampshire Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

771. Defendants engaged in the aforesaid conduct which is unfair and deceptive.

772. Defendants' conduct has a significant nexus to New Hampshire because the New Hampshire Class members are located in New Hampshire, purchased, repaired, and owned motorcycles in New Hampshire, and engaged in repair services in New Hampshire, all of which are activities affected by Defendants' unlawful conduct and cause Class Members to pay supra-competitive prices in New Hampshire. Thus, Defendants' unlawful conduct substantially affected intrastate trade and commerce in New Hampshire.

773. As a direct and proximate result of Defendants' unlawful conduct, members of the New Hampshire Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

774. Members of the New Hampshire Class were injured and will continue to be injured with respect to purchases of Compatible Parts in New Hampshire in that they paid and

will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

775. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the N.H. Rev. Stat. Ann. §358-A:1, *et seq*.

**COUNT 57**
**NEW JERSEY CONSUMER FRAUD ACT**
**N.J. STAT. ANN. §§56:8-1 *ET SEQ.***
**(ON BEHALF OF THE NEW JERSEY CLASS)**

776. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

777. N.J.S.A. 56:8-2, *et seq*., prohibits any person from engaging in unconscionable or abusive deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact in connection with the sale or lease of any merchandise.

778. Plaintiffs and the New Jersey Class are victims of the consumer fraud perpetuated by Defendants.

779. Defendants knowingly and willfully made false statements, and engaged in consumer fraud regarding their product, including the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle. These false representations also included statements about the nature and extent of the warranty associated with the sale of Defendant's product.

780. These affirmative misrepresentations misled Plaintiffs and members of the New Jersey Class as purchasers of those products.

781. Plaintiffs and members of the New Jersey Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

782. Defendants' false representations were made with the intent that Plaintiffs, the New Jersey Class and other consumers would rely on them.

783. Plaintiffs and the New Jersey Class did rely on these misrepresentations which were a direct and proximate cause of actual injury to Plaintiffs and members of the New Jersey Class.

784. Defendants' conduct substantially affected commerce and consumers in New Jersey throughout the Class Period.

785. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under N.J.S.A. 56:8-1, *et seq*.

**COUNT 58**
**NEW MEXICO ANTITRUST ACT**
**N.M. STAT. ANN. §§57-1-1 *ET SEQ.***
**(ON BEHALF OF THE NEW MEXICO CLASS)**

786. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

787. The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. § 57-1-15.

788. Plaintiffs and New Mexico Class members purchased branded Compatible Parts within the State of New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

789. Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

790. Through their unlawful tying scheme, Defendants engaged acted to restrain, or to monopolize trade or commerce in the market for Compatible Parts, and established, maintained, or used a monopoly, or attempted to do so, a substantial part of which occurred within New Mexico, for the purposes of excluding competition or controlling, fixing, or maintaining prices for Compatible Parts, in violation of N.M. Stat. Ann. § 57-1-1, *et seq*.

791. Defendants engaged in the restraint of trade through their unlawful tying scheme and monopolized or attempted to monopolize trade for Compatible Parts within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. §§ 57-1-1, *et seq*.

792. Defendants' unlawful conduct substantially affected New Mexico's trade and commerce because the New Mexico Class members are located in New Mexico, purchased, repaired, and owned motorcycles in New Mexico, and engaged in repair services in New Mexico, all of which are activities affected by Defendants' unlawful conduct.

793. Plaintiffs and members of the New Mexico Class were injured and will continue to be injured with respect to purchases of Compatible Parts in New Mexico in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

794. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the New Mexico Antitrust Act, N.M.S.A. § 57-1-1, *et seq*.

**COUNT 59**
**NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**N.M. STAT. ANN. §§57-12-1 *ET SEQ.***
**(ON BEHALF OF THE NEW MEXICO CLASS)**

795. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

796. The New Mexico Unfair Trade Practices Act ("NMUPA") prohibits any unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce. N.M. Stat. Ann. § 57-12-3.

797. Defendants have violated NMUPA through their unfair and/or unconscionable trade practices.

798. New Mexico Class members purchased branded Harley-Davidson Compatible Parts within New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

799. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

800. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

801. Defendants also knowingly and willfully made false and misleading representations in connection to the sale of its Harley-Davidson motorcycles, which were received by Plaintiffs and the New Mexico Class within New Mexico at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle.

802. These affirmative misrepresentations misled Plaintiffs and members of the New Mexico Class as purchasers of those products.

803. Defendants' unlawful conduct resulted in a gross disparity between the price Plaintiffs paid for Harley-Davidson motorcycles and the value received.

804. Plaintiffs and members of the New Mexico Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

805. Defendants engaged in the aforesaid conduct, which is unfair, unconscionable, and deceptive.

806. Defendants' unlawful conduct substantially affected intrastate trade and commerce in New Mexico.

807. As a direct and proximate result of Defendants' unlawful conduct, members of the New Mexico Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

808. Plaintiffs and members of the New Mexico Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in New Mexico in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

809. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the NMUPA, N.M. Stat. Ann. § 57-12-1, *et seq*.

## COUNT 60
## THE DONNELLY ACT
## N.Y. GEN. BUS. LAW §§ 340 *ET SEQ.*
## (ON BEHALF OF THE NEW YORK CLASS)

810. Plaintiffs incorporate by reference all preceding allegations.

811. Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

812. Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

813. New York Class members purchased Harley-Davidson branded Compatible Parts within New York during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

814. Through their unlawful tying scheme, Defendants acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within New York.

815. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within New York, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

816. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, in part, through their subsidiaries, affiliates, and/or network of authorized dealerships.

817. Defendants' unlawful conduct substantially affected intrastate trade and commerce in New York.

818. As a direct and proximate result of Defendants' unlawful conduct, members of the New York Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

819. Plaintiffs and members of the New York Class are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees.

**COUNT 61**
**NEW YORK DECEPTIVE PRACTICES ACT,**
**NEW YORK GEN. BUS. LAW § 349**
**(ON BEHALF OF THE NEW YORK CLASS)**

820. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

821. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

822. Harley-Davidson directed the foregoing deceptive acts and practices at consumers. Plaintiffs and members of the New York Class are "consumers" under the New York Deceptive Practices Act.

823. Under N.Y. G.B.L § 349(a), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . declared unlawful."

824. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

825. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

826. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

827. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

828. Harley-Davidson knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

829. Harley-Davidson's conduct actually and proximately caused actual damages to New York Class members. New York Class Members were injured as a direct and proximate result of Harley-Davidson's conduct because they would not have purchased the branded parts if they

knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

830. On behalf of themselves and other members of the New York Class, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, punitive damages, and reasonable attorneys' fees.

831. Plaintiffs seek equitable relief pursuant to N.Y.G.B.L. § 349(h), *et seq*. on behalf of themselves and those similarly situated, including injunctive relief enjoining Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and New York, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the New York Consumer Fraud Act alleged to have been violated herein.

**COUNT 62**
**NORTH CAROLINA ANTITRUST ACT**
**N.C. GEN. STAT. ANN. §§75-1 *ET SEQ.***
**(ON BEHALF OF THE NORTH CAROLINA CLASS)**

832. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

833. By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. §§75-1, *et seq*.

834. North Carolina Class members purchased branded Compatible Parts within the State of North Carolina during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

835. Through the unlawful tying scheme, Defendants engaged in restraint of trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Carolina.

836. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina as prohibited by N.C. Gen. Stat. Ann. §75-2.1.

837. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

838. Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

839. Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to members of the North Carolina Class.

840. Defendants' unlawful conduct occurred within the state because the North Carolina Class members are located in North Carolina, purchased, repaired, and owned motorcycles in North Carolina, and engaged in repair services in North Carolina, all of which are activities affected by Defendants' unlawful conduct.

841. Members of the North Carolina Class were injured and will continue to be injured with respect to purchases of Compatible Parts in North Carolina in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

842. Members of the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the North Carolina Antitrust Act, N.C.G.S.A. § 75-1, *et seq*.

**COUNT 63**
**NORTH DAKOTA UNIFORM STATE ANTITRUST ACT**
**N.D. CENTURY CODE §§51-08.1 *ET SEQ.***
**(ON BEHALF OF THE NORTH DAKOTA CLASS)**

843. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

844. The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code §§ 51-08.1, *et seq*.

845. North Dakota Class members purchased branded Compatible Parts within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

846. Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

847. Through their unlawful tying scheme, Defendants acted to restrain, or to monopolize trade or commerce in the market for Compatible Parts, and established, maintained, or used a monopoly, or attempted to do so, a substantial part of which occurred

within North Dakota, for the purposes of excluding competition or controlling, fixing, or maintaining prices for Compatible Parts, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

848. Defendants' unlawful conduct substantially affected North Dakota's trade and commerce because the North Dakota Class members are located in North Dakota, purchased, repaired, and owned motorcycles in North Dakota, and engaged in repair services in North Dakota, all of which are activities affected by Defendants' unlawful conduct.

849. Defendants' violations of North Dakota law were flagrant.

850. Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

851. As a direct and proximate result of Defendants' unlawful conduct, members of the North Dakota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

852. Members of the North Dakota Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in North Dakota in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

853. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages, treble damages for flagrant violations, or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the N.D. Cent. Code §§51-08.1, *et seq*.

**COUNT 64**
**NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT**
**N.D. CENTURY CODE §§51-15-01 *ET SEQ.***
**(ON BEHALF OF THE NORTH DAKOTA CLASS)**

854. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

855. The North Dakota Unlawful Sales or Advertising Practices Act prohibits any person from engaging in deceptive acts, including misrepresentation with the intent that others rely on that misrepresentation in connection with the sale or advertisement or any merchandise, and prohibits the use or employment of any unconscionable practice in connection with such a sale. NDDC, 51-15-02.

856. Defendants have violated the North Dakota Unlawful Sales or Advertising Practices Act through their deceptive and/or unconscionable sales practices.

857. North Dakota Class members purchased branded Harley-Davidson Compatible Parts within North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

858. Defendants knowingly and willfully made false and misleading representations in connection to the sale of their Harley-Davidson motorcycles, which were received, and relied upon by Plaintiffs and the North Dakota Class within North Dakota at the time of purchase of their product, including misrepresentations regarding the unlawful restriction on a consumer's ability to repair their Harley-Davidson motorcycle.

859. These affirmative misrepresentations misled Plaintiffs and members of the North Dakota Class as purchasers of those products.



Case 2:23-md-03064-WCG Filed 07/17/23 Page 164 of 232 Document 33

860. Plaintiffs and members of the North Dakota Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations and unconscionable sales practices.

861. Defendants engaged in the aforesaid conduct, which is unconscionable and deceptive.

862. Defendants' unlawful conduct substantially affected intrastate trade and commerce in North Dakota.

863. As a direct and proximate result of Defendants' unlawful conduct, members of the North Dakota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

864. Members of the North Dakota Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in North Dakota in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

865. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under NDCC, 51-15-01, *et seq*.

**COUNT 65**
**OHIO CONSUMER SALES PRACTICES ACT**
**O.R.C. §§ 1345.01 *ET SEQ.***
**(ON BEHALF OF THE OHIO CLASS)**

866. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

867. Defendants are "suppliers" under the Act. O.R.C. § 1345.01.

868. "'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." O.R.C. § 1345.01.

869. Under Ohio Revised Code §§ 1345.02, "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

870. "Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter." O.R.C. § 1345.09.

871. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Ohio by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

872. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violate the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

873. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms

of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

874. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

875. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

876. Defendants' acts and omissions are likely to deceive the general public.

877. Defendants engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by O.R.C. § 1345.02.

878. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

879. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition, in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

880. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

881. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this OCSPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the OCSPA to obtain relief.

882. Plaintiffs and the Class members also seeks equitable relief, including restitution, with respect to his "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

883. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

884. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that

Defendants will continue to violate the laws of Ohio, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Ohio Consumer Sales Practices Act alleged to have been violated herein.

**COUNT 66**
**OHIO UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**O.R.C. §§ 4165.01 *ET SEQ.***
**(ON BEHALF OF THE OHIO CLASS)**

885. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

886. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

887. Plaintiffs and Class members are persons who purchased Harley-Davidson products for personal purposes.

888. Defendants, Plaintiffs, and Class members are "persons" under the statute. O.R.C. § 4165.01.

889. Ohio Revised Code § 4165.02 states "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:" "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;"

"(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" and "(11) Advertises goods or services with intent not to sell them as advertised[.]"

890. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

891. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

892. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants, violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

893. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs and Class relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

894. In addition, Defendants engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular O.R.C. §§ 1345.01, *et seq.*, and

O.R.C. §§ 4165.02, *et seq.*), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

895. Defendants knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

896. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and the Class members. Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

897. Plaintiffs and the Ohio Class seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive damages, and reasonable attorneys' fees.

898. Plaintiffs and Class members seek equitable relief pursuant to O.R.C. § 4165.03 including injunctive relief enjoining Defendants from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Ohio, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants

is not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Ohio Uniform Deceptive Trade Practices Act alleged to have been violated herein.

**COUNT 67**
**OKLAHOMA CONSUMER PROTECTION ACT**
**OKLA. STAT. TIT. 15, §§ 751, *ET SEQ.***
**(ON BEHALF OF THE OKLAHOMA CLASS)**

899. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

900. Defendants, Plaintiffs, and Class Members are "persons" under the Act. Okla. Stat. tit. 15, § 752.

901. Oklahoma Statutory Title 15, § 752, states a "'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral[.]"

902. Oklahoma Statutory Title 15, § 752, states a "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

903. Oklahoma Statutory Title 15, § 753, states: "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person" "2. Makes a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;" "3. Makes a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;" "5. Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses,

benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" "12. Employs 'bait and switch' advertising, which consists of an offer to sell the subject of a consumer transaction which the seller does not intend to sell" "20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title[.]"

904. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Oklahoma by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

905. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violate the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

906. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

907. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

908. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

909. Defendants' acts and omissions are likely to deceive the general public.

910. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Okla. Stat. tit. 15, § 752.

911. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

912. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

913. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

914. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with

respect to their "unlawfulness" claims in this OKCPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the OKCPA to obtain relief.

915. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to his "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

916. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

917. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Oklahoma, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Oklahoma Consumer Protection Act alleged to have been violated herein.

**COUNT 68**
**OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**OKLA. STAT. TIT. 78, §§ 51, *ET SEQ.***
**(ON BEHALF OF THE OKLAHOMA CLASS)**

918. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

919. By the acts and conduct alleged herein, Defendants committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties. As discussed above, Defendants failed to disclose that the Products' repair restriction was unlawful and unenforceable.

920. Plaintiffs and Class members are persons who purchased Harley-Davidson products for personal purposes.

921. Defendants, Plaintiffs, and Class members are "persons" under the statute. Okla. Stat. tit. 78, § 52(8).

922. Oklahoma Statute Title 78, § 53 states "[a] person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person:" "2. Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services;" "3. Knowingly makes a false representation as to affiliation, connection, association with, or certification by another;" and "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith[.]"

923. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

924. Defendants' conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

925. Defendants' conduct is also materially misleading because Defendants, warrantors, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendants violate Section 701.3(a)(2) of the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

926. As set forth in the allegations concerning each Plaintiff, in purchasing the Harley-Davidson branded parts, the Plaintiffs and Class relied on the misrepresentations and/or omissions identified above. Reasonable consumers would have been expected to have relied on these misrepresentations and omissions.

927. In addition, Defendants engaged in unfair and unconscionable conduct because the unlawful repair restrictions offend public policy (in particular Okla. Stat. tit. 15, §§ 751, *et seq.*, and Okla. Stat. tit. 78, §§ 51, *et seq.*), are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and have caused substantial harm that greatly outweighs any possible utility from the conduct.

928. Defendants knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

929. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and the Class members. Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the branded parts if they knew the truth about the unlawful nature of the repair restrictions, or would have paid substantially less for them.

930. Plaintiffs and the Class seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, punitive damages, and reasonable attorneys' fees.

931. Plaintiffs and Class members seek equitable relief pursuant to Okla. Stat. tit. 78, §§ 54 including injunctive relief enjoining Defendants from continuing to employ the unlawful methods, acts and practices alleged herein. Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of the United States and Oklahoma, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the Oklahoma Deceptive Trade Practices Act alleged to have been violated herein.

**COUNT 69**
**OREGON UNFAIR TRADE PRACTICES LAW**
**OREGON REV. STAT. §§646.605 *ET SEQ.***
**(ON BEHALF OF THE OREGON CLASS)**

932. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

933. Defendants, Plaintiffs, and Class Members are "persons" under the law. Or. Rev. Stat. Ann. § 646.605(4).

934. Oregon Revised Statute §§ 646.608 states "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:" "(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have." "(s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." "(u) Engages in any other unfair or deceptive conduct in trade or commerce."

935. Oregon Revised Statute §§ 646.638 states "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater."

936. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Oregon by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

937. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

938. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

939. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

940. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

941. Defendants' acts and omissions are likely to deceive the general public.

942. Defendants engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by O.R.S. § 646.608.

943. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

944. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will

be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

945. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

946. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this OUTPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the OUTPA to obtain relief.

947. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to their "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

948. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

949. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such

misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Oregon, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Oregon Unlawful Trade Practices Law alleged to have been violated herein.

**COUNT 70**
**OREGON ANTITRUST LAW**
**OREGON REV. STAT. §§646.705 *ET SEQ.***
**(ON BEHALF OF THE OREGON CLASS)**

950. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

951. Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

952. Oregon Class members purchased branded Compatible Parts within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

953. Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

954. Through their unlawful tying scheme, Defendants engaged in restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize the trade or commerce of Compatible Parts, and maintain that monopoly, a substantial part of which occurred within Oregon, in violation of Or. Rev. Stat. §§ 646.705, *et seq*.

955. Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

956. As a direct and proximate result of Defendants' unlawful conduct, members of the Oregon Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

957. Members of the Oregon Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in Oregon in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

958. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under Or. Rev. Stat. §§ 646.705, *et seq*.

**COUNT 71**
**PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**73 PA. STAT. ANN. § 201-2 *ET SEQ.***
**(ON BEHALF OF THE PENNSYLVANIA CLASS)**

959. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

960. Defendants, Plaintiffs, and Class Members are "persons" under the law. 73 Pa. Stat. Ann. § 201-2(2), (11).

961. Pennsylvania Statute § 201-2 states "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following:" "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" "(ix) Advertising goods or services with intent not to sell them as advertised;" and "(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

962. "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater." 73 Pa. Stat. Ann. § 201-9.2

963. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Pennsylvania by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

964. In particular, Defendants have engaged, and continue to engage, in unlawful practices which, without limitation, violate the following state and federal laws: (i) the MMWA as

described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

965. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

966. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

967. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

968. Defendants' acts and omissions are likely to deceive the general public.

969. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by 73 Pa. Stat. Ann. § 201-3.

970. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

971. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result

of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

972. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

973. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this Pennsylvania Unfair Trade Practices and Consumer Protection Law cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the Pennsylvania Unfair Trade Practices and Consumer Protection Law to obtain relief.

974. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to his "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

975. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

976. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Pennsylvania, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Pennsylvania Unfair Trade Practices and Consumer Protection Law alleged to have been violated herein.

**COUNT 72**
**RHODE ISLAND ANTITRUST ACT**
**R.I. GEN LAWS §§6-36-1 *ET SEQ.***
**(ON BEHALF OF THE RHODE ISLAND CLASS)**

977. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

978. The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent, or decrease competition. R.I. Gen. Laws § 6-36- 2(a)(2).

979. Rhode Island Class members purchased branded Compatible Parts within the State of Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

980. Under the Rhode Island Antitrust Act, as of July 15, 2013, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws §§ 6-36-7(d), 6-36-11(a).

981. Through their unlawful tying scheme, Defendants engaged in the restraint of trade of Compatible Parts within the intrastate commerce of Rhode Island, and established, maintained, or used, or attempted to establish, maintain, or use, a monopoly in the trade of Compatible Parts for the purpose of excluding competition or controlling, fixing, or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws §§ 6-36-1, *et seq*.

982. As a direct and proximate result of Defendants' unlawful conduct, members of the Rhode Island Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

983. Members of the Rhode Island Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in Rhode Island in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

984. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under R.I. Gen. Laws §§ 6-36-1, *et seq*.

**COUNT 73**
**RHODE ISLAND UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT**
**R.I. GEN LAWS §§6-13.1-1 *ET SEQ.***
**(ON BEHALF OF THE RHODE ISLAND CLASS)**

985. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

986. Defendants have violated the Rhode Island Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), R.I. Gen. Laws §§6-13.1-1, *et seq*. through their unfair and/or deceptive practices.

987. Rhode Island Class members purchased branded Harley-Davidson Compatible Parts within Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price of the Compatible Parts would have been lower.

988. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

989. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Rhode Island, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

990. Plaintiffs and the Rhode Island Class are also victims of consumer fraud perpetuated by Defendants.

991. Defendants owed a duty to Plaintiffs and the Rhode Island Class to disclose their unlawful restriction on the ability of consumers to freely repair their Harley-Davidson motorcycles and instead knowingly and willfully engaged in deception, affirmative misrepresentations, and material omissions regarding the restriction.

992. These affirmative misrepresentations and material omissions misled Plaintiffs and members of the Rhode Island Class acting reasonably under the circumstances to believe that they were purchasing a motorcycle free from any such unlawful restriction.

993. Plaintiffs and members of the Rhode Island Class have suffered an ascertainable loss of money and/or property as a result of Defendants' false representations.

994. As a direct and proximate result of Defendants' unlawful, unfair, and/or deceptive trade and business practices above, members of the Rhode Island Class have been injured in their business or property in that they were deprived of open and free competition and paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

995. Defendants' conduct substantially affected commerce and consumers in Rhode Island throughout the Class Period.

996. Defendants' acts offend public policy as established by the statutes and common law of Rhode Island.

997. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Rhode Island UTPCPA, R.I. Gen. Laws §§6-13.1-1, *et seq*.

**COUNT 74**
**SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**S.C. CODE ANN. §§39-5-10 *ET SEQ.***
**(ON BEHALF OF THE SOUTH CAROLINA CLASS)**

998. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

999. The South Carolina Unfair Trade Practices Act ("SCUTPA") prohibits any unfair methods of competition and unfair or deceptive trade practices in the conduct of any trade or commerce. S.C. Code Ann. § 39-5-20(a).

1000. South Carolina Class members purchased branded Harley-Davidson Compatible Parts within South Carolina during the Class Period. But for Defendants' conduct set forth herein, the price of the branded Compatible Parts would have been lower.

1001. Through their unlawful tying scheme, Defendants unfairly monopolized trade or commerce in the Compatible Parts market.

1002. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within South Carolina, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

1003. Plaintiffs and members of the South Carolina Class have suffered an ascertainable loss of money and/or property as a result of Defendants' unfair methods or competition and unfair or deceptive practices.

1004. Defendants' unlawful conduct substantially affected intrastate trade and commerce in South Carolina.

1005. As a direct and proximate result of Defendants' unlawful conduct, members of the South Carolina Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1006. Members of the South Carolina Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in South Carolina in that they

paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1007. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the SCUTPA, §§39-5-10, *et seq*.

**COUNT 75**
**SOUTH DAKOTA ANTITRUST LAW**
**S.D. CODIFIED LAWS §§37-1-3.1 *ET SEQ.***
**(ON BEHALF OF THE SOUTH DAKOTA CLASS)**

1008. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1009. Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies, and discriminatory trade practices. S.D. Codified Laws §§ 37-1-3.1, 3.2.

1010. South Dakota Class members purchased branded Compatible Parts within the State of South Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1011. Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

1012. Through their unlawful tying scheme, Defendants engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and willfully maintain that monopoly, within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws §§ 37-1, *et seq*.

1013. Defendants' unlawful conduct substantially affected intrastate trade and commerce within South Dakota by causing residents to pay artificially inflated prices for branded Compatible Parts.

1014. As a direct and proximate result of Defendants' unlawful conduct, members of the South Dakota Class have been injured in their business or property and are threatened with further injury in that they paid supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1015. Members of the South Dakota Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in South Dakota in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendant's unlawful conduct.

1016. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the S.D. Codified Laws §§ 37-1-3.1, *et seq*.

**COUNT 76**
**SOUTH DAKOTA DECEPTIVE TRADE PRACTICES**
**AND CONSUMER PROTECTION STATUTE**
**S.D. CODIFIED LAWS §§37-24-1 *ET SEQ.***
**(ON BEHALF OF THE SOUTH DAKOTA CLASS)**

1017. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1018. Defendants have violated the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24-1, *et seq.*, which prohibits "any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal,

suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."

1019. During the Class Period, Defendants have acted unlawfully by: conditioning their Limited Warranty on the consumer's use of their own branded Compatible Parts and Accessories and subsequently failing to ensure that the terms of the Limited Warranties were available to customers before their purchases.

1020. The injury of Plaintiffs and members of the South Dakota Class resulted from these actions.

1021. Included among the actions of Defendants are their deliberate failures to disclose material facts to Plaintiffs and members of the South Dakota Class.

1022. Defendants misrepresented products which they manufactured, marketed, and sold, by implying that the prices of the branded Compatible Parts were competitive and set by a free and fair market.

1023. In turn, Defendants misled Plaintiffs and members of the South Dakota Class as purchasers and/or consumers of those products. These affirmative misrepresentations and omissions were regarding information important to Plaintiffs and members of the South Dakota Class.

1024. In addition, Plaintiffs and members of the South Dakota Class have suffered an ascertainable loss of money and/or property as a result of Defendants' actions.

1025. As purchasers of the branded Compatible Parts, Plaintiffs and South Dakota Class were adversely affected by the actions of Defendants.

1026. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the South Dakota Class. Defendants' conduct substantially affected commerce and consumers in South Dakota throughout the Class Period.

1027. In addition, Defendants have fraudulently concealed their actions from Plaintiffs and members of the South Dakota Class.

1028. Members of the South Dakota Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in South Dakota in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1029. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws §§ 37-24-1, *et seq*.

**COUNT 77**
**TENNESSEE ANTITRUST LAW**
**TENN. CODE ANN. §§47-25-101 *ET SEQ.***
**(ON BEHALF OF THE TENNESSEE CLASS)**

1030. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1031. By reason of the conduct alleged herein, Defendants have violated Tennessee Code Ann. §§ 47-25-101, *et seq.*, which declares unlawful and against public policy "all arrangements or contracts" which "lessen full and free competition" and which tend to "advance" or "control" the price to the consumer of any product or article.

1032. Tennessee Class members purchased branded Compatible Parts within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1033. Defendants have engaged in unlawful practices which tend to advance or control the price or the cost to end users in the Compatible Parts market throughout Tennessee.

1034. Through their unlawful tying scheme, Defendants engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of Tennessee, and monopolized or attempted to monopolize trade or commerce of Compatible Parts within the intrastate commerce of Tennessee, and maintain that monopoly, in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.

1035. Defendants' unlawful conduct substantially affected intrastate trade and commerce within Tennessee by causing residents to pay artificially inflated prices for branded Compatible Parts.

1036. As a direct and proximate cause of Defendants' unlawful conduct, members of the Tennessee Class have been injured in their business or property and are threatened with further injury in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendants' unlawful conduct.

1037. Members of the Tennessee Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in Tennessee in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendant's unlawful conduct.

1038. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual

damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Tennessee Code Ann. §§ 47-25-101, *et seq*.

**COUNT 78**
**TENNESSEE CONSUMER PROTECTION ACT**
**TENN. CODE ANN. §§ 47-18-101 *ET SEQ.***
**(ON BEHALF OF THE TENNESSEE CLASS)**

1039. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

1040. Defendants, Plaintiffs, and the Class Members are "persons" under the Act. Tenn. Code § 47-18-103(18).

1041. Under Tennessee Code § 47-18-104(a), "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors."

1042. Tennessee Code § 47-18-104(b) declares "unfair or deceptive acts or practices" to include: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;" "(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" "(9) Advertising goods or services with intent not to sell them as advertised;" and "(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;"

1043. "Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-

18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1).

1044. The Tennessee Consumer Protection Act is to "be liberally construed" to protect consumers. Tenn. Code § 47-18-102.

1045. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Tennessee by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

1046. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1047. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1048. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

1049. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not

deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1050. Defendants' acts and omissions are likely to deceive the general public.

1051. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Tenn. Code § 47-18-104(b).

1052. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

1053. As a direct and proximate result of such actions, Plaintiff and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and Class members lost the amount they paid to obtain motorcycles.

1054. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1055. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this TCPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the TCPA to obtain relief.

1056. Plaintiffs and the Class members also seeks equitable relief, including restitution, with respect to his "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1057. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1058. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Tennessee, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Tennessee Consumer Protection Act alleged to have been violated herein.

**COUNT 79**
**TEXAS DECEPTIVE TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**TEX. BUS. & COM. CODE § 17.41 *ET SEQ.***
**(ON BEHALF OF THE TEXAS CLASS)**

1059. Texas Deceptive Trade Practices and Consumer Protection Law (Tex. Bus. & Com. Code § 17.41, *et seq*.)

1060. Plaintiffs and Class Members reallege and incorporate the above allegations by reference as if set forth fully herein.

1061. Defendants, Plaintiffs, and Class Members are "persons" under the law. Tex. Bus. & Com. Code § 17.41(3).

1062. Texas Business & Commercial Code § 17.46(a) states "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1063. Texas Business & Commercial Code § 17.46(b) further states "'false, misleading, or deceptive acts or practices' includes, but is not limited to" "(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;" "(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertising goods or services with intent not to sell them as advertised;" "(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;" and "(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]"

1064. Consumers may bring causes of actions for violations of Tex. Bus. & Com. Code § 17.46(b).

1065. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in South Carolina by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

1066. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1067. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1068. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

1069. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1070. Defendants' acts and omissions are likely to deceive the general public.

1071. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Texas Business & Commercial Code § 17.46.

1072. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

1073. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

1074. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1075. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this Texas Deceptive Trade Practices and Consumer Protection Act cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the Texas Deceptive Trade Practices and Consumer Protection Act to obtain relief.

1076. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to their "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure

8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1077. Plaintiffs Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1078. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Texas, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Texas Deceptive Trade Practices and Consumer Protection Act alleged to have been violated herein.

**COUNT 80**
**UTAH ANTITRUST ACT**
**UTAH CODE ANN. §§76-10-3101 *ET SEQ.***
**(ON BEHALF OF THE UTAH CLASS)**

1079. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1080. The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce." Utah Code Ann. § 76-10-3102.

1081. Utah Class members purchased branded Compatible Parts within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1082. Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

1083. Through their unlawful tying scheme, the Defendants engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and maintain that monopoly, in violation of Utah Code Ann. §§ 76-10-3101, *et seq*.

1084. As a direct and proximate cause of Defendants' unlawful conduct, members of the Utah Class have been injured in their business or property and are threatened with further injury in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendants' unlawful conduct.

1085. Members of the Utah Class were injured and will continue to be injured with respect to purchases of branded Compatible Parts in Utah in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1086. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual

damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Utah Code Ann. §§ 76-10-3101, *et seq*.

**COUNT 81**
**UTAH CONSUMER SALES PRACTICES ACT**
**UTAH CODE ANN. §§13-11-1 *ET SEQ.***
**(ON BEHALF OF THE UTAH CLASS)**

1087. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

1088. By reason of the conduct alleged herein, Defendants have violated the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, *et seq*.

1089. During the class period, Defendants acted unlawfully by: conditioning its Limited Warranty on the consumer's use of their own branded Compatible Parts and Accessories and subsequently failing to ensure that the terms of the Limited Warranties were available to customers before their purchases.

1090. The injury of Plaintiffs and members of the Utah Class resulted from Defendants' deceptive and unconscionable actions.

1091. Defendants knew or had reason to know that their unlawful actions would result in injury to Plaintiffs and the Utah Class

1092. Defendants are suppliers of the Compatible parts as referenced in the preceding paragraphs of this Complaint.

1093. In addition, Plaintiffs and members of the Utah Class have suffered an ascertainable loss of money and/or property as a result of Defendants' actions.

1094. As purchasers of the Compatible Parts, Plaintiffs and Utah Class were adversely affected by the actions of Defendants.

1095. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Utah Class. Defendants' conduct substantially affected commerce and consumers in Utah throughout the Class Period.

1096. In addition, Defendants have fraudulently concealed their actions from Plaintiffs and members of the Utah Class.

1097. Members of the Utah Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Utah in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1098. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Utah Code Ann. §§ 13-11-1, *et seq*.

**COUNT 82**
**UTAH TRUTH IN ADVERTISING ACT**
**UTAH CODE ANN. §§13-11A-1 *ET SEQ.***
**(ON BEHALF OF THE UTAH CLASS)**

1099. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

1100. Defendants, Plaintiffs, and Class members are "persons" under the code. Utah Code § 13-11a-2(7).

1101. Utah Code § 13-11a-1 states, "The purpose of this chapter is to prevent deceptive, misleading, and false advertising practices and forms in Utah. This chapter is to be construed to accomplish that purpose and not to prohibit any particular form of advertising so long as it is truthful and not otherwise misleading or deceptive."

1102. Utah Code § 13-11a-3 further states that "[d]eceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person:" "(e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(g) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(t) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

1103. Utah Code § 13-11a-4 states that "[a]ny person or the state may maintain an action to enjoin a continuance of any act in violation of this chapter and, if injured by the act, for the recovery of damages. If, in such action, the court finds that the defendant is violating or has violated any of the provisions of this chapter, it shall enjoin the defendant from continuance of the violation. It is not necessary that actual damages be proven."

1104. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Utah by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

1105. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1106. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with

unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1107. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

1108. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1109. Defendants' acts and omissions are likely to deceive the general public.

1110. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Utah Code § 13-11a-3.

1111. The aforementioned practices, which Defendants have used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

1112. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

1113. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1114. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UTIA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the UTIA to obtain relief.

1115. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to their UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Code imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1116. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1117. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that

Defendants will continue to violate the laws of Utah, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Utah Truth In Advertising Act alleged to have been violated herein.

**COUNT 83**
**VERMONT CONSUMER PROTECTION ACT**
**9 V.S.A. §§2451 *ET SEQ.***
**(ON BEHALF OF THE VERMONT CLASS)**

1118. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1119. By reason of the conduct alleged herein, Defendants have violated the Vermont Statutes Annotated 9, §§ 2453 *et seq*., which prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

1120. Vermont Class members are expressly permitted to recover from Defendants, even where plaintiffs have "not dealt directly with the defendant" under 9 V.S.A. §§ 2465.

1121. Vermont Class members purchased branded Compatible Parts within the State of Vermont during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1122. Through its unlawful tying scheme, the Defendants engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and maintain that monopoly, in violation of 9 V.S.A. §§ 2453 *et seq*.

1123. Defendants' conduct has and had anticompetitive effects in the Compatible Parts market, as supra-competitive prices for branded Compatible Parts are passed on to end users.

1124. Defendants' unlawful conduct substantially affected Vermont's trade and commerce.

1125. As a direct and proximate result of Defendants' unlawful conduct, members of the Vermont Class have been injured in their business or property and are threatened with further injury in that they paid and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendants' unlawful conduct.

1126. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under 9 V.S.A. §§ 2451 *et seq*.

**COUNT 84**
**VIRGINIA CONSUMER PROTECTION ACT**
**VA. CODE ANN. §§59.1-196 *ET SEQ.***
**(ON BEHALF OF THE VIRGINIA CLASS)**

1127. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

1128. Defendants have violated the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et seq*., through their unfair and/or deceptive practices.

1129. During the Class Period, Defendants have acted unlawfully by: conditioning their Limited Warranty on the consumer's use of their own branded Compatible Parts and Accessories and subsequently failing to ensure that the terms of the Limited Warranties were available to customers before their purchases.

1130. The injury of Plaintiffs and members of the Virginia Class resulted from these actions.

1131. Included among the actions of Defendants are their deliberate failures to disclose material facts to Plaintiffs and members of the Virginia Class.

1132. Defendants misrepresented products which they manufactured, marketed, and sold, by implying that the prices of the branded Compatible Parts were competitive and set by a free and fair market.

1133. In turn, Defendants misled Plaintiffs and members of the Virginia Class as purchasers and/or consumers of those products. These affirmative misrepresentations and omissions were regarding information important to Plaintiffs and members of the Virginia Class, and upon which members of the Virginia Class relied.

1134. In addition, Plaintiffs and members of the Virginia Class have suffered an ascertainable loss of money and/or property as a result of Defendants' actions.

1135. As purchasers of the branded Compatible Parts, Plaintiffs and Virginia Class were adversely affected by the actions of Defendants.

1136. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Virginia Class. Defendants' conduct substantially affected commerce and consumers in South Dakota throughout the Class Period.

1137. In addition, Defendants have fraudulently concealed their actions from Plaintiffs and members of the Virginia Class.

1138. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual

damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et seq*.

**COUNT 85**
**WASHINGTON CONSUMER PROTECTION ACT**
**WASH. REV. CODE ANN. §§ 19.86.010 *ET SEQ.***
**(ON BEHALF OF THE WASHINGTON CLASS)**

1139. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

1140. Under Washington Revised Code §§ 19.86.90, "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars: PROVIDED FURTHER, That such person may bring a civil action in the district court to recover his or her actual damages, except for damages which exceed the amount specified in RCW 3.66.020, and the costs of the suit, including reasonable attorney's fees. The district court may, in its discretion, increase the award of damages to an amount not more than three times the actual damages sustained, but such increased damage award shall not exceed twenty-five thousand dollars. For the purpose of this section, 'person' includes the counties, municipalities, and all political subdivisions of this state."

1141. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Harley-Davidson has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in Washington by engaging in the unlawful, unfair, and deceptive business practices outlined in this complaint.

1142. In particular, Harley-Davidson has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1143. In particular, Harley-Davidson has engaged, and continues to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Harley-Davidson's acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1144. Harley-Davidson's warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

1145. Plaintiffs and those similarly situated relied to their detriment on Harley-Davidson's unlawful, unfair, and deceptive business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Harley-Davidson, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1146. Harley-Davidson's acts and omissions are likely to deceive the general public.

1147. Harley-Davidson engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Harley-Davidson has engaged in unlawful trade practices, as defined and prohibited by RCW § 19.86.90.

1148. The aforementioned practices, which Harley-Davidson has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Harley-Davidson's competitors as well as injury to the general public.

1149. As a direct and proximate result of such actions, Plaintifs and the other Washington Class Members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Washington Class Members lost the amount they paid to obtain motorcycles.

1150. As a direct and proximate result of such actions, Harley-Davidson has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1151. Plaintiffs seeks, on behalf of himself and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this WCPA cause of action, so Plaintiffs and the Class must allege those violations as predicate acts under the WCPA to obtain relief.

1152. Plaintiffs also seeks equitable relief, including restitution, with respect to his UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make

the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Washington Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1153. Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1154. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Harley-Davidson from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Harley-Davidson, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Harley-Davidson will continue to violate the laws of Washington, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Harley-Davidson to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the Washington Consumer Protection Act alleged to have been violated herein.

**COUNT 86**
**WEST VIRGINIA ANTITRUST ACT**
**W. VA. CODE §§47-18-1 & W. VA. CSR §§142-9-1, 2 *ET SEQ.***
**(ON BEHALF OF THE WEST VIRGINIA CLASS)**

1155. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1156. The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

1157. West Virginia Class members purchased branded Compatible Parts within the State of West Virginia during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1158. During the Class Period, through their unlawful tying scheme, the Defendants engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, alleged above in violation of W. Va. Code §§ 47-18-1, *et seq*.

1159. Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the West Virginia Antitrust Act.

1160. Defendants' unlawful conduct substantially affected West Virginia's trade and commerce.

1161. As a direct and proximate result of Defendants' unlawful conduct, members of the West Virginia Class have been injured in their business and property in that they paid more for Compatible Parts than they otherwise would have paid in the absence of Defendants' unlawful conduct.

1162. Members of the West Virginia Class were injured and will continue to be injured with respect to purchases of Compatible Parts in West Virginia in that they paid and will pay supra-competitive prices for branded Compatible Parts due to Defendants' unlawful conduct.

1163. Accordingly, as a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust Act, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 47-18-9 of the West Virginia Code and West Virginia Code of State Rules §§ 142-9-1 and 2.

**COUNT 87**
**WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**
**W. VA. CODE §§46A-6-101 *ET SEQ.***
**(ON BEHALF OF WEST VIRGINIA CLASS)**

1164. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

1165. Defendants have violated the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*, through their unfair and/or deceptive practices.

1166. During the Class Period, Defendants have acted unlawfully by: conditioning their Limited Warranty on the consumer's use of their own branded Compatible Parts and Accessories and subsequently failing to ensure that the terms of the Limited Warranties were available to customers before their purchases.

1167. Defendants misrepresented that the prices of the Compatible Parts were competitive and set by a free and fair market.

1168. In turn, Defendants misled Plaintiffs and members of the West Virginia Class as purchasers and/or consumers of the Compatible Parts.

1169. These affirmative misrepresentations and omissions were regarding information important to Plaintiffs and members of the West Virginia Class.

1170. In addition, Plaintiffs and members of the West Virginia Class have suffered an ascertainable loss of money and/or property as a result of Defendants' actions.

1171. As purchasers of the branded Compatible Parts, Plaintiffs and West Virginia Class were adversely affected by the actions of Defendants.

1172. Defendants' unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the West Virginia Class. Defendants' conduct substantially affected commerce and consumers in West Virginia throughout the Class Period.

1173. In addition, Defendants have fraudulently concealed their actions from Plaintiffs and members of the West Virginia Class.

1174. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

**COUNT 88**
**WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**WISCONSIN STAT. §§ 100.18 *ET SEQ.***
**(ON BEHALF OF WISCONSIN CLASS)**

1175. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

1176. Under Wisconsin Statute § 100.18(1), "[n]o person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption

of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

1177. Furthermore, "[a]ny person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01 (6). Any person suffering pecuniary loss because of a violation by any other person of any injunction issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from

a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01 (6).” Wis. Stat. Ann. § 100.18(11)(b)(2).

1178. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Wisconsin by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

1179. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1180. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants’ acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1181. Defendants’ warranty unlawfully provides that “the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty.”

1182. Plaintiffs and the Class relied to their detriment on Defendants’ unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1183. Defendants’ acts and omissions are likely to deceive the general public.

1184. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Wisconsin Statute § 100.18 and § 100.20.

1185. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

1186. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

1187. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1188. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this WDTPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the WDTPA to obtain relief.

1189. Plaintiffs and the Class members also seeks equitable relief, including restitution, with respect to their "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes

of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1190. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1191. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Wisconsin, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Wisconsin Deceptive Trade Practices Act alleged to have been violated herein.

**COUNT 89**
**WISCONSIN ANTITRUST LAW**
**WISCONSIN STAT. §§133.01 *ET SEQ.***
**(ON BEHALF OF WISCONSIN CLASS)**

1192. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

1193. Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster

and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

1194. Wisconsin Class members purchased branded Compatible Parts within the State of Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price of Compatible Parts would have been lower.

1195. Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

1196. Through their unlawful tying scheme, the Defendants engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. §§ 133.01, *et seq*.

1197. Defendants' conduct has a significant nexus to Wisconsin because Defendants are headquartered in the state of Wisconsin, the Wisconsin Class members are located in Wisconsin, purchased, repaired, and owned motorcycles in Wisconsin, and engaged in repair services in Wisconsin, all of which are activities affected by Defendants' unlawful conduct and cause Class Members to pay supra-competitive prices in Wisconsin.

1198. Members of the Wisconsin Class were injured with respect to purchases of branded Compatible Parts in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with consumers in Wisconsin paying substantially higher prices for Defendants' branded Compatible Parts in Wisconsin.

1199. Accordingly, Plaintiffs and the Class seek all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual

damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief available under Wis. Stat. § 133.01, *et seq*.

**COUNT 90**
**WYOMING CONSUMER PROTECTION ACT**
**WYOMING STAT. §§ 40-12-101 *ET SEQ.***
**(ON BEHALF OF WYOMING CLASS)**

1200. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

1201. Defendants, Plaintiffs, and the Class Members are "persons" under the Act. Wyo. Stat. § 40-12-102.

1202. Under Wyoming Statute § 40-12-105, "A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly:" "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(iv) Represents that merchandise is available to the consumer for a reason that does not exist;" "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not; except that this subsection does not apply to merchandise supplied to the recipient by mistake or merchandise of equal or greater value supplied as a reasonably equivalent substitute for unavailable merchandise previously ordered by the recipient;" "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false;" "(x) Advertises merchandise with intent not to sell it as advertised;" or "(xv) Engages in unfair or deceptive acts or practices[.]"

1203. "A person relying upon an uncured unlawful deceptive trade practice may bring an action under this act for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice." Wyo. Stat. § 40-12-108.

1204. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in Wyoming by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

1205. In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; and (ii) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

1206. In particular, Defendants have engaged, and continue to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Defendants' acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1207. Defendants' warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

1208. Plaintiffs and the Class relied to their detriment on Defendants' unlawful, unfair, and deceptive business practices. Had Plaintiffs and the Class been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

1209. Defendants' acts and omissions are likely to deceive the general public.

1210. Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by Wyoming Statute § 40-12-105.

1211. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

1212. As a direct and proximate result of such actions, Plaintiffs and the Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amount they paid to obtain motorcycles.

1213. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1214. Plaintiffs and the Class members seek equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' misconduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this WCPA cause of action because Plaintiffs and the Class must allege those violations as predicate acts under the WCPA to obtain relief.

1215. Plaintiffs and the Class members also seek equitable relief, including restitution, with respect to his "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action

do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the Act imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

1216. Plaintiffs and Class members seek a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

1217. Plaintiffs and Class members seek an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of Wyoming, unless specifically ordered to comply. Plaintiffs seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and Class members have no other adequate remedy at law to ensure future compliance with the Wyoming Consumer Protection Act alleged to have been violated herein.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully requests that:

a. The Court determine that each of the claims alleged in this Complaint may be maintained as a class action claims under Rule 23(a), (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes once certified;

b. The unlawful conduct alleged herein be adjudged and decreed in violation of the Magnusson-Moss Act, the listed state antitrust laws, state consumer protection laws, and common law;

c. Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed under applicable state law, and that a joint and several judgment in favor of Plaintiffs and the members of such Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

d. Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed by applicable state law, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

e. Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

f. Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law;

g. Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Classes of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 17, 2023

*s/ Thomas H. Burt*


**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Thomas H. Burt
Lillian R. Grinnell
270 Madison Ave
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
burt@whafh.com
grinnell@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W Jackson Blvd - Ste 1700
Chicago, IL 60077
Tel: 312-984-0000
Fax: 212-686-0114
malmstrom@whafh.com

*Lead Counsel for the Proposed Class*

**GLANCY PRONGAY AND MURRAY LLP**
Lee Albert
230 Park Ave - Ste 358
New York, NY 10169
Tel: 212-682-5340
Fax: 212-884-0988
lalbert@glancylaw.com

**ADEMI LLP**
Shpetim Ademi
Jesse Fruchter
John D. Blythin
3620 E Layton Ave
Cudahy, WI 53110
Tel: 414-482-8000
Fax: 414-482-8001
sademi@ademilaw.com
jfruchter@ademilaw.com
jblythin@ademilaw.com

*Lead Local Counsel for Plaintiffs and the Proposed Class*

**GUTRIDE SAFIER LLP**
Seth A. Safier
Anthony J. Patek
Marie A. McCrary
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: 415-639-9090
seth@gutridesafier.com
anthony@gutridesafier.com
marie@gutridesafier.com

**SPECTOR ROSEMAN & KODROFF, P.C.**
William G. Caldes
Jeffrey L. Spector
2001 Market St - Ste 3420
Philadelphia, PA 19103
Tel: 215-496-0300
Fax: 215-496-6611
bcaldes@srkattorneys.com
jspector@srkattorneys.com

**REINHARDT WENDORF & BLANCHFIELD**
W1050 First National Bank Bldg
332 Minnesota St
St Paul, MN 55101
Garrett D. Blanchfield, Jr.
Brant D. Penney
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave S - Ste 2200
Minneapolis, MN 55401-2179
Heidi M. Silton
Jessica N. Servais
Joseph C. Bourne
Tel: 612-339-6900
Fax: 612-339-0981
hmsilton@locklaw.com
jcbourne@locklaw.com
jnswervais@locklaw.com

**TOSTRUD LAW GROUP, P.C**
Jon Tostrud
1925 Century Park E - Ste 2100
Los Angeles, CA 90067

**MILBERG COLEMAN BRYSON**
Peggy J. Wedgworth
100 Garden City Pl – Ste 500
Garden City, NY 11530
Tel: 212-594-5300
pwedgworth@milberg.com

Michael A. Acciavatti
405 E 50th St
New York, NY 10022
Tel: 610-842-5801
macciavatti@milberg.com

Alex R. Straus
280 S Beverly Dr
Beverly Hills, CA 90212
Tel: 917-471-1894
Fax: 310-496-3176

Elizabeth A. McKenna
Arthur Stock
800 S Gay St - Ste 1100
Knoxville, TN 37929
Tel: 212-594-5300
Fax: 212-868-1229
emckenna@milberg.com

**FEGAN SCOTT LLC**
Elizabeth A. Fegan
Ling Wang
150 S Wacker Dr - 24th Fl
Chicago, IL 60606
Tel: 312-741-1019
Fax: 312-264-0100
beth@feganscott.com
ling@feganscott.com

*Attorneys for Plaintiffs*