## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE: HARLEY-DAVIDSON AFTERMARKET
PARTS MARKETING, SALES PRACTICES,
AND ANTITRUST LITIGATION

Case No. 23-MD-3064
Honorable William C. Griesbach

This document relates to:
All Cases

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT OF ALLEGED FACTS ......................................................................... 3

    A.    Plaintiffs and their purchases. ......................................................................... 3

    B.    The alleged tie. .................................................................................................. 4

    C.    The alleged market power. ............................................................................... 5

    D.    The claims. ........................................................................................................ 6

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT ................................................................................................................... 8

    I.    PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL ...................... 8

    A.    Plaintiffs fail to allege a tie prohibited by the MMWA. ................................. 8

    B.    Plaintiffs fail to allege any relevant terms were omitted from the warranty. ............. 13

    C.    Plaintiffs fail to allege H-D did not meet any pre-sale warranty obligations. ........... 14

    D.    The FTC action does not rescue Plaintiffs' claims. ....................................... 15

    II.    PLAINTIFFS' ANTITRUST CLAIMS FAIL. ................................................................ 16

    A.    Plaintiffs fail to allege a tie under antitrust law. ........................................... 20

    B.    Plaintiffs fail to allege plausible antitrust markets. ...................................... 23

    C.    Plaintiffs fail to allege any tie that is an unreasonable restraint of trade. .................. 27

    D.    Plaintiffs fail to allege any tie that constitutes actual or attempted monopolization. .. 33

    E.    Plaintiffs fail to allege they overpaid for the motorcycle and parts combined. .......... 41

    F.    Plaintiffs cannot bring a claim under the Wisconsin Antitrust Act. .......................... 42

    III.    PLAINTIFFS' FRAUD-BASED CLAIMS FAIL. ................................................... 44

    A.    Plaintiffs fail to plead their fraud claims with particularity. ......................... 44

    B.    Certain Plaintiffs' statutory claims fail for additional reasons. .................... 49

    IV.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL. ................................. 54

    V.    CERTAIN PLAINTIFFS FAIL TO ALLEGE FACT OF DAMAGE. ................ 55

    VI.    THE STATUTE OF LIMITATIONS BARS CERTAIN PLAINTIFFS' CLAIMS ......... 57

    VII.    PLAINTIFFS LACK STANDING TO PURSUE INJUNCTIVE RELIEF. .............. 59

CONCLUSION ............................................................................................................... 60

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) ...................................................................55

*Ackerman v. Nw. Mut. Life Ins. Co.*,
    172 F.3d 467 (7th Cir. 1999) ...................................................................44

*Adams v. Waupaca Foundry*,
    2017 U.S. Dist. LEXIS 208132 (E.D. Wis. Dec. 19, 2017)....................................45

*AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*,
    2016 U.S. Dist. LEXIS 87578 (N.D. Cal. Jul. 6, 2016)....................................18, 23

*Airweld, Inc. v. Airco, Inc.*,
    742 F.2d 1184 (9th Cir. 1984) ...................................................................23

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
    323 F.3d 366 (6th Cir. 2003) ...................................................................17

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
    390 F. Supp. 2d 1170 (M.D. Fla. 2005)....................................54

*American Computer Trust Leasing v. Jack Farrell Implement Co.*,
    763 F.Supp.1473 (D. Minn. 1991) ...................................................................18

*Americap, Inc. v. ADJ Corp.*,
    1980 U.S. Dist. LEXIS 13434 (S.D.N.Y. Sep. 5, 1980)....................................33

*Ames v. Caesars Entm't Corporation*,
    2019 U.S. Dist. LEXIS 237024 (D. Nev. Nov. 26, 2019) ....................................56, 57

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019)...................................................................16

*Arquero v. Dart*,
    587 F. Supp. 3d 721 (N.D. Ill. 2022) ...................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)...................................................................40

Case 2:23-md-03064-WCG    Filed 09/15/23    Page 3 of 83    Document 42

*Assoc. of Am. Physicians & Surgeons, Inc. v. Am. Bd. Of Med. Specialties*,
    15 F.4th 831 (7th Cir. 2021) ........................................................................7, 8

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*,
    459 U.S. 519 (1983)........................................................................................8

*AT&T Mobility LLC v. Phone Card Warehouse, Inc.*,
    2009 U.S. Dist. LEXIS 14462 (M.D. Fla. June 25, 2009)...................19

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990).......................................................................................56

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
    784 F.2d 1325 (7th Cir. 1986) ..............................................................29, 33

*Batson v. Live Nation Entm't, Inc.*,
    746 F.3d 827 (7th Cir. 2014) ......................................................................19

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
    813 F. Supp. 2d 569 (S.D.N.Y. 2011)........................................................35

*Bayer Schering Pharma Ag v. Watson Pharms.*,
    2010 U.S. Dist. LEXIS 161986 (D. Nev. Mar. 31, 2010).......................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................7, 8

*Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*,
    774 F. Supp. 683 (D. Mass. 1991) ............................................................19

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ......................................................................56

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
    65 F.3d 1406 (7th Cir. 1995) ......................................................................35

*Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*,
    96 F.3d 10 (1st Cir. 1996)...........................................................................20

*Bossart v. GM LLC*,
    2021 U.S. Dist. LEXIS 94919 (E.D. Mich. May 19, 2021)....................54

*Boulware v. Nevada*,
    960 F.2d 793 (9th Cir. 1992) ......................................................................17

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ......................................................................57

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962)......................................................................................24

*Brumfield v. Merck & Co.*,
   2018 U.S. Dist. LEXIS 86329 (E.D.N.Y. May 18, 2018) .......................................48

*Bushkin Assocs., Inc. v. Raytheon Co.*,
   393 Mass. 622 (1985) ...................................................................................43

*Butler v. Jimmy John's Franchise, LLC*,
   331 F. Supp. 3d 786 (S.D. Ill. 2018)..................................................................19

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ...........................................................................46

*Cancall PCS, LLC v. Omnipoint Corp.*,
   2001 U.S. Dist. LEXIS 3267 (S.D.N.Y. Mar. 23, 2001) ........................................31

*Cancer Found. v. Cerberus Capital Mgmt.*,
   559 F.3d 61 (7th Cir. 2009) .............................................................................57

*Carell v. Shubert Org., Inc.*,
   104 F. Supp. 2d 236 (S.D.N.Y. 2000)................................................................25

*Carl Sandburg Vill. Condo. Asso. No. 1 v. First Condo. Dev. Co.*,
   758 F.2d 203 (7th Cir. 1985) ...........................................................................32

*Carmona v. Spanish Broad. Sys.*,
   2009 U.S. Dist. LEXIS 26479 (N.Y.S.D. Mar. 30, 2009) ......................................55

*Chapman v. Chase Manhattan Mortg. Corp.*,
   2007 U.S. Dist. LEXIS 70655 (N.D. Okla. Sep. 24, 2007) (N.D. Okla.) ..................52

*Chapman v. GM LLC*,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021).............................................................50

*Chase Mfg. v. Johns Manville Corp.*,
   2019 U.S. Dist. LEXIS 111417 (D. Colo. July 3, 2019) ........................................23

*Chen v. Los Angeles Truck Centers, LLC*,
   7 Cal. 5th 862 (2019) ....................................................................................43

*Cisco Sys. v. Dexon Computer, Inc.*,
   2021 U.S. Dist. LEXIS 236322 (N.D. Cal. Dec. 9, 2021) ......................................18

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)........................................................................................59

Case 2:23-md-03064-WCG   Filed 09/15/23   Page 5 of 83   Document 42

*City of Moundridge v. Exxon Mobil Corp.*,
    471 F. Supp. 2d 20 (D.D.C. Jan. 9, 2007)....................................................................41

*Clark Mem'ls of Ala., Inc. v. SCI Ala. Funeral Servs. LLC*,
    991 F. Supp. 2d 1151 (N.D. Ala. 2014)..................................................................23

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001) .................................................................................17

*Collins v. Associated Pathologists*,
    844 F.2d 473 (7th Cir. 1988) ..................................................................................18

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) .................................................................................54

*Comput. Design & Integration, LLC v. Brown*,
    2018 NCBC 128, 140 (N.C. Sup. Ct. Dec. 10, 2018) ............................................56

*Conatzer v. Am. Mercury Ins. Co., Inc.*,
    15 P.3d 1252 (Okla. App. 2000) .............................................................................52

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ................................................................................36

*Coniglio v. Highwood Servs.*,
    495 F.2d 1286 (2d Cir. 1974)..................................................................................31

*Conley Pub. Grp., Ltd. v. J. Commc'ns, Inc.*,
    665 N.W.2d 879 (Wis. 2003)..................................................................................17

*Consol. Bus Transit, Inc. v. Treiber Grp., LLC*,
    97 A.D.3d 778 (N.Y. App. Div.) ............................................................................56

*Cooper v. Forsyth Cty. Hosp. Auth., Inc.*,
    604 F. Supp. 685 (M.D.N.C. 1985) ........................................................................18

*Cota v. Ralph Lauren Corp.*,
    603 F. Supp. 3d 666 (E.D. Wis. 2022)..............................................................45, 48

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
    159 F.3d 129 (3d Cir. 1998)....................................................................................37

*Cyr v. Ford Motor Co.*,
    2019 Mich. App. LEXIS 8347 (Dec. 26, 2019).....................................................50

*Darne v. Ford Motor Co.*,
    2015 U.S. Dist. LEXIS 169752 (N.D. Ill. Dec. 18, 2015)......................................52

*De Bouse v. Bayer AG*,
  922 N.E.2d 309 (Ill. 2009) ..................................................................................51

*Deputy v. Lehman Bros.*,
  374 F. Supp. 2d 695 (E.D. Wis. 2005) ..................................................................12

*Desoto Cab Co. v. Uber Techs.*,
  2020 U.S. Dist. LEXIS 259450 (N.D. Cal. Mar. 25, 2020) ....................................37

*DeSoto Cab Co. v. Uber Techs., Inc.*,
  2018 U.S. Dist. LEXIS 226261 (N.D. Cal. Sept. 24, 2018) ....................................37

*Dig. Equip. Corp. v. Uniq Dig. Techs.*,
  73 F.3d 756 (7th Cir. 1996) ..................................................................................38

*Dig. Sun v. Toro Co.*,
  2011 U.S. Dist. LEXIS 30222 (N.D. Cal. Mar. 22, 2011) ......................................41

*Distance Learning Co. v. Maynard*,
  2020 U.S. Dist. LEXIS 99256 (N.D. Cal. June 4, 2020) ........................................37

*DKH Corp. v. Rankin-Patterson Oil Co.*,
  131 N.C. App. 126 (1998) ....................................................................................17

*Doe v. Denison Univ.*,
  2017 U.S. Dist. LEXIS 53168 (S.D. Ohio Mar. 30, 2017) ....................................15

*Dominick v. Collectors Universe, Inc.*,
  2012 U.S. Dist. LEXIS 179703 (C.D. Cal. Dec. 18, 2012) ....................................36

*Doster Lighting, Inc. v. E-Conolight LLC*,
  2015 U.S. Dist. LEXIS 78499 (E.D. Wis. June 17, 2015) ......................................43

*Double D Spotting Serv. v. Supervalu, Inc.*,
  136 F.3d 554 (8th Cir. 1998) ................................................................................24

*Drake v. Cox Enters.*,
  2013 U.S. Dist. LEXIS 19077 (D. Kan. Feb. 13, 2013) ........................................27

*Drake v. Toyota Motor Corp.*,
  2021 U.S. Dist. LEXIS 98381 (C.D. Cal. May 17, 2021) ......................................52

*Dunbar v. Kohn Law Firm, S.C.*,
  896 F.3d 762 (7th Cir. 2018) ................................................................................10

*DXS, Inc. v. Siemens Med. Sys.*,
  991 F. Supp. 859 (E.D. Mich. 1997)..............................................................18, 20

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
504 U.S. 451 (1992)......................................................................38

*Edwards v. Erie Coach Lines Co.*,
17 N.Y.3d 306 (2011) ..............................................................43, 44

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
612 F. Supp. 2d 330 (S.D.N.Y. 2009)........................................27

*Epic Sys. Corp. v. Tata Consultancy Servs.*,
2017 U.S. Dist. LEXIS 162290 (W.D. Wis. Sep. 29, 2017)...................19

*Ervin Equip. Inc. v. Wabash Nat'l Corp.*,
2017 U.S. Dist. LEXIS 12701 (N.D. Ind. Jan. 31, 2017) ......................36

*Farag v. Health Care Serv. Corp.*,
2017 U.S. Dist. LEXIS 103302 (N.D. Ill. July 5, 2017).........................58

*Fed. Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
400 F. App'x 611 (2d Cir. 2010) ...................................................54

*Federal Deposit Ins. Corp. v. Dintino*,
167 Cal. App. 4th 333 (2008) .......................................................57

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ...........................................54

*Fido's Fences, Inc. v. Canine Fence Co.*,
672 F. Supp. 2d 303 (E.D.N.Y. 2009) .......................................17, 21

*Fifth & Fifty-Fifth Residence Club Ass'n v. Vistana Signature Experiences, Inc.*,
2018 U.S. Dist. LEXIS 169590 (S.D.N.Y. Sept. 28, 2018)...............18, 20

*First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*,
2020 U.S. Dist. LEXIS 74170 (D.N.J. Apr. 28, 2020) ..........................26

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
703 F.2d 534 (9th Cir. 1983) .......................................................23

*FTC v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021) ...................................................36

*Gamboa v. Alvarado*,
407 Ill. App. 3d 70 (2011) ...........................................................58

*Geiling v. Wirt Fin. Servs.*,
2014 U.S. Dist. LEXIS 183237 (E.D. Mich. Dec. 31, 2014)...................49

Case 2:23-md-03064-WCG    Filed 09/15/23    Page 8 of 83    Document 42

*Ghaznavi v. De Longhi Am., Inc.*,
2023 U.S. Dist. LEXIS 133730 (S.D.N.Y. Aug. 2, 2023) .................................................49

*GlobalTap LLC v. Smart Tap LLC*,
2015 U.S. Dist. LEXIS 21687 (N.D. Ill. Feb. 24, 2015) ..........................................37

*GMC v. Gibson Chem. & Oil Corp.*,
786 F.2d 105 (2d Cir. 1986) .................................................................................20

*Goldwasser v. Ameritech Corp.*,
222 F.3d 390 (7th Cir. 2000) .................................................................................34

*Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*,
880 F.2d 1514 (2d Cir. 1989) .................................................................................31

*Goodloe v. Nat'l Wholesale Co.*,
2004 U.S. Dist. LEXIS 13630 (N.D. Ill. July 16, 2004) ........................................30

*Great Escape, Inc. v. Union City Body Co.*,
791 F.2d 532 (7th Cir. 1986) .................................................................................40

*Greater Rockford Energy & Technology v. Shell Oil*,
998 F.2d 391 (7th Cir. 1993) .................................................................................56

*Gutierrez v. Bean*,
2006 U.S. Dist. LEXIS 95618 (D.N.M. Dec. 13, 2006) ........................................18

*Hack v. President & Fellows of Yale Coll.*,
237 F.3d 81 (2d Cir. 2000) .................................................................................24

*Hardy v. City Optical Inc.*,
39 F.3d 765 (7th Cir. 1994) .................................................................................28

*Harrison Aire, Inc. v. Aerostar Int'l*,
423 F.3d 374 (3d Cir. 2005) .........................................................................35, 38

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) .................................................................................45

*HDC Med., Inc. v. Minntech Corp.*,
411 F. Supp. 2d 1096 (D. Minn. 2006) ...................................................21, 22, 23

*Healy v. Cox Communs., Inc.*,
871 F.3d 1093 (10th Cir. 2017) .......................................................30, 31, 32

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .................................................................................25

*Highsmith v. Chrysler Credit Corp.*,
18 F.3d 434 (7th Cir. 1997) ................................................................................58

*Hip Hop Bev. Corp. v. Monster Energy Co.*,
733 F. App'x 380 (9th Cir. 2018) .................................................................29, 30

*Horton v. Bank of Am., N.A.*,
189 F. Supp. 3d 1286 (N.D. Okla. 2016) ..........................................................55

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
2014 U.S. Dist. LEXIS 1850 (N.D. Ill. Jan. 8, 2014) .........................................25

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ..............................................................................41

*Hypertherm, Inc. v. Am. Torch Tip Co.*,
2007 U.S. Dist. LEXIS 67579 (D.N.H. Sept. 11, 2007) .....................................21

*Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.*,
730 F. Supp. 826 (C.D. Ill. 1990) ......................................................................32

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006)..............................................................................................17

*Imortgage Servs. v. La. Real Estate Appraisers Bd.*,
2023 U.S. Dist. LEXIS 33519 (M.D. La. Feb. 27, 2023) ....................................60

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) .............................................................53

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 U.S. Dist. LEXIS 99365 (N.D. Cal. Apr. 19, 2016) ...................................43

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) .....................................19

*In re Dig. Music Antitrust Litig.*,
592 F. Supp. 2d 435 (S.D.N.Y. 2008)................................................................19

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013)........................................60

*In re Ganske*,
2021 Bankr. LEXIS 574 (Bankr. E.D. Wis. Mar. 5, 2021)..................................13

*In re German Auto. Mfrs. Antitrust Litig.*,
612 F. Supp. 3d 967 (N.D. Cal. 2020) ..........................................................24, 25

*In re GM LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) .......................................................55

*In re GM LLC Ignition Switch Litig.*,
339 F. Supp. 262 (S.D.N.Y. 2018) ............................................................54

*In re HIV Antitrust Litig.*,
2023 U.S. Dist. LEXIS 69497 (N.D. Cal. Apr. 20, 2023) .......................44

*In re Intel Corp. Microprocessor Antitrust Litig.*,
2010 U.S. Dist. LEXIS 144511 (D. Del. July 28, 2010) ...................43, 44

*In re Linerboard Antitrust Litig.*,
223 F.R.D. 335 (E.D. Pa. 2004) ................................................................16

*In re Levaquin Prods. Liab. Litig.*,
752 F. Supp. 2d 1071 (D. Minn. 2010) .....................................................52

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ..................................................................16

*In re Nat'l Ass'n of Music Merchs.*,
2011 U.S. Dist. LEXIS 94302 (S.D. Cal. Aug. 19, 2011) .......................27

*In re Nifedipine Antitrust Litig.*,
335 F. Supp. 2d 6 (D.D.C. 2004) ..............................................................60

*In re Packaged Seafoods Products Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2014) ....................................................44

*In re Plavix Indirect Purchaser Antitrust Litig.*,
2011 U.S. Dist. LEXIS 8940 (S.D. Ohio Jan. 31, 2011) .........................60

*In re Pre-Filled Propane Tank Antitrust Litig.*,
893 F.3d 1047 (8th Cir. 2018) ..................................................................60

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004) ....................................................42, 43, 44

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
335 F.R.D. 1 (E.D.N.Y. 2020) ..................................................................43

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
299 F.R.D. 555 (E.D. Tenn. 2014) ...........................................................43

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
2017 U.S. Dist. LEXIS 171322 (E.D. Pa. Oct. 16, 2017) ........................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 U.S. Dist. LEXIS 96741 (N.D. Cal. Aug. 29, 2011)................................43, 44

*In re Zetia (Ezetimibe) Antitrust Litig.*,
2020 U.S. Dist. LEXIS 183601 (E.D. Va. Aug. 13, 2020)................................43, 44

*Ind. Grocery, Inc. v. Super Valu Stores, Inc.*,
864 F.2d 1409 (7th Cir. 1989) ................................29, 34

*Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*,
962 F.3d 1015 (8th Cir. 2020) ................................17, 18

*Innotron Diagnostics v. Abbott Labs.*,
1989 U.S. App. LEXIS 23519 (9th Cir. Dec. 15, 1989)........................23

*Insulate SB, Inc. v. Advanced Finishing Sys.*,
797 F.3d 538 (8th Cir. 2015) ................................17, 23

*Int'l Equip. Trading, Ltd. v. AB Sciex LLC*,
2013 U.S. Dist. LEXIS 123109 (N.D. Ill. Aug. 29, 2013)................................28, 35

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*,
312 F. Supp. 3d 725 (N.D. Ill. 2018) ................................18

*International Distrib. Ctrs., Inc. v. Walsh Trucking Co.*,
812 F.2d 786 (2d Cir. 1987)........................34

*It's My Party, Inc. v. Live Nation, Inc.*,
811 F.3d 676 (4th Cir. 2016) ................................20

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984)................................ passim

*Jepson v. Gen. Cas. Co. of Wisc.*,
513 N.W.2d 467 (Minn. 1994)................................43

*Kahn v. Walmart, Inc.*,
2023 U.S. Dist. LEXIS 48042 (N.D. Ill. Mar. 21, 2023)........................54

*Khan v. Deutsche Bank AG*,
2012 IL 112219 ................................58

*Knox College v. Celotex Corp.*,
88 Ill. 2d 407 (1981) ................................58

*Kopel v. Kopel*,
229 So.3d 812 (Fla. 2017)................................55

xi

*Kypta v. McDonald's Corp.*,
    671 F.2d 1282 (11th Cir. 1982) ........................................................41

*Lakeland Reg'l Med. Ctr., Inc. v. Astellus US, LLC*,
    763 F.3d 1280 (11th Cir. 2014) ........................................................41

*Lee v. Enter. Fin. Group*,
    2009 U.S. Dist. LEXIS 41517 (W.D. Okla. May 14, 2009)...................55

*Lee v. Life Ins. Co. of N. Am.*,
    23 F.3d 14 (1st Cir. 1994)..................................................................39

*Lektro-Vend Corp. v. Vendo Co.*,
    660 F.2d 255 (7th Cir. 1981) ............................................................34

*Leyba v. Renger*,
    874 F. Supp. 1229 (D.N.M. 1994) ....................................................18

*MacTavish v. Am. Honda Motor Co.*,
    2022 U.S. Dist. LEXIS 104482 (C.D. Cal. Feb. 15, 2022)...................50

*Marion Healthcare, LLC v. S. Ill. Hosp. Servs.*,
    2022 U.S. Dist. LEXIS 114392 (S.D. Ill. June 28, 2022)....................57

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. July 28, 2009) ............................48, 49

*Marts v. Xerox*,
    77 F.3d 1109 (8th Cir. 1996) ................................................21, 22, 28

*Matanky v. GM LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019)............................................50

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
    386 F. Supp. 3d 926 (N.D. Ill. 2019) ................................................25

*McCoy v. Gamesa Tech. Corp.*,
    2012 U.S. Dist. LEXIS 138417 ........................................................18

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols.*,
    937 F.3d 1056 (7th Cir. 2019) ..........................................................17

*McGarvey v. Penske Auto. Grp.*,
    639 F. Supp. 2d 450 (D.N.J. 2009) ....................................................23

*McLaughlin Equip. Co. v. Newcourt Credit Group, Inc.*,
    2004 U.S. Dist. LEXIS 13939 (S.D. Ind. Feb. 18, 2004) ...............18, 32

*McMahan v. Deutsche Bank AG*,
938 F. Supp. 2d 795 (N.D. Ill. 2013) ................................................................45

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
641 F.3d 834 (7th Cir. 2011) ...............................................................33, 34, 40

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
2016 U.S. Dist. LEXIS 136478 (C.D. Ill. Sep. 30, 2016) ...................................19

*Metzler v. Bear Auto. Serv. Equip. Co.*,
19 F. Supp. 2d 1345 (S.D. Fla. 1998) .............................................................39, 42

*Michael v. Shiley, Inc.*,
46 F.3d 1316 (3d Cir. 1995) ..................................................................................9

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
734 F.2d 705 (11th Cir. 1984) ............................................................................42

*Moroz v. Alexico Corp.*,
2008 U.S. Dist. LEXIS 1166 (E.D. Pa. Jan. 7, 2008) ...........................................57

*Mouser v. Keystone RV Co.*,
2023 U.S. Dist. LEXIS 41587 (N.D. Ind. Mar. 13, 2023) ......................................9

*Multiple Energy Techs., LLC v. Under Armour, Inc.*,
2021 U.S. Dist. LEXIS 120744 (W.D. Pa. June 29, 2021) ....................................27

*N. Pac. R. Co. v. United States*,
356 U.S. 1 (1958) ................................................................................................16

*N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*,
418 F. Supp. 3d 826 (D.N.M. 2019) ....................................................................18

*Nat'l Sur. Corp. v. Immunex Corp.*,
162 Wn. App. 762, 256 P.3d 439 (Wash. Ct. App. 2011) .....................................55

*NCR Corp. v. Transp. Ins. Co.*,
2012 WI App 108 (2012) ...............................................................................42, 44

*Nesby v. Country Mut. Ins. Co.*,
805 N.E.2d 241 (Ill. Ct. App. 2004) ....................................................................54

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
2022 U.S. Dist. LEXIS 126239 (E.D. Cal. July 15, 2022) ....................................30

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) .........................................................................................58

*nSight, Inc. v. PeopleSoft, Inc.*,
   296 Fed. Appx. 555 (9th Cir. 2008) ........................................................18

*Nucap Indus., Inc. v. Robert Bosch LLC*,
   273 F. Supp. 3d 986 (N.D. Ill. 2017) .................................................18, 26

*O.K. Sand & Gravel v. Martin Marietta Technologies*,
   36 F.3d 565 (7th Cir. 1994) .................................................................56

*Océ N. Am., Inc. v. MCS Servs.*,
   795 F. Supp. 2d 337 (D. Md. 2011) .......................................................39

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   2017 U.S. Dist. LEXIS 160238 (N.D. Cal. Sep. 28, 2017) ....................37

*Parrott v. Family Dollar, Inc.*,
   2020 U.S. Dist. LEXIS 66935 (N.D. Ill. Apr. 16, 2020) ..........................9

*Parsons v. Tickner*,
   31 Cal. App. 4th 1513 (1995) ..............................................................58

*PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*,
   2013 U.S. Dist. LEXIS 200218 (M.D. Fla. Aug. 27, 2013) ....................48

*PBTM LLC v. Football Nw., LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021)..............................................25

*Peace River Elec. Coop. v. Ward Transformer Co.*,
   449 S.E.2d 202 (N.C. Ct. App. 1994) ...................................................55

*Pension Tr. Fund for Operating Eng'rs v. Devry Educ. Grp.*,
   2017 U.S. Dist. LEXIS 200272 (N.D. Ill. Dec. 6, 2017) ........................16

*Posa, Inc. v. Miller Brewing Co.*,
   642 F.Supp. 1198 (E.D.N.Y. Mar. 31, 1986)..........................................18

*Prescient Med. Holdings, LLC v. Lab. Corp. of Am. Holdings*,
   2019 U.S. Dist. LEXIS 24145 (D. Del. Feb. 14, 2019) ..........................27

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) ...............................................................27

*Queen City Pizza v. Domino's Pizza*,
   124 F.3d 430 (3d Cir. 1997)...........................................................24, 26

*Ramirez v. Midland Funding, LLC*,
   2020 U.S. Dist. LEXIS 108602 (N.D. Ill. June 22, 2020) ......................10

Case 2:23-md-03064-WCG   Filed 09/15/23   Page 15 of 83   Document 42

*Reapers Hockey Ass'n v. Amateur Hockey Ass'n Ill., Inc.*,
    412 F. Supp. 3d 941 (N.D. Ill. 2019) ....................................................26

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .............................................................29

*Reichardt v. Electrolux Home Prods. Inc.*,
    2023 U.S. Dist. LEXIS 40416 (E.D. Wis. Mar. 10, 2023) ....................43

*Reifert v. S. Cent. Wis. MLS Corp.*,
    450 F.3d 312 (7th Cir. 2006) ........................................................30, 31

*Republic Tobacco, L.P. v. N. Atl. Trading Co.*,
    1999 U.S. Dist. LEXIS 6098 (N.D. Ill. Apr. 8, 1999) .....................34, 36

*Riste v. Estate of McAnally*,
    2020 Wash. App. LEXIS 32 (Wash. Ct. App. Jan. 9, 2020) ..................56

*Rocha v. Rudd*,
    826 F.3d 905 (7th Cir. 2016) .............................................................45

*Rock v. NCAA*,
    928 F. Supp. 2d 1010 (S.D. Ind. 2013) ...........................................26, 27

*Rose v. Vulcan Materials Co.*,
    282 N.C. 643 (1973) ........................................................................17

*Rozema v. Marshfield Clinic*,
    977 F. Supp. 1362 (W.D. Wis. 1997) ................................................27

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................................40, 41

*RX Sys. v. Med. Tech. Sys.*,
    1995 U.S. Dist. LEXIS 14214 (N.D. Ill. Sep. 29, 1995) ............21, 23, 32

*Schechner v. Whirlpool Corp.*,
    237 F. Supp.3d 601 (E.D. Mich. 2017)...............................................55

*Schor v. Abbott Labs.*,
    457 F.3d 608 (7th Cir. 2006) ........................................................22, 38

*Separation of Hinduism from Our Sch. v. Chi. Pub. Sch.*,
    2021 U.S. Dist. LEXIS 96490 (N.D. Ill. May 21, 2021) .....................59

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
    950 F.3d 911 (7th Cir. 2020) .......................................................23, 24, 27

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*,
    2008 U.S. Dist. LEXIS 62181 (D.N.J. Aug. 12, 2008)............................................................41

*Sheridan v. Marathon Petroleum Co., LLC*,
    530 F.3d 590 (7th Cir. 2008) ..............................................................................17, 22, 28

*Shu v. Toyota Motor Sales USA, Inc.*,
    2023 U.S. Dist. LEXIS 68626 (N.D. Cal. Apr. 19, 2023) ....................................................53

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ..............................................................................................59

*Simic v. City of Chi.*,
    851 F.3d 734 (7th Cir. 2017) ..............................................................................................59

*Simon v. Celebration Co.*,
    883 So. 2d 826 (Fla. Dist. Ct. App. 2004) ............................................................................56

*Siva v. Am. Bd. Of Radiology*,
    38 F.4th 569 (7th Cir. 2022) .................................................................................... passim

*Smith v. Globe Life Ins. Co.*,
    597 NW2d 28 (Mich. 1999)................................................................................................50

*Smith v. Sterling Nat'l Bank*,
    2020 IL App (1st) 190940-U ..............................................................................................58

*SMS Sys. Maint. Servs. v. Dig. Equip. Corp.*,
    188 F.3d 11 (1st Cir. 1999)..................................................................................... passim

*Sommerfield v. Citigroup Global Mkts. Inc.*,
    2016 U.S. Dist. LEXIS 156258 (E.D. Wis. Nov. 10, 2016) ....................................................57

*Southwood v. Credit Card Solution*,
    2016 U.S. Dist. LEXIS 48039 (E.D.N.C. Feb. 26, 2016)........................................................55

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007) ..........................................................................................................17

*Srs Liquidation v. Individual*,
    2013 Nev. Dist. LEXIS 379 (Washoe Cnty. D. Ct. Jan. 18, 2013) ..........................................54

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ............................................................................................43

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
    902 F.3d 735 (7th Cir. 2018) ..............................................................................................56

xvi

*Surface Supplied, Inc. v. Kirby Morgan Dive Sys.*,
2013 U.S. Dist. LEXIS 143478 (N.D. Cal. Oct. 3, 2013)....................................41

*Suture Express, Inc. v. Cardinal Health 200, LLC*,
963 F. Supp. 2d 1212 (D. Kan. 2013)...............................................36

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.*,
2023 U.S. Dist. LEXIS 22594 (C.D. Cal. Feb. 9, 2023).........................50

*Taylor v. Cavalry Inv., L.L.C.*,
365 F.3d 572 (7th Cir. 2004) ...................................................10

*Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*,
2013 U.S. Dist. LEXIS 70545 (S.D. Cal. May 17, 2013)......................35

*Thompson v. Main St. Auto Sales & Serv., Inc.*,
1999 Mass. App. Div. 260 (1999).................................................56

*Townsend v. Sears, Roebuck & Co.*,
227 Ill. 2d 147 (2007) .............................................................42

*Townshend v. Rockwell Int'l Corp.*,
2000 U.S. Dist. LEXIS 5070 (N.D. Cal. Mar. 28, 2000).....................37

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)............................................................59

*Trident Holdings, LLC v. Great Wraps, Inc.*,
2009 U.S. Dist. LEXIS 140229 (N.D. Ga. Mar. 31, 2009)..................42

*UBS Fin. Servs., Inc. v. Aliberti*,
483 Mass. 396 (2019) ............................................................42

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
177 F. Supp. 3d 1183 (N.D. Cal. 2016) .......................................37

*United States v. Bame*,
721 F.3d 1025 (8th Cir. 2013) ..................................................54

*United States v. E. I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956)..............................................................23

*United States v. Harley-Davidson, Inc.*,
2020 U.S. Dist. LEXIS 167301 (D.D.C. Sept. 14, 2020) ...............11, 12

*United States v. Syufy Enters.*,
903 F.2d 659 (9th Cir. 1990) ...................................................37

*United States v. United Tote, Inc.*,
   768 F. Supp. 1064 (D. Del. 1991) ...................................................................37

*Universal Avionics Sys. Corp. v. Rockwell Int'l Corp.*,
   184 F. Supp. 2d 947 (D. Ariz. 2001) ...........................................................38, 39

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997) .....................................................................20, 21

*Van Den Heuvel v. AI Credit Corp.*,
   951 F. Supp. 2d 1064 (E.D. Wis. 2013) ......................................................46, 48

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ........................................................................................33

*Viamedia, Inc. v. Comcast Corp.*,
   951 F.3d 429 (7th Cir. 2020) ............................................................................28

*Wagner v. Circle W Mastiffs*,
   732 F. Supp. 2d 792 (S.D. Ohio 2010) ...............................................................25

*Westerfield v. Quizno's Franchise Co., LLC*,
   527 F. Supp. 2d 840 (E.D. Wis. 2007) ......................................................19, 26, 28

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ............................................................................49

*Will v. Comprehensive Accounting Corp.*,
   776 F.2d 665 (7th Cir. 1985) ..............................................................20, 28, 32, 41

*Williams v. Apple, Inc.*,
   2020 U.S. Dist. LEXIS 215046 (N.D. Cal. Nov. 17, 2020)....................................53

*Willis v. Green Tree Servicing, LLC*,
   2015 U.S. Dist. LEXIS 117047 (E.D. Mich. Aug. 12, 2015) .................................56

*Wis. Right to Life, Inc. v. Schober*,
   366 F.3d 485 (7th Cir. 2004) ............................................................................59

*Witt Co. v. Riso, Inc.*,
   948 F. Supp. 2d 1227 (D. Or. 2013) ..................................................................30

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
   372 F.3d 899 (7th Cir. 2004) ............................................................................58

*Xerox Corp. v. Media Scis., Inc.*,
   660 F. Supp. 2d 535 (S.D.N.Y. 2009)................................................................39

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
 615 F.3d 808 (7th Cir. 2010) ............................................................................10

**REGULATIONS**

16 C.F.R. § 700.10(c)...........................................................................................9, 13

16 C.F.R. § 701.3(a)(2).........................................................................................8, 14

16 C.F.R. § 702.3...........................................................................................8, 14, 15

40 C.F.R. Parts 9, 86, 90 and 1051 ..........................................................................51

49 C.F.R. § 571 .........................................................................................................51

49 C.F.R. § 573 .........................................................................................................51

49 C.F.R. § 579 .........................................................................................................51

**TREATISES**

Restatement (Second) of Contracts, § 203(a) ..........................................................12

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................... passim

Fed. R. Civ. P. 12(b) ................................................................................................60

**STATUTES**

15 U.S.C. § 1-2 .........................................................................................................16

15 U.S.C. § 2302(a) ..................................................................................................14

15 U.S.C. § 2302(b) ..................................................................................................14

15 U.S.C. § 2302(c) .........................................................................................9, 13, 23

15 U.S.C. § 2310(d)(1) .............................................................................................56

42 U.S.C. § 7521 .......................................................................................................51

42 U.S.C. § 7522(a)(3)(B) ........................................................................................11

49 U.S.C. § 30112(a) ................................................................................................51

49 U.S.C. § 30118(b)(2) ...........................................................................................51

78 Okla. Stat. §51 *et. seq.* .......................................................................................52

Cal. Bus. & Prof. Code § 16720 ...................................................................................17

Cal. Bus. & Prof. Code § 17203 ...................................................................................19

Cal. Civ. Code § 1782(a) ...............................................................................................53

Cal. Code Civ. Proc. § 338(d)....................................................................................57, 58

Fla. Stat. Ann. § 501.211 ...............................................................................................56

Fla. Stat. Ann. § 501.204 ...............................................................................................19

Ill. Comp. Stat. Ann. 10/3 ..............................................................................................16

Ill. Comp. Stat. Ann. 10/7 ..............................................................................................57

Ill. Comp. Stat. Ann. 10/11 ............................................................................................17

Ill. Comp. Stat. Ann. 505/2 ............................................................................................19

Ill. Comp. Stat. Ann. § 505/10a .....................................................................................57

Mass. Ann. Laws ch. 93A, § 2(a) ..................................................................................19

Mass. Ann. Laws ch. 93A, § 9 .......................................................................................56

Mich. Comp. Laws § 445.772 .........................................................................................16

Mich. Comp. Laws § 445.773 .........................................................................................16

Mich. Comp. Laws § 445.778 .........................................................................................56

Mich. Comp. Laws § 445.911(2)-(4) ..............................................................................56

Mich. Comp. Laws § 445.784(2) ....................................................................................17

Mich. Comp. Laws § 445.904(1) ....................................................................................50

Minn. Stat. § 325D.44 ....................................................................................................52

Minn. Stat. § 325D.51 ....................................................................................................16

Minn. Stat. § 325D.52 ....................................................................................................16

Minn. Stat. § 325F.69 .....................................................................................................19

N.C. Gen. Stat. §§ 75-1 ............................................................................................16, 19

N.C. Gen. Stat. § 75-2.1 .................................................................................................16

N.C. Gen. Stat. § 75-16 ............................................................................................56

N.M. Stat. Ann. § 57-1-1 ..........................................................................................16

N.M. Stat. Ann. § 57-1-2 ..........................................................................................16

N.M. Stat. Ann. § 57-1-15 ........................................................................................17

N.M. Stat. Ann. § 57-12-3 ........................................................................................19

N.Y. Gen. Bus. Law § 340(1) ..............................................................................16, 17

Nev. Rev. Stat. Ann. § 598A.050 .............................................................................17

Nev. Rev. Stat. Ann. § 598A.060 .............................................................................16

Nev. Rev. Stat. Ann. § 598A.210 .............................................................................56

NY CLS Gen. Bus. Law § 349(h) .............................................................................56

Okla. Stat. tit. 15, § 754 ............................................................................................50

Wash. Rev. Code Ann. § 19.86.090 ..........................................................................56

Wis. Stat. § 133.03(1)-(2) .........................................................................................17

## INTRODUCTION

This case is about the warranty provided with new Harley-Davidson motorcycles. In order to maintain coverage, Plaintiffs allege consumers must buy Harley-Davidson-branded parts. That alleged requirement—and alleged, but not specified, misrepresentations or omissions about it—have, according to Plaintiffs, permitted Defendants Harley-Davison Motor Company Group, LLC and Harley Davidson Motor Company, Inc. (together "H-D") to charge inflated prices for parts. Yet nearly half of the Plaintiffs do not even allege they ever purchased any Harley-Davidson parts. And those who allege they did, do not allege that they purchased Harley-Davidson parts because of the warranty. In fact, Plaintiffs allege nothing about the relationship between the warranty and their purchases. They do not allege what they knew about the warranty before any purchase—whether from documents, conversations, prior experience, or otherwise—or what they did not know, but wanted to know. Instead, Plaintiffs selectively quote portions of a Harley-Davidson Owner's Manual and attempt to gerrymander the relevant markets in which Harley-Davidson motorcycles and parts are sold in an effort to shoehorn their allegations into three primary claims: (1) violations of various provisions of the Magnuson-Moss Warranty Act ("MMWA"), (2) anticompetitive tying of parts to motorcycles in violation of state antitrust laws, and (3) deception of consumers in violation of state common law and consumer protection statutes. But they fail to state any plausible claim.[1]

***First***, Plaintiffs' claim that H-D's warranty violated the MMWA is premised on a strained reading of selected sentences taken out of context while attempting to ignore the rest of the warranty. But the warranty is a contract and when interpreted in accordance with general principles of contract interpretation, it becomes apparent that the warranty terms do not require use of Harley-

---

[1] "Complaint" refers to the Consolidated Amended Class Action Complaint (Dkt. No. 33).

1

Davidson-branded parts, but simply exclude warranty coverage for damage caused by unauthorized parts (including Harley-Davidson parts not approved for use on a particular motorcycle), something allowed by the MMWA, and implement a Consent Decree H-D entered with the Environmental Protection Agency. Plaintiffs' MMWA claim also fails because they do not identify any terms that were excluded from the written warranty, nor anything H-D failed to do, as a manufacturer, before Plaintiffs' purchases.

*Second*, Plaintiffs fail to plausibly claim that H-D has market power over motorcycles or that it has tried to extend such market power to any alleged parts market via its warranty. They do not allege that H-D forced anyone to purchase Harley-Davidson parts as a condition of purchasing a motorcycle. They do not plausibly allege any relevant antitrust markets. Instead, they gerrymander an alleged motorcycle market to try create the guise of market power and lump together unrelated parts to avoid intricacies that would sink their claims, making it impossible to assess whether the alleged tie might be anticompetitive. And none of their other alleged facts support a claim that the alleged tie could plausibly be an unreasonable restraint of trade or constitute actual or attempted monopolization, or that they overpaid for the bundle of a motorcycle and parts, as is required to claim damages from tying. Still further, even if Plaintiffs had stated an antitrust claim, choice of law rules dictate that they bring claims under the laws of the state where they purchased parts, not under Wisconsin's antitrust law.

*Third*, Plaintiffs have not pled any of their common law and statutory fraud-based claims with the specificity required under Fed. R. Civ. P. 9(b). They plead no details whatsoever regarding the individual transactions underlying their claims, and their conclusory and contradictory allegations do not specify the "who, what, when, or where" of the alleged fraud, leaving H-D and the Court to guess what was allegedly misrepresented or omitted, who allegedly misrepresented or

2

omitted it, and when and where. Further, without these details, Plaintiffs have not plausibly pled the remaining elements of their fraud-based claims, including H-D's knowledge of the falsity of alleged misrepresentations, H-D's duty to disclose allegedly omitted information, and Plaintiffs' alleged reliance on the misrepresented or omitted information. And as described below, several statutory claims fail for additional reasons, including exemptions for regulated transactions, unavailability of or limitations on the relief available or limitations on the persons entitled to seek relief, and failure to allege compliance with statutory notice requirements.

**Fourth**, and finally, there are additional defects in Plaintiffs' Complaint. Plaintiffs' catch-all unjust enrichment claim fails because it is based on the same insufficient allegations as their other claims, the Complaint shows they have adequate remedies at law, and for some states unjust enrichment is not a recognized claim or requires direct dealings between Plaintiffs and H-D that are not alleged here. Further, some Plaintiffs have not alleged that they were damaged because they do not allege purchases of Harley-Davidson parts. Others did not file suit before the statute of limitations expired on certain claims. And no Plaintiff has alleged a real threat of possible future injury to have standing to seek injunctive relief. The defects in Plaintiffs' Complaint are numerous and fatal. As set forth below, it should be dismissed.

## STATEMENT OF ALLEGED FACTS

### A. Plaintiffs and their purchases.

Plaintiffs are fifteen individuals who claim to have purchased various Harley-Davidson motorcycles from dealerships in various states between June 2016 and February 2022. (Compl. ¶¶ 6-19.) Those motorcycles were accompanied by a two-year limited warranty, which provides for free repair or replacement of parts found under normal use to be defective in factory materials or

workmanship. *See* Exhibits A-J (Owner's Manuals).[2] Plaintiffs allege that H-D used this warranty "to try to force Harley owners to use its own parts." (Compl. ¶ 1.) They claim that H-D "illegally tied its motorcycles and, specifically, the factory warranties that go with them to its parts," and that Harley "parts have been overpriced" as a result. (*Id.* ¶ 5; *see also id.* ¶¶ 98-100.)

But only eight of the fifteen Plaintiffs allege they purchased Harley-Davidson parts (Compl. ¶¶ 6-10, 13, 16).[3] And none of these Plaintiffs claim they purchased those parts because of the warranty or even that they purchased ***only*** Harley-Davidson parts. Plaintiffs' Complaint includes essentially no other information about their individual transactions.

### B. The alleged tie.

Plaintiffs do not allege that they had to buy Harley-Davidson parts as a condition of purchasing a new Harley motorcycle. Instead, they allege that H-D, through its warranty, "requir[ed] customers who bought its bikes to only use Harley-Davidson's Compatible Parts—or risk voiding the warranty." (*Id.* ¶ 97.) Although Plaintiffs allege that this "threat" created a "disincentive" to purchase third-party parts, they also allege that owners could still buy third-party parts if they "intended to void" the warranty or if their warranty had expired. (*Id.* ¶ 92.)

In support, Plaintiffs point to snippets from an H-D Owner's Manual to claim they were required to purchase Harley-Davidson parts. These snippets merely say use of unapproved parts—including unapproved  "genuine Harley-Davidson parts and accessories"—"may" impact the warranty. (*Id.* ¶ 31.) And the statement they rely on "[s]pecifically" (Compl. ¶151) is not even in the warranty itself but in the first sentence of a "Note" in the "Service Records" section of the

---

[2] The exhibits are properly considered on a motion to dismiss for the reasons set forth in Defendants' Request for Judicial Notice And Incorporation By Reference, filed herewith.

[3] Plaintiffs make passing references to not purchasing their motorcycles or paying less for them had they known the "true warranty terms." (Compl. ¶¶ 172, 185.)

4

Owner's Manual. *See* Exhibit C (2019 Owner's Manual) at p. 203.[4] The Note in its entirety

provides critical context:

> The use of parts and service procedures other than Harley-Davidson approved parts
> and service procedures may void the limited warranty. ***Any alterations to the
> emission system components, such as the intake and exhaust system, may be in
> violation of motor vehicle laws.***

*Id.* (emphasis added).

Plaintiffs aver that the alleged tying stopped after the FTC entered into a settlement with

H-D, which was before Plaintiffs sued. (Compl. ¶¶ 97, 109-110.) The FTC's Decision and Order,

implementing the settlement, does not include an admission of liability, the imposition of any fines

or civil penalties, or even any findings of fact or conclusions of law by the FTC. *See* Exhibit K.

### C. The alleged market power.

Plaintiffs claim H-D could impose the alleged tie because of its alleged "monopoly power"

in the market for "American-made, new, large roadgoing bikes, which are sold as a bundle with

factory warranties" in the United States. (*Id.* ¶ 39.) They claim a narrowly-tailored "American-

made" market because H-D has used "all American branding" since the 1980s as it "sought to

distinguish itself from the increasingly popular Japanese motorcycle" and some consumers prefer

American-made motorcycles "to express their patriotism." (*Id.* ¶¶ 45-49.) They also claim that new

motorcycles are distinct because they come with warranties. (*Id.* ¶ 44.) Although they do not allege

H-D's share of this purported market, they do allege that H-D's "nearest competitors in terms of

market size" are "the Japanese Big 4"—"Honda, Kawasaki, Yamaha, and Suzuki"—"and then

BMW." (*Id.* ¶¶ 27, 49, 50, 88, 94.) They also allege that H-D has 21.1% of sales of new, large

roadgoing bikes in the United States, with others having 17.5%, 12.8%, 11.3%, 4.9%, and 3.7%,

---

[4] Unless otherwise noted, the cited language from Exhibit C appears in all relevant Owner's
Manuals. *See* Exhibits A-J.

respectively. (*Id.* ¶ 50.) These competitors "have the backing and name of companies with an array of products in markets across the globe" and at least three "are conglomerates making non-motorcycle products for a global market." (*Id.* ¶¶ 88, 91.) And although Plaintiffs allege a new entrant into the market may face barriers (*id.* ¶¶ 88-91), they do not allege any barriers preventing these existing, large competitors from increasing sales in or into the United States.

Plaintiffs allege H-D imposed the alleged tie "[t]o maintain its dominant position in the market for parts," specifically the market for "motorcycle parts compatible with Harley-Davidson motorcycles" sold in the United States. (*Id.* ¶¶ 36, 51, 97.) Plaintiffs do not claim that the various parts included within this alleged market are interchangeable. But they do allege that there is a "multitude" of manufacturers who provide "a dizzying array of repair parts as well as performance and cosmetic upgrade parts for" Harley-Davidson motorcycles, some of which are priced lower than H-D parts. (*Id.* ¶¶ 1, 36, 38, 52, 56-62, 65-68, 79.) They do not allege H-D's share of this "robust" and "vast" market (*see id.* ¶¶ 3, 52), but only that H-D has an unspecified "larger share." (*Id.* ¶ 38.) Plaintiffs claim that the alleged tie and the existing robust competition are barriers to entry (*id.* ¶ 92), but they never square that with the robustness of the alleged parts market.

### D.  The claims.

Plaintiffs bring a claim under the federal Magnuson-Moss Warranty Act (Count 2) individually and on behalf of a putative class of purchasers of Harley-Davidson motorcycles under warranty anywhere in the United States (including all territories and possessions). (*Id*. ¶ 126.) The remaining 89 counts are brought under various states' laws. Count 1 is a claim under the Wisconsin Antitrust Action brought on behalf of a putative class of owners of Harley-Davidson motorcycles under warranty that purchased Harley-Davidson parts in 37 states, the District of Columbia, and Guam. (*Id*. ¶ 127.) Counts 3-5 are common law claims for Unjust Enrichment (Count 3), Fraud (Count 4), and Fraudulent Concealment (Count 5) that are brought individually and on behalf of

multiple putative statewide classes of purchasers of Harley-Davidson motorcycles under warranty. (*Id.* ¶¶ 128, 158, 163, 174, 182.) The remaining 85 counts (Counts 6-90) are state antitrust and consumer protection claims brought on behalf of multiple putative statewide classes of owners of Harley-Davidson motorcycles under warranty who purchased Harley-Davidson parts in the various states. (*Id.* ¶¶ 127, 130.)[5] Based on their alleged state of purchase or state of residence (*id.* ¶¶ 6-19), Plaintiffs have brought the following state-law claims on their own behalf:

- Assises, Lipkin, and Demkiv: Count 2 and Counts 3-5, 26-27 based on Illinois law;
- Billings: Count 2 and Counts 3-5, 40 based on Massachusetts law;
- Chelenyak: Count 2 and Counts 3-5, 41-42 based on Michigan law;
- Harris: Counts 3-5, 85 based on Washington law;
- Hawkins: Count 2 and Counts 3-5, 20 based on Florida law;
- Heymer and Koller: Count 2 and Counts 3-5, 10-13 based on California law;
- Navarette: Count 2 and Counts 3-5, 67-68 based on New Mexico and Oklahoma law;
- Plinck: Count 2 and Counts 3-5, 53-54 based on Nevada law;
- Perry: Count 2 and Counts 3-5, 43-45 based on Minnesota law;
- Romeo: Count 2 and Counts 3-5, 20, 62 based on Florida and North Carolina law;
- Weaver: Count 2 and Counts 3-5, 60-61 based on New York law.

## LEGAL STANDARD

"At the pleading stage, [a plaintiff] bears the burden of alleging facts giving rise to a plausible inference that, after discovery, he will be able to prove each element of his…claim." *Siva v. Am. Bd. Of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*; *see also Assoc. of Am. Physicians & Surgeons, Inc. v. Am. Bd. Of Med. Specialties*, 15 F.4th 831, 834 (7th Cir.

---

[5] Although these classes are not clearly defined, this is the only plausible reading of the Complaint. (*See also* Compl. ¶¶ 194, 206, 229, 242, 252, 299, 342, 352, 374, 385, 393, 401, 414, 421, 447, 461, 469, 525, 534, 556, 579, 603, 626, 648, 656, 680, 689, 700, 710, 736, 756, 765, 788, 798, 813, 834, 845, 857, 952, 979, 987, 1000, 1010, 1032, 1081, 1121, 1157, 1194.)

2021) ("Mere legal conclusions…are 'not entitled to be assumed true' at the pleading stage.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

"Ensuring compliance with this standard is particularly important in the antitrust context so as to avoid 'the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope' of success." *Siva*, 38 F.4th at 575 (quoting *Twombly*, 550 U.S. at 559). "Twombly bars the discover-first, plead-later approach" because "modern antitrust litigation is expensive." *Assoc. of Am. Physicians*, 15 F.4th at 835. Failure to hold "a plaintiff with a largely groundless claim" to this standard would allow them "to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (quotation omitted). To prevent this, courts "'retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). This Court should use that power to dismiss Plaintiffs' claims because, as set forth below, they do not allege facts to render their claims plausible.

## ARGUMENT

### I.      PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL.

Plaintiffs claim that H-D violated three MMWA provisions, one prohibiting conditioning a warranty on the use of branded parts (the so-called MMWA tying prohibition), another requiring all warranty terms be in a single document, and a third requiring warranties be made available to consumers prior to purchase. (Compl. ¶¶ 118-123 (citing 15 U.S.C. § 2302(a)-(c) and 16 C.F.R. §§ 700.10(c), 701.3(a)(2), and 702.3(b)).) However, none of these claims are plausible.

#### A.  Plaintiffs fail to allege a tie prohibited by the MMWA.

The MMWA provides that a warrantor may not "condition his written or implied warranty…on the consumer's using…any article or service…which is identified by brand, trade,

or corporate name." 15 U.S.C. § 2302(c). Plaintiffs allege that H-D violated this prohibition by using its warranty to require use of Harley-Davidson branded parts. They rely "[s]pecifically" on a portion of a "Note" in the "Service Records" section of the Owner's Manual, not on the warranty itself. (Compl. ¶ 151.) But the MMWA regulations recognize that its tying prohibition "does not preclude a warrantor from expressly excluding liability for defects or damage caused by 'unauthorized' articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damage was so caused." 16 C.F.R. § 700.10(c). And that is what the warranty actually does. When read using ordinary principles of contract interpretation,[6] the warranty simply (1) excludes warranty coverage for damage caused by unauthorized parts, which is allowed by the MMWA, and (2) implements an EPA Consent Decree.

The warranty generally covers parts that malfunction or fail during the two-year warranty period due to defects or issues with factory supplied materials or workmanship. Exhibit C (2019 Owner's Manual) at p. 185. In a section entitled "EXCLUSIONS," the warranty provides that it does not apply to any motorcycle:

> Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications **may** void all or parts of your new motorcycle limited warranty.

*Id.* at pp. 186-187 (emphasis added.) The last sentence is similar to the sentence in the Service

---

[6] The warranty must be construed using the ordinary principles of contract interpretation. The contractual nature of express warranties is clear. *See, e.g., Michael v. Shiley, Inc.*, 46 F.3d 1316, 1325 (3d Cir. 1995) ("The parties to a contract, not the state, define the substantive obligations of the contract and hence any express warranties."); *Mouser v. Keystone RV Co*., 2023 U.S. Dist. LEXIS 41587, at *14 (N.D. Ind. Mar. 13, 2023) ("An express warranty is a contract, and a court looks to the terms of a contract when interpreting and enforcing it."); *Parrott v. Family Dollar, Inc*., 2020 U.S. Dist. LEXIS 66935, at *3 (N.D. Ill. Apr. 16, 2020) ("An express warranty is part of a contract."). And the warranty itself states that it is "a contract between you [the purchaser] and Harley-Davidson." Exhibit C at p. 188.

Records on which Plaintiffs specifically rely. (*See* Compl. ¶ 151.) Both use the word "may," which has an ordinary meaning that is distinct from "will." The Seventh Circuit has recognized that even "[a]n unsophisticated consumer would not understand the word 'may' to mean 'will.'" *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018); *cf. Ramirez v. Midland Funding, LLC,* 2020 U.S. Dist. LEXIS 108602, at *13 (N.D. Ill. June 22, 2020) ("[P]laintiffs' argument ignores the presence of the word 'may' in the letter."); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004) (plaintiff's claim was "downright frivolous" because "[t]he letter didn't say they would [add interest], only that they might."). Because "contract language is given its plain and ordinary meaning," *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010), the warranty terms cannot be reconciled with Plaintiffs' claim that it includes a prohibited MMWA tie. The warranty does not say using non-Harley-Davidson parts will affect the warranty.

Further, "[c]ontracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement." *Young*, 615 F.3d at 823. "Contract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous…." *Id.* And "if both a general and a specific provision apply to the subject at hand, the specific provision controls." *Id.* Other more specific provisions of the warranty make clear what use of the word "may" suggests, *i.e.*, that *certain unapproved* modifications will limit warranty coverage. For example, the warranty does not cover:

> 4. Defects or damage to the motorcycle ***caused by alterations outside of Harley-Davidson's factory specifications or caused by alterations or use of parts or accessories not approved*** for the make and model year of your motorcycle.

> 5. Damage ***caused by installation or use of non-Harley-Davidson components***, even those installed by an authorized Harley-Davidson dealership, ***that cause a Harley-Davidson part to fail***. Examples include, but are not limited to: performance-enhancing powertrain components or software, exhaust systems, trailer hitches, non-approved tires, lowering kits, handlebars, and add-ons connected to the factory electrical system.

Exhibit C at p. 187 (emphasis added). These provisions would be superfluous if the mere use of non-Harley-Davidson parts (e.g., trailer hitches) voided the warranty.

Further, the warranty excludes coverage "even" for damage caused by unapproved "modifications [that] include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle." *Id.* Other provisions of the warranty confirm this point:

> The fact that a part is labeled or branded Harley-Davidson does not necessarily make it appropriate or warranted for the make and model of your motorcycle. The use of parts not designed and tested for your motorcycle may have negative consequences on the performance of your motorcycle and may create conditions not covered by this limited warranty.

*Id.* at p. 188. This renders implausible any claim that the warranty language was intended "to force Harley owners to use [H-D's] own parts" (Compl. ¶ 1), as opposed to simply excluding warranty coverage for damage caused by ***any*** unauthorized parts.

The Warranty also provides that it will not cover the following:

> Defects or damage impacting the functionality of powertrain components in a motorcycle that has been tuned using a tuner or calibration that was not covered by a California ARB Executive Order or otherwise approved by EPA.

Exhibit C at p. 187. This provision was added in 2017 as a result of a Consent Decree with the EPA to resolve claims under the Clean Air Act. *See* Exhibit L (EPA Consent Decree) at ¶ 14(c). The Clean Air Act prohibits installing any part or component "where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this title." 42 U.S.C. § 7522(a)(3)(B). The EPA was concerned with "tuners," which "among other things, increase the power and performance of motorcycles," but which also "result[] in increased emissions." *United States v. Harley-Davidson, Inc*., 2020 U.S. Dist. LEXIS 167301, at *3, 5 (D.D.C. Sept. 14, 2020). H-D denied liability, but it reached an agreement with the EPA which

*requires* H-D to "deny all warranty claims for functional defects of powertrain components if any Defendants have any information to show that such vehicle was tuned using a Tuning Product that was not covered by a California ARB Executive Order or otherwise," instruct dealers to deny such claims, and ensure their policies and product literature state that it will deny such claims. Exhibit L at ¶ 14. The EPA argued, and the court agreed, that the decree was in the public interest because it "discourages motorcycle owners from tampering with their motorcycles." *Harley Davidson*, 2020 U.S. Dist. LEXIS 167301, at *24, 27. This makes the import of the "Note" in the "Service Records" section of the Owner's Manual cited by Plaintiff clear:

> The use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty. ***Any alterations to the emission system components, such as the intake and exhaust system, may be in violation of motor vehicle laws.***

Exhibit C at p. 203. Alterations to emission system components may violate the Clean Air Act, and pursuant to the EPA Consent Decree, addition of tuners that increase emissions will effectively void the powertrain warranty.

Finally, because the warranty can be read to have a meaning that does not violate the MMWA's tying prohibition, it should be. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Deputy v. Lehman Bros.*, 374 F. Supp. 2d 695, 706 (E.D. Wis. 2005) (*quoting* Restatement (Second) of Contracts, § 203(a).) Thus, this Court should prefer an interpretation of the warranty which gives it a lawful meaning, and it should reject any interpretation which renders it unlawful.

Further, no Plaintiff alleges that H-D denied warranty coverage simply because they used unapproved parts. Thus, Plaintiffs cannot even point to any course of performance that might support their claim. *See, e.g., In re Ganske*, 2021 Bankr. LEXIS 574, at *10 (Bankr. E.D. Wis.

Mar. 5, 2021). In fact, Plaintiffs allege only two instances where warranty coverage was denied, and both are consistent with the terms of the warranty. Plaintiffs point to a customer who claimed to have been denied warranty coverage for "simply mounting a flag." (Compl. ¶ 33.) But the video cited in the complaint shows that the warranty claim was denied by a dealer because the flag "was causing undue wind drag." Exhibit M (YouTube video screen shot). Thus, the dealer denied coverage not simply because a flag was installed, but because the installation interfered with the performance of the motorcycle, as allowed by the MMWA. *See* 16 C.F.R. § 700.10(c).[7] Relying on the same video, Plaintiffs cite an instance where warranty claims were allegedly denied because of modification "unrelated to the issue for which the consumer has brought in their bike." (Compl. ¶ 33.) But the video shows that the dealer refused warranty coverage because "I had done performance work to my bike" and as a result "my entire drive train warranty was no good anymore." Exhibit M. This, of course, is consistent with the warranty, which prohibits coverage for powertrain issues if unapproved performance-enhancing tuners are installed, regardless of whether the tuner caused the powertrain issue, as required by the EPA Consent Decree.

In short, if H-D denied a warranty claim simply because the owner installed an unapproved part (other than a tuner) that had no effect on the performance of the vehicle and no relationship to the issue for which warranty coverage was sought, it would be subject to liability for breach of warranty. Therefore, the warranty, properly interpreted, does not violate § 2302(c) of the MMWA.

**B. Plaintiffs fail to allege any relevant terms were omitted from the warranty.**

Plaintiffs allege that H-D violated 15 U.S.C. § 2302(a) and 16 C.F.R. § 701.3(a)(2) because the warranty "does not include the full terms of the warranty; instead, it instructs consumers to

---

[7] The consumer thought this was "nonsense," Exhibit M, but that is impossible to know without knowing more. If the consumer was complaining about excessive fuel consumption, for example, wind drag might well have been a significant contributing issue.

consult with a Harley-Davidson dealer for full details." (Compl. ¶ 105; *see also* ¶ 153.) That regulation requires the warranty to include "[a] clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2). But Plaintiffs do not identify any relevant terms that were not included in the warranty. In fact, they allege each of them were told of the warranty terms "by the Limited Warranty documents." (Compl. ¶ 124.) The warranty discloses that it does not cover damage caused by unapproved modifications, and it clearly discloses that addition of a tuner will preclude coverage for powertrain components. Plaintiffs do not plausibly allege that there were any other terms that were omitted from the warranty, or how the lack of any information in the written warranty impacted them.

### C. Plaintiffs fail to allege H-D did not meet any pre-sale warranty obligations.

Plaintiffs allege that H-D also violated 15 U.S.C. § 2302(b) and 16 C.F.R. § 702.3 by failing to "provide sellers with the necessary materials to display product warranties in close proximity to the relevant product, or place signs reasonably calculated to elicit consumers' attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request." (Compl. ¶ 152.) Plaintiffs rely on § 702.3(a), but that section imposes obligations on sellers (*i.e.*, dealers), not on the warrantors (*i.e.*, manufacturers). The warrantor's obligations are specified in § 702.3(b). That regulation states that a warrantor can meet its obligations in many ways, including "[p]roviding a copy of the written warranty with every warranted consumer product" to the seller. *Id*. Thus, by its plain language, this regulation does not require H-D to do anything other than provide a copy of the warranty to the seller with each motorcycle. Plaintiffs never allege that H-D failed to do this. In fact, Plaintiffs allege they received the written warranty because they allege they each were told of the warranty terms "by the Limited Warranty documents." (Compl. ¶ 124.) Further, § 702.3(b)(2) provides that a warrantor can comply with its

obligations by "provid[ing] the warranty terms in an accessible digital format on the warrantor's Internet Web site." And Plaintiffs acknowledge that the warranty terms are available on H-D's website. (Compl. ¶ 113-116.)

Besides, even assuming that H-D failed to comply with its obligations under §702.3(b)(1), Plaintiffs do not plausibly allege they suffered any harm as a result. Plaintiffs here do not allege they were actually unaware of the existence of the warranty, that they requested and were denied a copy of the warranty, that they were unaware of their right to request a copy prior to purchase, or that they were unaware of their ability to access the warranty on H-D's website. In short, they do not allege that they were unaware of any information that allegedly was not, but should have been, conveyed by H-D.

### D. The FTC action does not rescue Plaintiffs' claims.

Neither the FTC's Complaint, nor its Decision and Order implementing a Consent Agreement, save Plaintiffs' claims. *See* Exhibit K (FTC Complaint and Decision and Order). First, the FTC's Complaint merely "establishes that other people have made accusations" and nothing more. *Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022); *see also Doe v. Denison Univ.*, 2017 U.S. Dist. LEXIS 53168, at *32 (S.D. Ohio Mar. 30, 2017) ("a complaint in another lawsuit is not evidence of the truth of any of the allegations in the other lawsuit"). The FTC issued its Complaint after the parties reached a settlement agreement. *See* Exhibit K (Decision). Whether it would have issued the Complaint absent the settlement cannot be known. And if the FTC Complaint had been filed in Court, it would have been subject to dismissal for the exact same reasons, applying the exact same standards, as Plaintiffs' Complaint here. The Decision and Order, implementing a Consent Agreement, also does not speak to the plausibility of Plaintiffs' claims here because it does not include an admission of liability, any payment of any fines or civil penalties, or even any findings of fact or conclusions of law by the FTC. *See Pension Tr. Fund for*

*Operating Eng'rs v. Devry Educ. Grp.*, 2017 U.S. Dist. LEXIS 200272, at *33 (N.D. Ill. Dec. 6, 2017) ("For all the particularized allegations of the complaint show, it is as likely that defendants settled the FTC action for 'public relations' purposes as anything else."); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) (FTC investigation does not make claims plausible); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 338 n.2 (E.D. Pa. 2004) (FTC consent agreement where defendant "did not admit liability…has no preclusive effect").

## II.     PLAINTIFFS' ANTITRUST CLAIMS FAIL.

In addition to alleging that the warranty contained a tie that violates the MMWA, Plaintiffs claim the alleged tie constitutes a restraint of trade and (attempted) monopolization under various states' antitrust laws. (*See, e.g.*, Compl. ¶ 143.)[8] "A tying arrangement," under antitrust law, "is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.'" *Siva*, 38 F.4th at 573 (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5, (1958)).[9] The concern with tying "is that if the seller of the tying product is a monopolist,

---

[8] Agreements in restraint of trade and (attempted) monopolization are prohibited under Section 1 and 2 of the federal Sherman Act, respectively. 15 U.S.C. § 1-2. But as indirect purchasers (Compl. ¶ 100), Plaintiffs cannot recover under the Sherman Act. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019). To circumvent this, they bring antitrust claims under certain state statutes. *See* Compl. ¶¶ 243, 245 (California Cartwright Act); 253-254 (California Unfair Competition Law); 353-354 (Florida Deceptive and Unfair Trade Practices Act); 415-416 (Illinois Antitrust Act); 422-423 (Illinois Consumer Fraud and Deceptive Business Practices Act); 581-582 (Massachusetts Consumer Protection Law); 604-605 (Michigan Antitrust Reform Act); 627-628 (Minnesota Antitrust Law); 649-650 (Minnesota Consumer Fraud Act); 739 (Nevada Unfair Trade Practices Act); 790-791 (New Mexico Antitrust Act); 799-800 (New Mexico Unfair Trade Practices Act); 814-815 (New York Donnelly Act); 835-836 (North Carolina Antitrust Act).

[9] Although they vary in many ways, the relevant state antitrust statutes contain similar prohibitions to Section 1 and 2 of the Sherman Act. Cal. Bus. & Prof. Code § 16720; 740 Ill. Comp. Stat. Ann. 10/3(2)-(3); Mich. Comp. Laws §§ 445.772, 773; Minn. Stat. §§ 325D.51, 52; Nev. Rev. Stat. Ann. § 598A.060; N.M. Stat. Ann. §§ 57-1-1, 2; N.Y. Gen. Bus. Law § 340(1); N.C. Gen. Stat. §§ 75-1, 2.1; Wis. Stat. § 133.03(1)-(2). These states follow interpretations of the Sherman Act. *See, e.g.*, 740 Ill. Comp. Stat. Ann. 10/11; Mich. Comp. Laws § 445.784(2); Nev. Rev. Stat. Ann. § 598A.050; N.M. Stat. Ann. § 57-1-15; *Insulate SB, Inc. v. Advanced Finishing Sys.*, 797 F.3d 538, 547 (8th Cir. 2015) ("Federal cases interpreting the Sherman Act are applicable to problems arising

the tie-in will force anyone who wants the monopolized product to buy the tied product from him as well, and the result will be a second monopoly." *Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 592-93 (7th Cir. 2008). "Not all ties are prohibited," however, because many do not evoke this concern and "'are fully consistent with a free, competitive market.'" *Siva*, 38 F.4th at 573-74 (quoting *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006)). "A tie is illegal only when the seller 'exploit[s]…its control over the tying product to force the buyer into the purchase of a tied product' and in so doing 'coerces the abdication of buyers' independent judgment as to the 'tied' product's merits and insulates it from the competitive stresses of the open market.'" *Id.* (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12-13 (1984)).

---

under the Cartwright Act.") (quotation omitted); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (the "analysis under California's antitrust law mirrors the analysis under federal law"); *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols.*, 937 F.3d 1056, 1062 (7th Cir. 2019) ("Illinois courts interpret the state antitrust law in harmony with federal case law construing analogous provisions of federal legislation.") (quotation omitted); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n.1 (6th Cir. 2003) ("[W]e apply the same analysis to both the federal and [Michigan] antitrust claims."); *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d 1015, 1024 (8th Cir. 2020) ("Minnesota antitrust law is generally interpreted consistently with federal antitrust law.") (quotation omitted); *Boulware v. Nevada*, 960 F.2d 793, 800-01 (9th Cir. 1992) (the Nevada Unfair Trade Practices Act "tracks the provisions of the Sherman Act" and "adopts by reference the case law applicable to the federal antitrust laws"); *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007) ("Although we generally construe the Donnelly Act in light of federal antitrust case law, it is also well settled that we will interpret our statute differently where State policy, differences in the statutory language or the legislative history justify such a result.") (quotation omitted); *Fido's Fences, Inc. v. Canine Fence Co.*, 672 F. Supp. 2d 303, 313 (E.D.N.Y. 2009) ("Absent a contrary state policy, New York's Donnelly Act…[is] interpreted in accord with federal antitrust law."); *DKH Corp. v. Rankin-Patterson Oil Co.*, 131 N.C. App. 126, 128-29 (1998) ("Indeed, it is clear that federal decisions, though not binding on this Court, do provide guidance in determining the scope and meaning of [North Carolina] chapter 75.") (citing *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 655 (1973)); *Conley Pub. Grp., Ltd. v. J. Commc'ns, Inc.*, 665 N.W.2d 879, 885–86 (Wis. 2003) ("[T]he construction of [the Wisconsin Antitrust Act] is controlled by federal decisions under the Sherman Act."), *abrogated on other grounds by*, *Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis. 2005). Note, however, California requires "a combination…by two or more persons," Cal. Bus. & Prof. Code § 16720, and New York requires a "contract, agreement, arrangement or combination," N.Y. Gen. Bus. Law § 340(1), to state a (attempted) monopolization claim.

Plaintiffs here do not plausibly allege an anticompetitive tie for three separate and independent

reasons.[10] **First**, Plaintiffs fail to allege that H-D forced anyone to purchase Harley-Davidson parts

---

[10] When a claim fails under federal law, it fails under the relevant states' antitrust laws too. *See, e.g., Cisco Sys. v. Dexon Computer, Inc*., 2021 U.S. Dist. LEXIS 236322, at *15-16 (N.D. Cal. Dec. 9, 2021) ("Because [plaintiff] fails to plead a tying claim under the Sherman Act, its Cartwright Act claim fails."); *nSight, Inc. v. PeopleSoft, Inc*., 296 Fed. Appx. 555, 557 n.3 (9th Cir. 2008) ("[Plaintiff's] monopolization and attempted monopolization claims under the Cartwright Act fail for the same reasons as its Section 2 claim."); *Int'l Equip. Trading, Ltd. v. Illumina, Inc*., 312 F. Supp. 3d 725, 730 n.1 (N.D. Ill. 2018) (dismissing federal and Illinois antitrust claims for the same reason); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1010 (N.D. Ill. 2017) (same); *Collins v. Associated Pathologists*, 844 F.2d 473, 481 (7th Cir. 1988) (same at summary judgement); *DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 865 (E.D. Mich. 1997) *aff'd in part, rev'd in part*, 100 F.3d 462 (6th Cir. 1996) ("For the reasons stated above in the analysis of Plaintiff's federal antitrust claims, Defendant's motion for summary judgment is granted on Plaintiff's state antitrust claims."); *McLaughlin Equip. Co. v. Newcourt Credit Group, Inc*., 2004 U.S. Dist. LEXIS 13939 (S.D. Ind. Feb. 18, 2004) (dismissing federal and Minnesota tying claims for the same reason); *McCoy v. Gamesa Tech. Corp*., 2012 U.S. Dist. LEXIS 138417, at *20 n.4 (N.D. Ill. Sep. 26, 2012) (same); *American Computer Trust Leasing v. Jack Farrell Implement Co*., 763 F.Supp. 1473 (D. Minn. 1991) (same at summary judgement); *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d 1015, 1024 (8th Cir. 2020) (same); *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc*., 2016 U.S. Dist. LEXIS 87578, at *25-26 (N.D. Cal. Jul. 6, 2016) ("Just as [Plaintiffs'] Sherman Act claims fail, so too do its claims under" Nevada's antitrust law); *Bayer Schering Pharma Ag v. Watson Pharms*., 2010 U.S. Dist. LEXIS 161986, at *18 (D. Nev. Mar. 31, 2010) (dismissing the federal and Nevada antitrust claims for the same reason); *Gutierrez v. Bean*, 2006 U.S. Dist. LEXIS 95618, at *15 (D.N.M. Dec. 13, 2006) ("[F]or the reasons stated for the dismissal of the federal antitrust claims, Defendant is entitled to dismissal with prejudice of Plaintiffs' antitrust claims brought pursuant to state law."); *Leyba v. Renger*, 874 F. Supp. 1229, 1231 n.1 (D.N.M. 1994) (granting defendant summary judgment on federal and New Mexico antitrust claims for the same reason); *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs*., 418 F. Supp. 3d 826, 833 n.4 (D.N.M. 2019) (same); *Posa, Inc. v. Miller Brewing Co*., 642 F.Supp. 1198, 1211 (E.D.N.Y. Mar. 31, 1986) ("Plaintiffs' Donnelly Act claim is grounded on the identical occurrences that support the Sherman Act claim and we reject it for the same reasons."); *Fifth & Fifty-Fifth Residence Club Ass'n v. Vistana Signature Experiences, Inc*., 2018 U.S. Dist. LEXIS 169590, at *39 (S.D.N.Y. Sept. 28, 2018) ("Because Plaintiff does not adequately plead a dangerous probability of achieving monopoly power, it does not assert a viable claim for attempted monopolization under either the Sherman Act or the Donnelly Act."); *Cooper v. Forsyth Cty. Hosp. Auth., Inc*., 604 F. Supp. 685, 688 (M.D.N.C. 1985). ("For the reasons stated above as to why defendants are entitled to summary judgment on plaintiffs' claim under Sections 1 and 2 of the Sherman Act, defendants are also entitled to summary judgment under" North Carolina antitrust law); *Westerfield v. Quizno's Franchise Co., LLC*, 527 F. Supp. 2d 840, 856 n.5 (E.D. Wis. 2007) ("[P]laintiffs [tying] claim under the Wisconsin Antitrust Act will be dismissed for the same reasons" as the Sherman Act

as a condition of purchasing a motorcycle. ***Second***, Plaintiffs fail to adequately allege any relevant

antitrust markets, making it impossible to assess whether the alleged tie might be anticompetitive.

***Third***, Plaintiffs fail to allege facts that make it plausible the alleged tie could be an unreasonable

restraint of trade or constitute actual or attempted monopolization. ***Fourth***, Plaintiffs do not allege

they overpaid for the bundle of a motorcycle and parts, as is required to claim damages for tying.

And, ***fifth***, even if Plaintiffs had stated an antitrust claim, choice of law rules dictate that they bring

---

claim); *Epic Sys. Corp. v. Tata Consultancy Servs.*, 2017 U.S. Dist. LEXIS 162290, at *13 (W.D. Wis. Sep. 29, 2017) (following federal law in dismissing Wisconsin antitrust claim).

The same fate befalls claims under the relevant state consumer protection statutes for claims premised on allegedly anticompetitive conduct. *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2017 U.S. Dist. LEXIS 171322, at *46-47, 50 (E.D. Pa. Oct. 16, 2017) ("Multiple courts have dismissed state consumer protection and unfair trade practices claims that simply mirror deficient federal antitrust laws.") (citing cases); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 U.S. Dist. LEXIS 84152, at *58-59 (N.D. Ill. June 29, 2015) ("And under California law, because Indirect Plaintiffs failed to adequately plead their antitrust claims, their state claims must also fail.") (citing cases); *In re Dig. Music Antitrust Litig.*, 592 F. Supp. 2d 435, 451 (S.D.N.Y. 2008), *rev'd on other grounds*, 592 F.3d 314 (2d Cir. 2010) ("While the statutes at issue may embrace a violation of federal antitrust laws as a grounds for relief, my conclusion that Plaintiffs have not adequately alleged such a violation necessarily precludes their attempt to recast that violation as an unfair business practice.") (citing cases) (California, Florida, Massachusetts, New Mexico); *AT&T Mobility LLC v. Phone Card Warehouse, Inc.*, 2009 U.S. Dist. LEXIS 14462, at *14-15 (M.D. Fla. June 25, 2009) ("Here, because [plaintiff] has failed to state a claim under federal and state antitrust laws, it has also failed to properly plead a FDUTPA claim."); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830-33 (7th Cir. 2014) ("We can find no justification in Illinois law or policy for a rule that would ban a tying arrangement under the Consumer Fraud Act, even if that tying arrangement were found not to be anticompetitive for antitrust purposes."); *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 797-98 (S.D. Ill. 2018) ("[T]he Illinois Supreme Court has instructed that plaintiffs cannot use the Illinois Consumer Fraud and Deceptive Business Practices Act to get around the fact that their theory does not fly under the Illinois Antitrust Act: That gamesmanship would be incongruous with the state legislature's intent.") (quotation omitted); *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2016 U.S. Dist. LEXIS 136478, at *163-64 (C.D. Ill. Sep. 30, 2016) ("Because [plaintiff's] antitrust claims fail, [plaintiff's] Consumer Fraud Act claim based on explicit violations of the antitrust laws must fail as well."); *Ben Elfman & Son, Inc. v. Criterion Mills, Inc*., 774 F. Supp. 683, 687 (D. Mass. 1991) (plaintiffs' consumer protection claim "must fail, however, if the antitrust and contract claims fail"). These statutes prohibit unfair competition, methods of competition, or practices. Cal. Bus. & Prof. Code § 17203; Fla. Stat. Ann. § 501.204; 815 Ill. Comp. Stat. Ann. 505/2; Mass. Ann. Laws ch. 93A, § 2(a); N.C. Gen. Stat. § 75-1.1; Minn. Stat. § 325F.69; N.M. Stat. Ann. § 57-12-3.

claims under the laws of the state where they purchased parts, not under Wisconsin's antitrust law. Each requires dismissal of Plaintiffs' antitrust claims.

### A. Plaintiffs fail to allege a tie under antitrust law.

"Only if [buyers] are forced to purchase [the tied] services as a result of the [seller's] market power would the arrangement have anticompetitive consequences." *Jefferson Parish*, 466 U.S. at 25. There is no tie "where the buyer is free to take either product by itself," *id.* at 12, n.17 (quotation omitted), or where "the buyer wants both," *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 669 (7th Cir. 1985); *see also It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016) (if "the buyer is free to decline the tied product or to purchase the two products separately, then by definition there is no unlawful tying"). Plaintiffs do not allege that consumers were forced to buy Harley-Davidson parts in order to buy a motorcycle. Consumers could buy an Harley-Davidson motorcycle and no parts during the limited warranty period, for example. With the ability to buy the motorcycle "by itself there is no tying problem." *Jefferson Parish*, 466 U.S. at 12, n.17 (quotation omitted); *see also Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*, 96 F.3d 10, 18 (1st Cir. 1996) ("Where a tying product has not been withheld, there is no tie.").

Even if a consumer wanted or needed parts during the limited warranty period, the alleged "risk" of losing the warranty does not create a tie because the consumer is not precluded from buying the motorcycle. *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 870 (Fed. Cir. 1997); *DXS, Inc. v. Siemens Med. Sys.*, 991 F. Supp. 859, 864 (E.D. Mich. 1997) (no claim because tying product could be purchased without the tied product regardless of warranty terms). The *risk* of losing warranty coverage is simply "not the degree of coercion necessary" to establish a tie. *GMC v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (no tie of cars to approved transmission fluid where manufacturer said warranty may not cover damage caused by using unapproved fluid). "Indeed, it is well settled that warranties that are not sold as a separate product

do not result in consumer coercion if the warranty sets forth requirements." *Fido's Fences, Inc. v. Canine Fence Co.*, 672 F. Supp. 2d 303, 312 (E.D.N.Y. 2009). Instead, warranty limits "presumably reflect a [defendant's] unwillingness to extend free repair or replacement services to usage of its product that it cannot control." *Va. Panel*, 133 F.3d at 871. The alleged warranty restrictions here similarly do not amount to a forced sale necessary to claim an anticompetitive tie.

Even if consumers had to forgo whatever portion of their two-year warranties remained when they bought third-party parts, that would not create a tie. "When a purchaser of a product is free to forego the benefits of a warranty and buy service or replacement parts elsewhere, no tying arrangement exists." *Hypertherm, Inc. v. Am. Torch Tip Co.*, 2007 U.S. Dist. LEXIS 67579, at *17 (D.N.H. Sept. 11, 2007) (citing *Marts v. Xerox*, 77 F.3d 1109, 1112 (8th Cir. 1996)). The Eighth Circuit in *Marts* found no tie because "[a]lthough the warranty does condition its continuation on the use of [defendant's parts]," the customer "could forego the benefits of the warranty" and buy parts "from the vendor of its choice." 77 F.3d at 1112. The fact that the tying and tied products can be purchased separately—just as here, where Plaintiffs do not allege that they were forced to buy only Harley-Davidson parts (*see* Compl. ¶¶ 6-21)—negates the existence of a tie. *Id.*; *see also HDC Med., Inc. v. Minntech Corp.*, 411 F. Supp. 2d 1096, 1102 (D. Minn. 2006) (finding no tie where those who used third-party parts could still receive service on their products even though it might void the warranty). Where "[a] purchaser remains free to buy [the tied product] from other suppliers…so long as it is willing to forego the protections provided by the warranty" a plaintiff cannot state a tying claim. *RX Sys. v. Med. Tech. Sys.*, 1995 U.S. Dist. LEXIS 14214, at *16 (N.D. Ill. Sep. 29, 1995) (granting motion to dismiss). Here, too, Plaintiffs do not allege a tie.

Plaintiffs' allegation that the warranty terms created a "disincentive" to use third-party parts does not rescue their claim. (Compl. ¶ 92.) Not only is it conclusory, but it comes nowhere

close to alleging that it was cost prohibitive to purchase third-party parts even if it required forgoing some warranty coverage. "The additional cost" that might be associated with using a third-party's product "is not a penalty imposed by [the defendant] to force the use of its" product. *Sheridan*, 530 F.3d at 596. "To call this tying would be like saying that a manufacturer of automobiles who sells tires with his cars is engaged in tying because, although the buyer is free to buy tires from someone else, he is unlikely to do so, having paid for the tires supplied by the car's manufacturer." *Id.* (citations omitted). Similarly, the Seventh Circuit found no tie where a patented drug was sold with another drug at a discount because it was still available separately. *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006). The First Circuit reached the same conclusion when evaluating a warranty that "may act…as a subtle disincentive that inhibits customers from consulting" third-party service providers "because the customer would, by retaining a [third-party service provider], in effect write off whatever extra cost the manufacturer had built into the [tying product's] purchase price to permit it to offer the warranty," finding that "there is nothing inherently anticompetitive about the warranty." *SMS Sys. Maint. Servs. v. Dig. Equip. Corp.*, 188 F.3d 11, 20 (1st Cir. 1999). And the Eighth Circuit in *Marts*, found no tie because the tying and tied products could be purchased separately even though the customer would incur a cost to do so—"forego[ing] the benefits of the warranty"—as plaintiffs did not show that it was "not viable" to do so. 77 F.3d at 1112; *see also HDC Med.*, 411 F. Supp. 2d at 1102 (finding no tie because plaintiff failed to show owning a tying product without a warranty is "not viable," "prohibitively expensive," or "excessively costly"). This is particularly true when the tying product has a long life, *id.*, like here. (*See* Compl. ¶ 3.) Plaintiffs still had the option to purchase third-party parts

during the warranty period, and thus there was no tie.[11]

Plaintiffs' failure to allege a tie dooms their antitrust claims under both their restraint of trade and (attempted) monopolization theories. *See, e.g.*, *Airweld, Inc. v. Airco, Inc*., 742 F.2d 1184, 1191 n.3 (9th Cir. 1984) ("[Plaintiff's] failure to prove a substantive tying violation precludes it from claiming that [defendant's] actions in that respect also constituted an attempt to monopolize."); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 543 (9th Cir. 1983) ("Because the conduct [plaintiff] alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to [plaintiff's] efforts to state a claim for relief for monopolization or attempted monopolization, both of which require at least some allegation of anticompetitive conduct."); *Innotron Diagnostics v. Abbott Labs.*, 1989 U.S. App. LEXIS 23519, at *5 (9th Cir. Dec. 15, 1989) (monopolization claim failed because it was based on "precisely the same conduct that [plaintiff] relied on in its [failed] tying claim").[12]

### B. Plaintiffs fail to allege plausible antitrust markets.

"A 'relevant market' under the Sherman Act is comprised of the 'commodities reasonably interchangeable by consumers for the same purposes.'" *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916-917 (7th Cir. 2020) (quoting *United States v. E. I. du Pont de Nemours & Co*., 351 U.S. 377, 395 (1956)). "The outer boundaries of a product market are

---

[11] In addition to the reasons noted above, *supra* Section I.D, the FTC action does not save Plaintiffs' antitrust claims because "[t]he standard for [antitrust] liability…is simply inapplicable to section 2302(c) of the MMWA." *McGarvey v. Penske Auto. Grp*., 639 F. Supp. 2d 450, 463 n.14 (D.N.J. 2009). Courts decline to presume [defendant] violated federal antitrust laws based on the mere existence of this settlement of a different [] dispute." *Insulate SB, Inc. v. Advanced Finishing Sys*., 797 F.3d 538, 546 n.7 (8th Cir. 2015).

[12] *See also Chase Mfg. v. Johns Manville Corp*., 2019 U.S. Dist. LEXIS 111417, at *19-20 (D. Colo. July 3, 2019); *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 2016 U.S. Dist. LEXIS 87578, at *22-25 (N.D. Cal. July 6, 2016); *Clark Mem'ls of Ala., Inc. v. SCI Ala. Funeral Servs. LLC*, 991 F. Supp. 2d 1151, 1159 (N.D. Ala. 2014); *RX Sys*., 1995 U.S. Dist. LEXIS 14214, at *16.

determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). It "excludes other potential suppliers (1) whose product is too different (product dimension) or too far away (geographic dimension) and (2) who are not likely to shift promptly to offer defendant's customers a suitably proximate (in both product and geographic terms) alternative." *Id.* at 917 (quotation omitted). Failure to plead facts that make the alleged relevant markets plausible under these standards, like Plaintiffs fail to do here, requires dismissal. *Id.*; *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000); *Double D Spotting Serv. v. Supervalu, Inc.*, 136 F.3d 554, 559-61 (8th Cir. 1998); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 443 (3d Cir. 1997).

### 1. Plaintiffs' alleged motorcycle market is gerrymandered.

Plaintiffs allege the relevant tying product market is for "American-made, new, large roadgoing bikes, which are sold as a bundle with factory warranties" in the United States. (Compl. ¶ 39.) Plaintiffs claim branding and brand preferences limit the market to American-made motorcycles. (*Id.* ¶¶ 45-48.) This, however, is not a proper basis for defining a relevant antitrust market. In fact, Plaintiffs acknowledge that non-American branded motorcycles compete (*id.* ¶¶ 32, 37, 40, 43), and that H-D's "all American branding" was an effort to compete with those brands (*id.* ¶ 30).[13] This "belies" their alleged market. *In re German Auto. Mfrs. Antitrust Litig.*, 612 F. Supp. 3d 967, 980 (N.D. Cal. 2020) (rejecting a market for German vehicles with allegations that defendants reacted to "competition from Japanese" vehicles and to competition "with Italian, American, and Japanese brands"). Further, "even if [plaintiffs'] own allegations did not undermine

---

[13] Plaintiffs allege that H-D recognizes "the discreteness of large roadgoing motorcycle category in its public reporting." (Compl. ¶ 43.) Notably absent is any reference to "American-made."

their theory, 'judicial experience and common sense' would." *Id.* (quoting *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018)). Just like the existence of "[n]on-German luxury cars" makes it "implausible that national origin alone puts German automakers in a separate market from their high-end foreign rivals," *id.*, there are non-American made motorcycles and it is implausible that national origin alone puts H-D in a separate market from its foreign rivals.

More generally, courts reject relevant antitrust markets based on some consumers' preferences for a brand. Plaintiffs here are really advocating for a "Harley-Davidson" brand motorcycle market. (Compl. ¶ 29 (alleging that H-D's brand "became shorthand for the American motorcycle").) And gerrymandered, single-brand, markets are regularly rejected. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 945-47 (N.D. Ill. 2019) (dismissing claims based on an alleged market for "Maui Jim sunglasses" because "[c]onsumer preferences do not create a single-brand market.") (citing cases); *House of Brides, Inc. v. Alfred Angelo, Inc.*, 2014 U.S. Dist. LEXIS 1850, at *19-21 (N.D. Ill. Jan. 8, 2014) ("These conclusory allegations, resting on House of Brides' assertions that Alfred Angelo products are so 'unique' and 'highly differentiated' as to render other brands unsuitable substitutes, fall short of plausibly drawing the boundaries of the relevant product market around a single brand.") (citing cases).[14] Whether a seller has market power over customers "who are already determined" to purchase a particular product "cannot be the test." *Westerfield v. Quizno's Franchise Co., LLC*, 527 F. Supp. 2d 840,

---

[14] *See also PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1179-82 (W.D. Wash. 2021) (some consumers' preference for "Seahawks-affiliated products bearing the number 12" does not explain why they "are not interchangeable with other numbers, other NFL-team branded products, other regional sports team branded products"); *Wagner v. Circle W Mastiffs*, 732 F. Supp. 2d 792, 802-04 (S.D. Ohio 2010) (some consumers' preference for a certain dog breed "does not suggest why other breeds of companion dogs could not be reasonably interchangeable alternatives"); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 264-66 (S.D.N.Y. 2000) ("Courts in this district have rejected the proposition that allegedly unique products, by virtue of customer preference for that product, are markets unto themselves.") (quotation omitted).

858 (E.D. Wis. 2007) (Griesbach, J.). As such, their proffered market is not plausible and fails.

Further, Plaintiffs do not allege a factual basis for excluding used motorcycles from the market. They allege that the motorcycles can be kept on the road "for generation after generation." (Compl. ¶ 3.) And the only alleged basis for excluding used motorcycles is that they do not come with a factory warranty. (*Id.* ¶ 44.) A court recently found just such an allegation, with respect to the market for ambulances, insufficient. *First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*, 2020 U.S. Dist. LEXIS 74170, at *9-10 (D.N.J. Apr. 28, 2020). There, the plaintiff had alleged not only that used ambulances did not come with warranties, but also that the uncertainly around the reliability of used ambulances meant they were a "reputational and financial liability" and that certain customers specifically requested only new ambulances. *Id.* That was not enough and neither are Plaintiffs' less robust allegations here. Plaintiffs' failure to support their alleged motorcycle market definition means their antitrust claims should be dismissed. *Westerfield*, 527 F. Supp. 2d at 857-859 (dismissing for failure to adequately allege relevant market); *see also Queen City Pizza*, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").[15]

### 2. Plaintiffs' alleged parts market includes non-interchangeable products.

Plaintiffs' alleged tied product market for parts fails for a different reason. Relevant markets are to be comprised of products "reasonably interchangeable by consumers for the same

---

[15] *See also Reapers Hockey Ass'n v. Amateur Hockey Ass'n Ill., Inc.*, 412 F. Supp. 3d 941, 952-53 (N.D. Ill. 2019); *Rock v. NCAA*, 928 F. Supp. 2d 1010, 1021 (S.D. Ind. 2013); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1011-12 (N.D. Ill. 2017).

purposes." *Sharif Pharmacy*, 950 F.3d at 916-17 (quotation omitted). They must exclude products

that are "too different." *Id.* (quotation omitted). Plaintiffs' alleged relevant market for "motorcycle

parts compatible with Harley-Davidson motorcycles" sold in the United States (Compl. ¶ 51),

violates these principles. Plaintiffs make no allegations to suggest that mufflers, armrests,

backrests, and windshields, for example, are interchangeable.[16] Of course, they are not. Such parts

are "too different" to be in a single market, making Plaintiffs' alleged parts market implausible

and dismissal of their claims appropriate. *See, e.g., PSKS, Inc. v. Leegin Creative Leather Prods.,*

*Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal, in part, because "'women's

accessories' is too broad and vague a definition to constitute a market").[17]

### C. Plaintiffs fail to allege any tie that is an unreasonable restraint of trade.

For a tie to be plausibly anticompetitive it "must involve two separate products" and "the

plaintiff must allege that the defendant has sufficient economic power in the tying market to

restrain free competition in the tied product market, that the tie affects a not-insubstantial amount

---

[16] In certain instances courts have found that "[a] cluster of products can comprise a relevant product market if the cluster is itself an object of consumer demand." *Sharif Pharmacy*, 950 F.3d at 918 (quotation omitted). But "the 'clustered' goods must be generally purchased as a group, and the value of the individual services must increase when packaged with the rest." *Rozema v. Marshfield Clinic*, 977 F. Supp. 1362, 1380 (W.D. Wis. 1997) (citations omitted); *see also Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 351-55 (S.D.N.Y. 2009) (no cluster market because "while some customers might prefer a single source provider," there was no evidence "that such customers would not surrender that preference rather than pay a significantly higher price"). Plaintiffs allege no facts that support a cluster market here.

[17] *See also Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2021 U.S. Dist. LEXIS 120744, at *2-4 (W.D. Pa. June 29, 2021) (dismissing for failure to allege that "activewear, tank tops or sleeveless shirts, t-shirts, long sleeve shirts, shorts, pants, leggings, joggers, sweatpants, sleeves, pajamas[,] and sleepwear" are "interchangeable"); *Prescient Med. Holdings, LLC v. Lab. Corp. of Am. Holdings*, 2019 U.S. Dist. LEXIS 24145, at *14-15 (D. Del. Feb. 14, 2019) (same as alleged market "is too broad and imprecise"); *Rock*, 928 F. Supp. 2d at 1022 (same as alleged market "is impermissibly broad"); *Drake v. Cox Enters.*, 2013 U.S. Dist. LEXIS 19077, at *6-9 (D. Kan. Feb. 13, 2013) (same because books, CDs, and DVDs are not "interchangeable"); *In re Nat'l Ass'n of Music Merchs.*, 2011 U.S. Dist. LEXIS 94302, at *13 (S.D. Cal. Aug. 19, 2011) (same as "musical instruments and amplifiers" are "an unidentifiable and overly broad market").

of interstate commerce in the tied product, and that the defendant has some economic interest in the sales of the tied product." *Siva*, 38 F.4th at 574 (cleaned up).[18] In addition, there must be "a substantial danger that the tying seller will acquire market power in the tied product market." *Will*, 776 F.2d at 674. As set forth below, Plaintiffs fail to allege each.

1. No market power in the tying market

"For a tying arrangement to be actionable, the defendant must enjoy substantial market power in the tying product." *Westerfield,* 527 F. Supp. 2d at 856 (citing *Hardy v. City Optical Inc*., 39 F.3d 765, 767 (7th Cir. 1994)). As an initial matter, Plaintiffs' failure to "sufficiently allege a relevant market" means the court cannot actually "address whether [plaintiff] has sufficiently alleged market power…." *Int'l Equip. Trading, Ltd. v. AB Sciex LLC*, 2013 U.S. Dist. LEXIS 123109, at *15 (N.D. Ill. Aug. 29, 2013). Still further, Plaintiffs do not even allege what H-D's market share in the alleged relevant market is. They do allege that H-D has 21.1% of sales of new, large roadgoing bikes in the United States. (Compl. ¶ 50.) This is too small to infer market power. *See, e.g., Will*, 776 F.2d at 671-72 (noting that the Supreme Court concluded that a 30% share "was not the sort of power that a plaintiff must show") (citing *Jefferson Parish*, 466 U.S. at 27); *Marts*, 77 F.3d at 1113 n.6 (18% share insufficient).[19]

Furthermore, a defendant's share of sales alone cannot establish market power. "Market

---

[18] A tie can be a *per se* unreasonable restraint of trade or unreasonable under the rule of reason. *Jefferson Parish*, 466 U.S. at 29. As a practical matter, the two are the same. *Viamedia, Inc. v. Comcast Corp*., 951 F.3d 429, 468 (7th Cir. 2020) ("The factual elements that must be proven for a tying claim capture much of what must be demonstrated in a rule of reason case.").

[19] Further, to the extent H-D's share reflects some consumers' patriotism, that "does not do enough harm to the economy to warrant trundling out the heavy artillery of federal antitrust law." *Sheridan*, 530 F.3d at 595; *SMS Sys.*, 188 F.3d at 23 ("[T]here always will be a subset of customers whose subjective preferences, given their specific business needs, will align them more closely with one manufacturer. [H]owever, this kind of preference does not translate into the kind of economic power that antitrust law aims to mitigate.").

power comes from the ability to cut back the market's total output and so raise price," and "[i]f firms are able to enter, expand, or import sufficiently quickly, that may counteract a reduction in output" and any attempted price increase. *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1335-1336 (7th Cir. 1986); *see also Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1414 (7th Cir. 1989) (market share is "not necessarily the same" as market power where firms can "divert production into the market from outside" or "convert other productive capacity to the product in question or import the product from out of the area"). If barriers to entry or expansion are low, even high shares do not equate to market power. *Ball Mem'l*, 784 F.2d at 1335-1336; *see also Rebel Oil Co. v. Atl. Richfield Co*., 51 F.3d 1421, 1439 (9th Cir. 1995) ("A mere showing of substantial or even dominant market share alone cannot establish market power….The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price."). Here Plaintiffs do not allege that there are any barriers preventing the current competitors from expanding or increasing sales into the United States. They do allege that H-D's competitors— including Honda, Kawasaki, Yamaha, Suzuki, and BMW—"have the backing and name of companies with an array of products in markets across the globe." (Compl. ¶ 91.) It is implausible to assume that these large competitors could not increase sales in or into the United States— especially when Plaintiffs allege these competitors previously did so, nearly bankrupting H-D (*id.* at ¶ 27)—negating any inference of market power from market shares. *Ball Mem'l*, 784 F.2d at 1335-1336; *Rebel Oil*, 51 F.3d at 1439. This too requires dismissal. *See, e.g.*, *Hip Hop Bev. Corp. v. Monster Energy Co*., 733 F. App'x 380, 381-82 (9th Cir. 2018) (affirming dismissal, in part, for

failure to allege "existing competitors lacked the capacity to increase their output").[20]

## 2. No substantial amount of commerce is foreclosed in the tied market

A tying arrangement can violate antitrust law only if "'a substantial volume of commerce is foreclosed' because of the tie." *Reifert v. S. Cent. Wis. MLS Corp.,* 450 F.3d 312, 317-18 (7th Cir. 2006) (quoting *Jefferson Parish*, 466 U.S. at 16). "This element can be broken into two sub-questions: (1) Is there at least one competitor in the tied product market other than the favored seller; and (2) Is the quantity of interstate commerce affected not-insubstantial?" *Id.* Plaintiffs fail to allege facts that render either plausible. As to the first, Plaintiffs fail to adequately allege a relevant tied product market, *see supra*, which renders it impossible to determine whether there is a competing provider for any given part. Although they allege that the parts market generally is "robust" and "vast" with a "multitude" of competing parts makers (Compl. ¶¶ 3, 36, 52, 56-62, 65-68), they do not allege that there is actually a manufacturer other than H-D for any particular part within the alleged broad parts market. If there is a part, for example, that only H-D offers, there can be no anticompetitive tie as to that part because the tie would not foreclose any competition for that part. *See Reifert*, 450 F.3d at 318 ("Where there is no competition in the tied market, there can be no antitrust violation."); *Healy v. Cox Communs., Inc.*, 871 F.3d 1093, 1108 (10th Cir. 2017) (no competitors in the tied market meant "no foreclosure, and zero-foreclosure ties present no antitrust concerns"); *Cancall PCS, LLC v. Omnipoint Corp.*, 2001 U.S. Dist. LEXIS 3267, at

---

[20] *See also Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 U.S. Dist. LEXIS 126239, at *22-25 (E.D. Cal. July 15, 2022) (dismissing for failure to "allege facts 'above the speculative level' that existing competitors lacked the capacity to expand") (quotation omitted); *Witt Co. v. Riso, Inc.*, 948 F. Supp. 2d 1227, 1245 (D. Or. 2013) (same for failure to adequately pled "barriers to entry and the lack of ability by competitors to increase their share of the market"); *Goodloe v. Nat'l Wholesale Co.*, 2004 U.S. Dist. LEXIS 13630, at *18-23 (N.D. Ill. July 16, 2004) (same where "barriers to market entry are typically *de minimis*" because that precludes market power); *infra* Section II.D.1.

Case 2:23-md-03064-WCG   Filed 09/15/23   Page 52 of 83   Document 42

*14 (S.D.N.Y. Mar. 23, 2001) (dismissing because there were no competitors in the tied market) (citing *Coniglio v. Highwood Servs.*, 495 F.2d 1286, 1291 (2d Cir. 1974)). This too requires dismissal of Plaintiffs' claims.

Plaintiffs' allegations also fall short as to whether the quantity of interstate commerce allegedly affected was not-insubstantial. The relevant question is whether plaintiffs have pleaded that "'a substantial volume of commerce is foreclosed'" to tied product competitors "because of the tie." *Reifert*, 450 F.3d at 318 (quoting *Jefferson Parish*, 466 U.S. at 16); *see also Healy*, 871 F.3d at 1106 ("The dollar amount…that is relevant to the foreclosure element must have been achieved by the tie….not from any other anticompetitive conduct…or from any external factors unrelated to the tie."); *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1519 (2d Cir. 1989) (the relevant sales are the "total sales lost to potential competitors due to tying policy"). "If only a single purchaser," for example, "were 'forced' with respect to the purchase of a tied item, the resultant impact on competition would not be sufficient to warrant the concern of antitrust law." *Jefferson Parish*, 466 U.S. at 11. The only sales volume alleged by Plaintiffs is the volume of all Harley-Davidson parts sales, but they do not allege that all sales amount to commerce foreclosed to a competitor by the alleged warranty terms. (Compl. ¶ 95.) Parts sold to customers whose motorcycles were out of warranty would be equally available to competitors. Parts sold to customers who wanted non-Harley-Davidson parts regardless of any warranty terms would be equally available to competitors. And parts sold to customers who wanted Harley-Davidson parts regardless of any warranty terms were never available to competitors, regardless of the alleged tie. None of these sales would have been foreclosed to competitors because of the alleged tie. *See Jefferson Parish*, 466 U.S. at 11 (sale of a tied product to a customer that "would not have otherwise bought even from another seller" does not impact competition "because no portion of

the market which would otherwise have been available to other sellers has been foreclosed"). Because not all sales are allegedly foreclosed by any tie, Plaintiffs' claims should be dismissed.

### 3. No substantial danger of anticompetitive effects in the tied market

"One of the threshold criteria that a plaintiff must satisfy….is that there is a substantial danger that the tying seller will acquire market power in the tied product market." *Carl Sandburg Vill. Condo. Asso. No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 210 (7th Cir. 1985); *Healy*, 871 F.3d at 1097-98 (plaintiffs must show "that the tie had the substantial potential to harm competition" in the tied market).[21] As a threshold matter, Plaintiffs' failure to allege a plausible tied product market*, see supra*, means they cannot have pled a substantial danger of harm in it. Plaintiffs' failure to allege a plausible tying product market, and market power in it, also means they have not pled a substantial danger of extending such power to any tied product market. *See Will*, 776 F.2d at 674; *Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.*, 730 F. Supp. 826, 932 (C.D. Ill. 1990). And Plaintiffs' failure to allege that a not insubstantial amount of commerce was foreclosed by the tie also means any "impact on competition would not be sufficient to warrant the concern of antitrust law." *Jefferson Parish*, 466 U.S. at 11.

Further, as the Tenth Circuit explained, "[b]ecause tying claims often present little or no potential to harm competition—and thus, no antitrust concerns—plaintiffs alleging per se unlawful tying arrangements must do more to meet the foreclosure element than point to a dollar amount." *Healy*, 871 F.3d at 1107. Whether considered a part of the foreclosure element as the Tenth Circuit does, or an additional element, a plaintiff must allege something more than the dollar amount of sales subject to the tie to show a substantial danger that a tie will result in an extension of market

---

[21] *See also RX Sys.*, 1995 U.S. Dist. LEXIS 14214, at *15; *McLaughlin Equip. Co. v. Newcourt Credit Grp., Inc.*, 2004 U.S. Dist. LEXIS 13939, at *72-73 (S.D. Ind. Feb. 18, 2004).

Case 2:23-md-03064-WCG   Filed 09/15/23   Page 54 of 83   Document 42

power. Plaintiffs make no such allegations here. In fact, what they do allege shows no such danger exists. Plaintiffs allege a "robust" and "vast" parts market with a "multitude" of competing parts makers. (Compl. ¶¶ 3, 36, 52, 56-62, 65-68.) And they do not allege any changes in the market or that barriers prevent competitors from expanding. *See supra*. There is no substantial danger "if the tied-product market is occupied by many stable sellers who are not likely to be driven out by the tying, or if entry barriers in the tied-product market are low." *Jefferson Parish*, 466 U.S. at 38 (O'Connor, J., concurring); *cf. Americap, Inc. v. ADJ Corp*., 1980 U.S. Dist. LEXIS 13434, at *9 (S.D.N.Y. Sep. 5, 1980) (insufficient to allege harm to one competitor in the tied market, as opposed to competition overall). Furthermore, they have no factual allegations suggesting it is plausible that a tie purportedly impacting only the sale of parts during, at most, the first two years of a new motorcycle's life forecloses any meaningful amount of competition for the sale of parts for motorcycles are kept on the road for "generation after generation." (Compl. ¶ 3.) For all these reasons, Plaintiffs fail to plead a substantial danger of anticompetitive effects in the tied market.

### D. Plaintiffs fail to allege any tie that constitutes actual or attempted monopolization.

Plaintiffs here allege actual and attempted monopolization of their alleged parts market, claims for which they face "a stiff burden." *Ball Memorial*, 784 F.2d at 1338. Possessing monopoly power is not "unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Accordingly, a monopolization claim requires "(1) that the [defendant] possessed monopoly power in that market; and (2) that the [defendant] willfully acquired or maintained that power by means other than the quality of its product, its business acumen, or historical accident." *Mercatus Grp., LLC v. Lake Forest Hosp*., 641 F.3d 834, 854 (7th Cir. 2011). And an attempted monopolization claim requires "(1)…specific intent to achieve monopoly power in a relevant market; (2) predatory

or anticompetitive conduct directed to accomplishing this purpose; and (3) a dangerous probability that the attempt at monopolization will succeed." *Id.* Here, Plaintiffs fail to allege facts making the existence of each plausible.

### 1. No monopoly power or a dangerous probability of acquiring it

"Monopoly power has long been defined in the courts as the power to exclude competition or to control price…a definition we have alternatively stated in this circuit as 'power over price' or 'the ability to cut back the market's total output and so raise price.'" *Ind. Grocery, Inc. v. Super Valu Stores, Inc*., 864 F.2d 1409, 1414 (7th Cir. 1989) (citations omitted). "[T]he conventional way of proving power" is "by showing a given share of a properly defined relevant market." *Goldwasser v. Ameritech Corp*., 222 F.3d 390, 397 (7th Cir. 2000). But market share allegations do "not end the inquiry, for the existence of monopoly power depends upon a variety of market characteristics in addition to market share, such as 'the strength of the competition, the probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct and the elasticity of consumer demand.'" *Republic Tobacco, L.P. v. N. Atl. Trading Co*., 1999 U.S. Dist. LEXIS 6098, at *35-36 (N.D. Ill. Apr. 8, 1999) (quoting *International Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 792 (2d Cir. 1987)). So too with respect to a dangerous probability of acquiring monopoly power. *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 269-70 (7th Cir. 1981) (dangerous probability of acquiring monopoly power "requires evidence that the defendant had sufficient market power to have been reasonably able to create a monopoly"). Here, Plaintiffs' attempt to plead monopoly power, or a dangerous probability of achieving it, falls short for four reasons.

***First***, Plaintiffs' failure to allege a legally cognizable relevant parts market means the Court cannot even assess the question of whether they have adequately pled monopoly power. *Int'l Equip. Trading*, 2013 U.S. Dist. LEXIS 123109, at *15.

34

**Second**, Plaintiffs do not allege H-D's share of the alleged parts market. *See, e.g.,* *Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*, 2013 U.S. Dist. LEXIS 70545, *16 (S.D. Cal. May 17, 2013) ("Because there is no allegation regarding [defendant's] share of the market, [Plaintiff] has failed to plead facts suggesting a dangerous probability of success."). Instead, Plaintiffs allege there are a "multitude of parts manufacturers" that provide "a dizzying array of repair parts as well as performance and cosmetic upgrade parts for" Harley-Davidson motorcycles and that just one of those sellers itself has a 15% share. (Compl. ¶¶ 36, 38, 62.)[22] None of these allegations are consistent with any plausible inference that H-D has monopoly power, or a dangerous probability of achieving it, in the ill-defined parts market. *See Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 579-80 (S.D.N.Y. 2011) (dismissing claim where market share allegations were undermined by allegations of "dozens" of competing products and other "large producers"). Plaintiffs' allegation that Harley-Davidson parts cost more than some others (Compl. ¶ 79), does not change this. *See Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1406, 1411-12 (7th Cir. 1995) ("[W]hen dealing with a heterogeneous product or service…a reasonable finder of fact cannot infer monopoly power just from higher prices—the difference may reflect a higher quality more costly to provide—and it is always treacherous to try to infer monopoly power from a high rate of return."); *Harrison Aire, Inc. v. Aerostar Int'l*, 423 F.3d 374, 381 (3d Cir. 2005) (the product "is differentiated by composition and quality," so "comparatively high price does not, by itself, support a reasonable inference of monopoly power").[23]

---

[22] Plaintiffs' allegations that H-D is "23 times the size of its nearest competitor" is both irrelevant—because market power cannot be inferred by comparison to one of "numerous" suppliers—and because the claim is mathematically impossible in light of the allegation that the competitor has 15% of the sales in the market. (Compl. ¶¶ 60, 95.)

[23] Plaintiffs' vague, unsupported, and conclusory allegation that H-D "has kept a larger share of the parts market for itself" does not meet their pleading burden. *See, e.g.*, *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 17-20 (D.D.C. 2021) (dismissing claims based on market share allegations

*Third*, Plaintiffs fail to allege any plausible barriers to entry or expansion in the purported parts market. They allege that the parts market is "robust" and there are a "multitude of parts manufacturers"—"numerous makers and sellers" of compatible parts. (Compl. ¶¶ 3, 36, 52, 56-62, 65-68.) These allegations cannot be squared with the unspecified alleged barriers. (*See id.* ¶ 88.)[24] Plaintiffs also offer no allegations that the current compatible parts manufacturers could not expand production. Failure to allege barriers to expansion is fatal to their claims. *See Republic Tobacco*, 1999 U.S. Dist. LEXIS 6098, at *35-36 (dismissing monopolization and attempted monopolization for failure to allege barriers); *Ervin Equip. Inc. v. Wabash Nat'l Corp.*, 2017 U.S. Dist. LEXIS 12701, at *9 (N.D. Ind. Jan. 31, 2017) (dismissing attempted monopolization claim because plaintiff "has not alleged there are high barriers to entry" given that "[t]he Seventh Circuit has long held that low barriers to competition demonstrate the absence of monopoly power") (quotation omitted); *GlobalTap LLC v. Smart Tap LLC*, 2015 U.S. Dist. LEXIS 21687, at *15-20 (N.D. Ill. Feb. 24, 2015) (same).[25] They also seem to suggest that the "already robust" nature of

---

supported by "bare assertions" that are "too conclusory to plausibly establish market power," including because the Plaintiff did "not even allege what it is measuring") (citing cases).

[24] The alleged robustness of the parts market belies the conclusory allegation that the purported tie is a barrier. (Compl. ¶ 92.) *See Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212, 1227 (D. Kan. 2013) (dismissing Section 2 claims because the complaint did not allege any facts "to support an inference that [the tie], which allegedly began [5 years earlier], produced a dangerous probability of either defendant attaining monopoly power"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058-60 (8th Cir. 2000) (challenged discounts were not a barrier as they "left ample room for new competitors"); *Dominick v. Collectors Universe, Inc.*, 2012 U.S. Dist. LEXIS 179703, at *14-18 (C.D. Cal. Dec. 18, 2012) (dismissing claim that challenged contract "could somehow preclude" entry because "Plaintiffs plead no facts explaining how this could be"). Furthermore, Plaintiffs have no factual allegations suggesting it is plausible that an alleged tie purportedly impacting the sale of parts during, at most, the first two years of a new motorcycle's life—a motorcycle that they allege can be kept on the road for much longer (Compl. ¶ 3)—creates a barrier to entry or expansion.

[25] *See also Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 141-42 (3d Cir. 1998) (affirming dismissal for failure to allege monopoly power or a dangerous probability of monopoly power for sole provider because the complaint did not allege "barriers that exist which prevent plaintiff's entry into such markets"); *Distance Learning Co. v. Maynard*, 2020 U.S.

the market is itself a barrier to even more companies joining the competition (Compl. ¶ 92), but "efficient, aggressive competition . . . is not in itself a structural barrier to entry." *DeSoto Cab Co. v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 226261, at *23-24 (N.D. Cal. Sept. 24, 2018) (granting motion to dismiss) (cleaned up).[26] For all these reasons, Plaintiffs do not adequately allege monopoly power or a dangerous probability of achieving it any parts market.

**Fourth**, in the context of aftermarkets, "the naked fact that a manufacturer has a high percentage of the market for servicing its own products does not mean that it" has market power. *SMS Sys.*, 188 F.3d at 16. In fact, it is "expected" given the manufacturer's "relative expertise," but its "behavior in the aftermarket probably will be scrutinized by customers shopping for the firm's products in the primary market." *Id.* Disfavored aftermarket practices "will prompt potential customers to go elsewhere" and cause "defections from its installed base as well." *Id.* "This means that, for antitrust cases involving derivative markets, courts cannot reflexively resort to traditional product market definition methods, but must look to other modes of scrutinizing the existence and measure of market power." *Id.* at 17-18. Accordingly, only "very limited circumstances" provide for a claim of branded aftermarket power. *Universal Avionics Sys. Corp. v. Rockwell Int'l Corp.*,

---

Dist. LEXIS 99256, at *23 (N.D. Cal. June 4, 2020) (dismissing because a "plaintiff must show that new competitors face high market barriers to entry and that current competitors lack the ability to expand their output to challenge a monopolist's high prices") (quotation omitted); *Townshend v. Rockwell Int'l Corp.*, 2000 U.S. Dist. LEXIS 5070, at *34-36 (N.D. Cal. Mar. 28, 2000) (same); *Desoto Cab Co. v. Uber Techs.*, 2020 U.S. Dist. LEXIS 259450, at *8 (N.D. Cal. Mar. 25, 2020) (same); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 U.S. Dist. LEXIS 160238, at *23 (N.D. Cal. Sep. 28, 2017) (same); *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1192-93 (N.D. Cal. 2016) (allegation of 70-90% market share insufficient because it does not allege that existing competitors cannot expand).

[26] *See also United States v. Syufy Enters.*, 903 F.2d 659, 667-69 (9th Cir. 1990) (rejecting argument that "efficient, aggressive competition is itself a structural barrier to entry" because all it actually indicated was a "rough-and-tumble industry"); *Distance Learning*, 2020 U.S. Dist. LEXIS 99256, at *24-26 (dismissing for same reason); *United States v. United Tote, Inc.*, 768 F. Supp. 1064, 1076 (D. Del. 1991) ("[C]ourts have rejected evidence of a given market's vigorous [] price competition as indicative of whether new competitors are likely to enter or not.").

184 F. Supp. 2d 947, 955 (D. Ariz. 2001). And to find aftermarket power, courts require "'significant information and switching costs'" that "sever the usual link between the primary market and aftermarket." *Harrison Aire,* 423 F.3d at 382 (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 473 (1992)). Courts have looked to whether a manufacturer changed a policy that "enabled [it] to extract supra-competitive prices from customers who had already purchased its machines." *Dig. Equip. Corp. v. Uniq Dig. Techs.*, 73 F.3d 756, 763 (7th Cir. 1996). Without a change after a costly-to-reverse primary market purchase, the manufacturer cannot "exploit" the customer in the aftermarket. *Id.*; *see also Schor v. Abbott Labs.,* 457 F.3d 608, 613-14 (7th Cir. 2006) (noting that plaintiff "does not accuse [defendant] of any similar [policy] switch that would exploit customers' sunk costs"); *Harrison Aire*, 423 F.3d at 383 ("One important consideration is whether a unilateral change in aftermarket policy exploits locked-in customers.") (citing cases). The inability to account for the aftermarket at the time of the foremarket purchase and the inability to avoid the aftermarket by switching foremarket products, are the "'significant information and switching costs'" required to state a claim of aftermarket power. Plaintiffs do not allege the plausibility of either.

*Information costs.* Plaintiffs do not allege an information deficit that prevented them from meaningfully accounting for the aftermarket when purchasing a motorcycle. If "customers knew or could readily obtain information about the defendants' parts and service policies,"—that is, there was no "sudden restrictive change in policy which caused their customers to be unwittingly locked in to the use the defendants' services"—then there is no aftermarket power. *Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1359 (S.D. Fla. 1998) (quotation omitted); *see also Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 19 (1st Cir. 1994) (dismissing claims with no allegations that it was "difficult or expensive to obtain or correlate" aftermarket information); *Océ N. Am.,*

*Inc. v. MCS Servs.*, 795 F. Supp. 2d 337, 345 (D. Md. 2011) (same where complaint "fails to plausibly explain exactly why [foremarket] purchasers cannot obtain this information"). Plaintiffs do not allege any policy change or that they could not get the information—from their own prior experience, by asking sellers or other consumers, or otherwise searching it out. *See, e.g., Metzler*, 19 F. Supp. 2d at 1352 (noting that most customers "had previously purchased machines from either the defendants or a competitor and were presumably knowledgeable about…the practices of various manufacturers with regard to their service and parts policies").

Instead, Plaintiffs allege only that consumers cannot assess the lifecycle cost of a motorcycle because it "requires a sophisticated analysis based on a wealth of information" that is "difficult—some of it impossible—to acquire," particularly where competition for parts business means there are a variety of options and prices and consumers can't "accurately predict the need for replacement parts." (Compl. 80; *see also* ¶¶ 75-76, 88, 90.) If that were enough, virtually no aftermarket would be found to be disciplined by foremarket, and that is the opposite of the law. *See Universal Avionics*, 184 F. Supp. 2d at 955. What Plaintiffs' allegations actually speak to is "the common human inability to predict the future with certainty," *Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 549 (S.D.N.Y. 2009), uncertainty that does not even apply to cosmetic or performance upgrades, which are predictable. "[P]erfect information about the aftermarket is not required." *Universal Avionics*, 184 F. Supp. 2d at 956.

*Switching costs*. Under Plaintiffs' theory, "the only switching cost is the cost of writing off the portion of the equipment's purchase price that represents the warranty." *SMS Sys.*, 188 F.3d at 20. Plaintiffs do not allege that this cost is significant, particularly when customers allegedly had

to forego only what remained on the two-year warranty to buy third-party parts.[27] Thus, even if Plaintiffs adequately allege a market, market shares, and barriers, they still do not plausibly allege aftermarket power. Their monopolization and attempted monopolization claims fail accordingly.

### 2. No acquisition or maintenance of monopoly power

"The second element of each claim can be met by showing that the [defendant] engaged in predatory or anticompetitive conduct of some kind." *Mercatus Grp.*, 641 F.3d at 854. Since, as explained above, Plaintiffs do not allege an anticompetitive tie, they fail to allege any anticompetitive conduct underlying their Section 2 claim. *See supra* Section II.A.

### 3. No specific intent to monopolize

The "specific intent to accomplish the forbidden objective" is a required element of an attempted monopolization claim. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985). "All lawful competition aims to defeat and drive out competitors. Therefore, the mere intention to exclude competition and to expand one's own business is not sufficient…." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986). At the pleading stage, an allegation of specific intent "is conclusory in the absence of anticompetitive conduct from which such specific intent may be inferred." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987). Plaintiffs here do not plead a plausible inference of a specific intent to monopolize because they fail to allege any anticompetitive conduct, which requires dismissal. *See id.* at 735-36; *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 258 (3d Cir. 2010) (affirming dismissal where "[t]he only plausible inference from that conduct is that each [defendant] sought to acquire, retain and/or increase its own business," which "the antitrust laws

---

[27] Plaintiffs do not even allege that customers could not reasonably avoid the alleged policy by selling their motorcycle, which they allege has a long life. (Compl. ¶ 3.)

do not prohibit," and "Plaintiffs' allegations of specific intent rest not on facts but on conclusory statements strung together with antitrust jargon").[28]

### E. Plaintiffs fail to allege they overpaid for the motorcycle and parts combined.

Plaintiffs allege that H-D "has charged more for its parts than it would have been able to." (CAC ¶¶ 5, 102.) But Plaintiffs do not allege that the tie increased the *combined* price for the motorcycle and parts. "The appropriate measure of damages in a tying case is the amount the purchaser overpaid for the unlawfully tied *bundle of products or services* when compared to the amount the purchaser would have paid to purchase those products or services separately." *Lakeland Reg'l Med. Ctr., Inc. v. Astellus US, LLC*, 763 F.3d 1280, 1284 n.3 (11th Cir. 2014) (emphasis in original). The Seventh Circuit has endorsed this measure of injury. *Will*, 776 F.2d at 673 ("[U]nless the plaintiff shows that the package price was elevated the suit must be dismissed without further ado."). "A determination of the value of the tied products alone would not indicate whether the plaintiff indeed suffered any net economic harm, since a lower price might conceivably have been exacted…for the tying product." *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285 (11th Cir. 1982). The lack of allegations that the tie increased the package price, like here, requires dismissal. *See Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, 2008 U.S. Dist. LEXIS 62181, at *13-21 (D.N.J. Aug. 12, 2008) (granting motion to dismiss where plaintiff did not plead that the alleged tie "caused it to face a significant threat of paying more for [the tying and tied products] as a bundle than it would pay for the products individually absent the tie").[29]

---

[28] *See also Surface Supplied, Inc. v. Kirby Morgan Dive Sys.*, 2013 U.S. Dist. LEXIS 143478, at *18-19 (N.D. Cal. Oct. 3, 2013); *Dig. Sun v. Toro Co.*, 2011 U.S. Dist. LEXIS 30222, at *13-14 (N.D. Cal. Mar. 22, 2011); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42-43 (D.D.C. Jan. 9, 2007).

[29] *See also Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 718-19 (11th Cir. 1984) (summary judgment to defendant where plaintiff "failed to offer any evidence that the overall package was overpriced and that plaintiff suffered any net economic injury"); *Metzler*, 19 F. Supp.

**F. Plaintiffs cannot bring a claim under the Wisconsin Antitrust Act.**

No Plaintiff alleges that he or she lives in or purchased an Harley-Davidson motorcycle or parts in Wisconsin. And "[a]pplying [a state's] law to these wholly out-of-state transactions would be at best a 'novelty,' and at worst a violation of constitutional limitations." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1 23 F.3d 599, 613 (7th Cir. 1997)). Choice of law rules resolve this and dictate that Plaintiffs cannot bring claims under Wisconsin's antitrust law. Regardless of whether the Court applies the transferee (WI) or transferor (CA, IL, MA, MN, NY, and WI) court forum's choice of law rules, the results are the same—the law of the state of purchase governs.

*Most Significant Relationship.* Illinois, Massachusetts, and Wisconsin are all guided by the Second Restatement's "most significant relationship" approach. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007); *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 405 n.12 (2019) (Massachusetts' "functional" approach "is explicitly guided by the Restatement"); *NCR Corp. v. Transp. Ins. Co.*, 2012 WI App 108, ¶ 13, n.2 (2012) (the first step in Wisconsin is to determine "[i]f one states' contacts are clearly more significant" using the Restatement's contacts). And many courts have concluded that the Second Restatement points to the law of an antitrust plaintiff's state of purchase. *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 34-35 (E.D.N.Y. 2020).[30] And in the related consumer protection context, courts

---

at 1361-62 (same because plaintiffs did not show "a higher package price"); *Trident Holdings, LLC v. Great Wraps, Inc.*, 2009 U.S. Dist. LEXIS 140229, at *50-52 (N.D. Ga. Mar. 31, 2009) (same because plaintiffs "have not provided any evidence that the tied and tying products exceeded their combined fair market value") (cleaned up), *reconsideration granted on other grounds*, 2010 U.S. Dist. LEXIS 152553 (Sept. 22, 2010).

[30] *See also In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 U.S. Dist. LEXIS 183601, at *84-85 (E.D. Va. Aug. 13, 2020) (Massachusetts); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S.

applying Wisconsin's choice-of-law rules have similarly concluded that this analysis mandates applying the law of the state of purchase over the law of the defendant's domicile. *See Reichardt v. Electrolux Home Prods. Inc.*, 2023 U.S. Dist. LEXIS 40416, at *8-11 (E.D. Wis. Mar. 10, 2023) (North Carolina law inapplicable to North Carolina defendant); *Doster Lighting, Inc. v. E-Conolight LLC*, 2015 U.S. Dist. LEXIS 78499, at *44-45 (E.D. Wis. June 17, 2015) (Wisconsin law inapplicable to Wisconsin defendant).

*Government Interest*. California uses a government interest choice-of-law rule. *Chen v. Los Angeles Truck Centers, LLC*, 7 Cal. 5th 862, 867-68 (2019). And in some cases, New York also uses this rule. *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 318-25 (2011).[31] Courts have concluded that these tests point to the law of an antitrust plaintiff's state of purchase. *See Restatsis*, 335 F.R.D. at 34-36 (California and New York); *Zetia*, 2020 U.S. Dist. LEXIS 183601, at *83-84 (same); *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067-74 (9th Cir. 2021) (California); *Intel*, 2010 U.S. Dist. LEXIS 144511, at *171-78 (same).

*Choice-Influencing Factors*. Minnesota and Massachusetts are guided by the choice-influencing factors. *Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W.2d 467, 470 (Minn. 1994); *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 634 (1985) (choice-influencing factors are a component of Massachusetts' "functional" approach).[32] Courts applying Massachusetts' and

---

Dist. LEXIS 99365, at *174-79 (N.D. Cal. Apr. 19, 2016); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 585-88 (E.D. Tenn. 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 96741, at *15-17 (N.D. Cal. Aug. 29, 2011); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2010 U.S. Dist. LEXIS 144511, at *164-70 (D. Del. July 28, 2010); *In re Relafen*, 221 F.R.D. at 277-78 (Massachusetts).

[31] In other cases, New York follows the *lex loci delicti* choice-of-law rule, which also points to the law of the state of purchase. *See infra*.

[32] Wisconsin also looks to these factors if the most significant relationship factors are ambiguous (which they are not, as discussed above). *NCR*, 2012 WI App at ¶ 14.

Minnesota's choice-of-law rules have concluded that these factors point to the law of an antitrust plaintiff's state of purchase. *See In re HIV Antitrust Litig.*, 2023 U.S. Dist. LEXIS 69497, at *33-51 (N.D. Cal. Apr. 20, 2023) (Minnesota); *Zetia*, 2020 U.S. Dist. LEXIS 183601, at *84-85 (Massachusetts); *Relafen*, 221 F.R.D. at 277-78 (Massachusetts).

*Lex Loci Delicti*. In some cases, New York follows the traditional *lex loci delicti* choice-of-law rule, *Edwards*, 17 N.Y.3d at 318-19, where the law of the "the location of the last act necessary to complete the injury is the place of the wrong" applies, *Intel*, 2010 U.S. Dist. LEXIS 144511, at *178. In an antitrust case, this is the state where the plaintiff purchased the product. *See Zetia*, 2020 U.S. Dist. LEXIS 183601, at *85-86; *Intel*, 2010 U.S. Dist. LEXIS 144511, at *178.

Since Plaintiffs do not allege that that they live in or purchased a motorcycle or parts in Wisconsin, dismissal of Count 1 is warranted. *See In re TFT-LCD*, 2011 U.S. Dist. LEXIS 96741, at *13-17 (dismissing claims under a choice of law analysis); *In re Packaged Seafoods Products Antitrust Litig.*, 242 F. Supp. 3d 1033, 1066-68 (S.D. Cal. 2014) (same).

## III. PLAINTIFFS' FRAUD-BASED CLAIMS FAIL.

### A. Plaintiffs fail to plead their fraud claims with particularity.

Plaintiffs' common law fraud and fraudulent concealment claims, and Plaintiffs' statutory claims that are based on allegations of fraudulent conduct, are governed by the heightened pleading standard of Fed. R. Civ. P. 9(b).[33] *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts") (citations omitted); *see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (applying Rule 9(b) to deception-based claim brought under state consumer protection statute). The specificity requirement of Rule 9(b) is designed to "discourage

---

[33] This includes Counts 4-5, 11, 13, 27, 40, 42, 44-45, 54, 59, 61, 67-68, and 85.

a 'sue first, ask questions later' philosophy," and it "forces the plaintiff to conduct a careful pretrial investigation and minimizes the risk of extortion that may come from a baseless fraud claim." *Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 670-71 (E.D. Wis. 2022) (Griesbach, J.) (internal quotation marks and citations omitted).

To comply with Rule 9(b), a plaintiff must specify "matters such as time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentation or failing to make a complete disclosure and what that defendant obtained thereby." *Adams v. Waupaca Foundry*, 2017 U.S. Dist. LEXIS 208132, *15-16 (E.D. Wis. Dec. 19, 2017) (Griesbach, J.) (citation omitted); *see also Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud,"; misrepresentation and omission claims dismissed).

As acknowledged in *Rocha* and *Adams*, the specificity requirements of Rule 9(b) equally apply to Plaintiffs' claims to the extent they are based on omissions instead of affirmative misrepresentations. *Adams*, 2017 U.S. Dist. LEXIS 208132, *16; *Rocha*, 826 F.3d at 911; *see also McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805-06 (N.D. Ill. 2013) (dismissing fraudulent concealment claim for failure to satisfy Rule 9(b) and stating, "Plaintiffs must provide greater detail about the circumstances surrounding the omissions, including when and where they occurred, and what material facts should have been disclosed at what times."). There is no reason to relax the standard for Plaintiffs' omission claims, since all of the required information is in Plaintiffs' possession. *McMahan*, 938 F. Supp. 2d at 806. Rule 9(b) also applies to claims of "unfair" conduct, where, as here, the claims are based on an alleged course of fraudulent conduct. *See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); *see also* Compl. ¶ 1 (describing lawsuit as directed at allegedly "fraudulent conduct,") ¶ 256 (California

Unfair Competition Law claim based on same fraudulent conduct allegations as other claims).

"Plaintiffs' labyrinthine and confusing allegations" remain inadequate to comply with the requirements of Rule 9(b). *Van Den Heuvel v. AI Credit Corp.*, 951 F. Supp. 2d 1064, 1079 1079 (E.D. Wis. 2013) (Griesbach, J.). First, Plaintiffs fail to specify ***what*** was allegedly misrepresented or concealed. It is unclear whether Plaintiffs are claiming that H-D concealed the actual warranty language, including the alleged tie. Plaintiffs allege—in consecutive paragraphs—that Defendants both disclosed and failed to disclose the alleged restrictions. *Compare* Compl. ¶ 178 (H-D "failed to disclose" that warranties included restriction "that ostensibly prevented Plaintiffs from repairing their motorcycles with their preferred service personnel, including themselves, and/or using non-Harley-Davidson brand parts.") *with* ¶ 179 ("Defendants indicated to Plaintiffs that they would be unable to repair the motorcycles that they purchased unless they used authorized service providers and parts.")[34] Or are Plaintiffs claiming that the actual warranty language was provided to Plaintiffs but included misrepresentations? (*See, e.g.*, Compl. ¶ 170.) If so, what exactly was misrepresented? Is it some amorphous information about the enforceability of the warranty terms? (*See, e.g.*, *id*. ¶ 168.) If so, what language constituted the alleged misrepresentation?

Plaintiffs also have not specified ***where*** the information was allegedly misrepresented or concealed. Are Plaintiffs claiming they received allegedly misleading written materials? If so, what materials did they receive? Again, it is not clear whether Plaintiffs are alleging the misrepresentations or omissions were contained in the written warranty terms, which Plaintiffs

---

[34] *Compare also* Compl. ¶ 124 (all plaintiffs "were told by the Limited Warranty documents that in order to maintain the two-year coverage that they would need to purchase Harley-Davidson-branded parts rather than aftermarket parts manufactured by a competitor and had to have any servicing done at a Harley-Davidson dealer, or they would lose the warranty coverage.") *and* ¶ 113 n.56 (acknowledging that warranty language, including language with allegedly improper restrictions, was included in motorcycles' owners' manuals and was available online) *with* ¶ 172 ("Had Harley-Davidson disclosed the true warranty terms…").

confusingly allege were both provided and not provided to them. (*Compare* Compl. ¶ 104 (not provided) *with* ¶ 124 (provided).) Are Plaintiffs claiming information was misrepresented or concealed in oral communications from H-D? If so, what communications?

Nor have Plaintiffs specified **when** the information was allegedly misrepresented or concealed: Are Plaintiffs claiming that **before** they purchased their motorcycles, they received materials or oral communications that included misrepresentations or omitted information? Or did they receive allegedly misleading communications **after** their purchases? Or both? Again, Plaintiffs' allegations are inconsistent. (*Compare* Compl. ¶ 124 (Plaintiffs "were told by the Limited Warranty documents" about the alleged restrictions) *with* ¶ 180 ("the unlawful repair restrictions were not revealed to Plaintiffs until after the point of sale").) Are Plaintiffs claiming the misrepresentations or omissions were made before Plaintiffs purchased parts? Were allegedly misleading communications made to these Plaintiffs between their motorcycle purchases and their parts purchases?

Plaintiffs also have not specified **who** allegedly misrepresented or concealed the information: Was it H-D? If so, what communications, if any, do Plaintiffs allege they received directly from either of the H-D entities that are the Defendants in this lawsuit? Are Plaintiffs alleging that misrepresentations or omissions were made by personnel affiliated with the sellers of parts that some Plaintiffs claim to have purchased? Was it a dealer? It is not clear from the Complaint which Plaintiffs actually communicated with a dealer regarding the warranty terms. Are Plaintiffs alleging that misrepresentations or omissions were made by personnel at unidentified H-D dealerships in connection with denials of warranty coverage for parts or repairs? (*See, e.g.*, Compl. ¶¶ 33-34.)

The Complaint does not answer these questions, and as a result, all of Plaintiffs' fraud-

based claims must be dismissed for failure to comply with Rule 9(b). *See, e.g.*, **What**: *Cota*, 603 F. Supp. 3d at 675 (plaintiff failed to identify "what representation [defendant] made with respect to the products"); **Where**: *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001-02 (N.D. Cal. July 28, 2009) (plaintiffs failed to identify where alleged misrepresentations were displayed or "where the omitted information should or could have been revealed."); *Brumfield v. Merck & Co.*, 2018 U.S. Dist. LEXIS 86329, at *17 (E.D.N.Y. May 18, 2018) (plaintiff failed to "identify the sources of the alleged misrepresentations or omissions," including "specific advertisements" that included misrepresentations or omissions); **When**: *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, 2013 U.S. Dist. LEXIS 200218, at *25 (M.D. Fla. Aug. 27, 2013) ("The Complaint does not, for example, state when Plaintiff viewed the alleged misrepresentations on Defendants' website, or even whether it—or any other consumer—viewed them at all before purchasing the allegedly defective products."); **Who**: *Van Den Heuvel*, 951 F. Supp. 2d at 1079 (fraud allegations did not identify each participant's alleged role in fraudulent scheme and did not identify who was present at allegedly misleading sales presentations).

Plaintiffs' failure to satisfy Rule 9(b) is further demonstrated by the fact that all of Plaintiffs' fraud-based claims are "pleaded identically, no matter what plaintiff is involved," and "[n]ot one plaintiff has identified the specific statements or omissions that they relied on" in receiving the products at issue "or the circumstances of the purported misrepresentations." *Brumfield*, 2018 U.S. Dist. LEXIS 86329, at *18. "This is fatal to plaintiffs' claims," *id.*, and they should be dismissed with prejudice.

Without the details required by Rule 9(b), Plaintiffs cannot plausibly allege the remaining elements of Plaintiffs' fraud-based claims, including that H-D knew that any alleged misrepresentations were false, that H-D had a duty to disclose whatever facts were allegedly

omitted, and that Plaintiffs relied on the alleged misrepresentations and omissions. *See, e.g.*, *Ghaznavi v. De Longhi Am., Inc.*, 2023 U.S. Dist. LEXIS 133730, at *16 (S.D.N.Y. Aug. 2, 2023) (dismissing claims based on allegedly fraudulent and unlawful warranty terms for coffeemaker, and noting that "the truth of a representation of lawfulness may not be knowable to the speaker at the moment of sale."); *Geiling v. Wirt Fin. Servs.*, 2014 U.S. Dist. LEXIS 183237, at *155-56 (E.D. Mich. Dec. 31, 2014) (legal opinion regarding meaning of contract term is not a statement of fact that can give rise to a fraud claim); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (affirming dismissal of fraudulent concealment claim where defendant did not have a duty to disclose the allegedly concealed information). The plausibility of any claim of reliance is especially problematic, given that those Plaintiffs who claim to have purchased Harley-Davidson parts do not even allege that they only purchased Harley-Davidson parts, nor do they identify any particular misrepresentation or omission (or provide the who, what, where, when, etc. for that misrepresentation/omission) that they claim to have relied upon in buying Harley-Davidson parts. *See Marolda*, 672 F. Supp. 2d at 1002 (details of alleged omission must be identified in order to adequately plead reliance). Plaintiffs' fraud-based claims should be dismissed.

### B. Certain Plaintiffs' statutory claims fail for additional reasons.

#### 1. <u>Michigan's and Oklahoma's consumer protection statutes do not cover claims arising from otherwise regulated purchases.</u>

Although Plaintiffs purport to raise claims under both the Michigan Consumer Protection Act ("MCPA") and the Oklahoma Consumer Protection Act ("OCPA") (Counts 42 and 67), neither statute applies to transactions that are regulated or authorized under laws administered by a state or federal regulatory body. *See* Mich. Comp. Laws § 445.904(1) (MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."); Okla. Stat. tit. 15, §

754 (exempting from the OCPA "[a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States").

Based on these statutory provisions, numerous courts have held that claims arising from automobile purchases are exempt from the scope of the MCPA and OCPA. For example, in *Cyr v. Ford Motor Co.*, 2019 Mich. App. LEXIS 8347, at *5-6 (Dec. 26, 2019), the Michigan Court of Appeals cited various statutes and regulations including the MMWA to support its conclusion that the automotive industry is "highly regulated" on both the state and national levels, and as a result, "the manufacture, sale, and lease of automobiles, and the provision of express and implied warranties concerning those automobiles and their components are all conduct that is 'specifically authorized' under federal and state law" and is therefore exempt from the MCPA.[35] *See also Chapman v. GM LLC*, 531 F. Supp. 3d 1257, 1302 (E.D. Mich. 2021) (dismissing MCPA claim); *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019) (same); *MacTavish v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 104482, at *28-30 (C.D. Cal. Feb. 15, 2022) (dismissing MCPA and OCPA claims); *Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 22594, at *40-42 (C.D. Cal. Feb. 9, 2023) (same).

It is undisputed that motorcycles, like automobiles, are "heavily regulated machines." (Compl. ¶ 88).[36] It is further undisputed that as with automobiles, the federal MMWA "regulates

---

[35] Further, the Michigan Supreme Court has explained that the relevant inquiry in determining whether conduct is exempt from the MCPA "is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 597 NW2d 28, 38 (Mich. 1999).

[36] *See also, e.g.*, 49 C.F.R. § 571 (establishing safety standards applicable to motor vehicles, including numerous standards applicable to motorcycles); 49 U.S.C. § 30112(a) (prohibiting manufacture and sale of any motor vehicle, including motorcycles, that does not comply with federal safety standards); 49 U.S.C. § 30118(b)(2) and 49 C.F.R. §§ 573 and 579 (regulating

consumer warranties and the procedures used to resolve warranty disputes" for motorcycles, and "also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties." (Compl. ¶ 117.) Much of Plaintiffs' Complaint—including the MCPA and OCPA claims—is based on allegations that H-D's conduct violated the MMWA and the implementing regulations administered by the FTC. (*See, e.g.*, *id.* ¶¶ 102-110, 117-123, 147-156, 168, 178, 183, 615-16, 618, 905.) Thus, because the transactions at issue in this case were specifically authorized and regulated under laws administered by a regulatory body acting under federal statutory authority, Plaintiffs' MCPA and OCPA claims must be dismissed.

2. The Illinois consumer protection statutes require a specific communication from defendant.

Plaintiffs' Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count 27) fails because Plaintiffs Assise, Lipkin, and Demkiv do not identify with particularity any communication or advertisement they actually received from H-D. (*See* Compl. ¶¶ 6, 8, 9 (all alleging that they purchased a motorcycle, but not identifying any communications from H-D that they received and relied upon)); *see also De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]o maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause."); *Darne v. Ford Motor Co*., 2015 U.S. Dist. LEXIS 169752, at *32 (N.D. Ill. Dec. 18, 2015) ("An 'omission' under the ICFA is an omission from a communication, not a general failure to disclose, as the plaintiffs maintain."); *Drake v. Toyota Motor Corp*., 2021 U.S. Dist. LEXIS 98381, at *13 (C.D. Cal. May 17, 2021) (dismissing ICFA claim for failure to sufficiently identify

---

disclosure of alleged safety defects in motor vehicles, including motorcycles); 42 U.S.C. § 7521 and 40 C.F.R. Parts 9, 86, 90 and 1051 (regulating motorcycle engine emissions requirements).

communications received from the defendant).

### 3. Minnesota's Deceptive Trade Practices Act provides only prospective relief.

Count 44 purports to be a claim under the Minnesota Uniform Deceptive Trade Practices Act, but the claim must be dismissed because the statute cited (Minn. Stat. §§ 325F.44, et seq.) is an inapplicable statutory provision regulating branding of "not Indian-made" goods. *See* Compl. ¶¶ 633-639. To the extent Plaintiffs intended to cite Minn. Stat. § 325D.44, the claim still fails because "Minnesota courts have consistently concluded that the [Deceptive Trade Practices Act] affords only prospective injunctive relief," *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1075 n.3 (D. Minn. 2010). As stated in Section VII, Plaintiffs have no standing to seek injunctive relief, so this claim must be dismissed.

### 4. Oklahoma's Deceptive Trade Practices Act does not provide a private right of action.

Plaintiff Navarette's claim under the Oklahoma Deceptive Trade Practices Act (Count 68, "ODTPA"), 78 Okla. Stat. §51 *et. seq.*, should be dismissed because the ODPTA does not provide a private cause of action for consumers. Rather, the ODTPA is limited to claims of anti-competitive conduct between business competitors. *See Conatzer v. Am. Mercury Ins. Co., Inc.*, 15 P.3d 1252, 1254 (Okla. App. 2000) (holding that "[i]t has been definitively established that" the DTPA protects "competing business interests and do[es] not present a basis for suit by consumers"); *see also Chapman v. Chase Manhattan Mortg. Corp.*, 2007 U.S. Dist. LEXIS 70655, at *12 n.8 (N.D. Okla. Sep. 24, 2007) (N.D. Okla.) (recognizing that Oklahoma's DPTA does not provide a basis for suit by consumers).

### 5. Plaintiffs do not allege proper notice for their CLRA damages claim.

Thirty days before filing a suit for damages under the California Consumer Legal Remedies Act, a plaintiff must send written notice of the claim to the defendant "by certified or registered

mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California." Cal. Civ. Code § 1782(a). Plaintiffs do not allege that they complied with this statutory requirement. Instead, they assert that notice was provided through the complaints filed in the *Koller* and *Heymer* cases. (Compl. ¶ 282.) But "[t]his does not satisfy the CLRA because filing a complaint is not the same as sending the letter." *Shu v. Toyota Motor Sales USA, Inc.*, 2023 U.S. Dist. LEXIS 68626, at *21-22 (N.D. Cal. Apr. 19, 2023). "[S]trict" adherence to the CLRA's notice provision is required, *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011), and because Plaintiffs allege no such compliance here, their CLRA damages claim should be dismissed.

6.  <u>Plaintiffs' California Unfair Competition Law claim, and any other requests for equitable relief, fail because Plaintiffs have adequate remedies at law.</u>

Plaintiffs' claim under California's Unfair Competition Law ("UCL") is "equitable, rather than legal, in nature." *Williams v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 215046, at *27 (N.D. Cal. Nov. 17, 2020) (quoting *Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 462 P.3d 461, 488 (Cal. 2020)). Therefore, like Plaintiffs' unjust enrichment claims (discussed below) and any other requests for equitable relief, Plaintiffs' UCL claim is barred by the availability of an adequate legal remedy. *See id.* (dismissing UCL claim due to availability of adequate remedy at law, and noting that "[m]onetary damages are a remedy at law.") (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 (2006)).

7.  <u>Plaintiffs' claims based on alleged "unlawful" conduct fail for the same reasons as Plaintiffs' other claims.</u>

Several of Plaintiffs' statutory claims are predicated on the existence of allegedly "unlawful tying schemes" or violations of other referenced statutes, including the Magnuson-Moss Act, the Song-Beverly Warranty Act, and the CLRA. See, e.g., Compl. ¶ 255, 268-69, 581, 616, 649-651, 747, 826, 905. 1142. These claims fail for the same reasons, described herein, that doom

Plaintiffs' claims based on violation of antitrust and other statutes.

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL.

Plaintiffs' unjust enrichment claims fail for one or more reasons. ***First***, the claims are based on the same allegations of "unlawful" conduct as Plaintiffs' other claims (Compl. ¶¶ 159-161), and the unjust enrichment claims therefore fail for the same reasons as the other claims. *See Kahn v. Walmart, Inc.*, 2023 U.S. Dist. LEXIS 48042, at *10 (N.D. Ill. Mar. 21, 2023). ***Second***, Plaintiffs have adequate remedies at law in the form of the numerous common law and statutory claims asserted in the Complaint.[37] ***Third***, Plaintiffs Heymer's and Koller's claim under California law fails because the weight of authority in California holds that "[u]njust enrichment is not a cause of action." *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2021).

---

[37] *See, e.g.*, **CA**: *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) (concluding that equitable relief is not available to a party with an adequate remedy at law); **FL**: *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("[u]njust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.") (citations omitted); **IL**: *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. Ct. App. 2004) ("[u]njust enrichment is only available when there is no adequate remedy at law.") (citations omitted); **MA**: *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("[a] claim of unjust enrichment . . . is not available to a party with an adequate remedy at law.") (internal quotation marks and citations omitted); **MI**: *Bossart v. GM LLC*, 2021 U.S. Dist. LEXIS 94919, at *25 (E.D. Mich. May 19, 2021) ("This Court has previously stated that '[a]s an equitable remedy, unjust enrichment is not available where there is an adequate remedy at law.'"); **MN**: *United States v. Bame*, 721 F.3d 1025, 1032–32 (8th Cir. 2013) (holding that unjust enrichment is not available under Minnesota law to plaintiffs who have an adequate remedy at law); **NV**: *Srs Liquidation v. Individual*, 2013 Nev. Dist. LEXIS 379, at *12 (Washoe Cnty. D. Ct. Jan. 18, 2013) (dismissing claim for unjust enrichment upon reaching conclusion that plaintiffs had adequate legal remedy); **NM**: *In re GM LLC Ignition Switch Litig.*, 339 F. Supp. 262, 338 (S.D.N.Y. 2018) (noting that unjust enrichment is an equitable remedy and the New Mexico Supreme Court has held that equitable relief should be denied where there is an adequate remedy at law); **NY**: *Fed. Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists.") (citations omitted); **NC**: *Peace River Elec. Coop. v. Ward Transformer Co.*, 449 S.E.2d 202, 213 (N.C. Ct. App. 1994) ("it is well established that if an adequate remedy at law may be sought, the court's equitable intervention is obviated") (internal quotation marks and citations omitted); **OK**: *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1289-90 (N.D. Okla. 2016) (concluding that because plaintiffs had an adequate remedy at law available, a claim for unjust enrichment was not).

54

**Fourth**, the unjust enrichment claims of Plaintiffs Romeo, Hawkins, Navarette, Weaver, Chelenyak and Harris fail because Plaintiffs have not plausibly alleged that they conferred a direct benefit to H-D. They all allege they purchased their motorcycles from dealers, and none of them allege they purchased parts directly from H-D. (Compl. ¶¶ 11, 14, 16-18.) Purchasing from a dealership does not suffice to satisfy the requirement under the laws applicable to their claims that the plaintiff confer a "direct benefit" upon the defendant to recover under an unjust enrichment theory.[38] For these reasons, Plaintiffs' unjust enrichment claims should be dismissed.

## V. CERTAIN PLAINTIFFS FAIL TO ALLEGE FACT OF DAMAGE.

Each Plaintiff must allege he or she suffered damages caused by the challenged conduct. *See Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,* 902 F.3d 735, 743 (7th Cir. 2018) ("Proximate causation is an essential element that plaintiffs must prove in order to succeed on any of their [state antitrust, consumer protection, and unjust enrichment] claims" and requires "a direct

---

[38] *See* **FL**: *Kopel v. Kopel*, 229 So.3d 812, 818 (Fla. 2017) (concluding that plaintiff must *directly confer* a benefit to the defendant to prevail on claim for unjust enrichment); **MI**: *Schechner v. Whirlpool Corp.*, 237 F. Supp.3d 601, 617–18 (E.D. Mich. 2017) (dismissing unjust enrichment claims of oven purchasers who did not claim to have purchased products from or interacted directly with manufacturer); *see also In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 428 (S.D.N.Y. 2017) (fact that Michigan plaintiffs purchased their vehicles from third parties rather than directly from GM was "fatal to their unjust enrichment claims."); **NY**: *Carmona v. Spanish Broad. Sys.*, 2009 U.S. Dist. LEXIS 26479, at *6 (N.Y.S.D. Mar. 30, 2009) (concluding that dismissal of unjust enrichment claim was appropriate because plaintiffs "failed to allege any direct dealings, or an actual, substantive relationship, with [the defendant]."); **NC**: *Southwood v. Credit Card Solution*, 2016 U.S. Dist. LEXIS 48039, at *46–47 (E.D.N.C. Feb. 26, 2016) (dismissing four plaintiffs' claims for unjust enrichment for failing to state a benefit directly conferred upon the defendant); **OK**: *Lee v. Enter. Fin. Group*, 2009 U.S. Dist. LEXIS 41517, at *2 (W.D. Okla. May 14, 2009) (dismissing an unjust enrichment claim because plaintiffs did not allege that the defendant was involved at the point of sale); **WA**: *Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wn. App. 762, 256 P.3d 439, 447, n.11 (Wash. Ct. App. 2011) ("[t]o establish a theory of unjust enrichment [a plaintiff] must show a benefit conferred upon the defendant by the plaintiff.") (citations omitted).

relation between the plaintiff's injury and the defendant's behavior.").[39] And although Plaintiffs

seek recovery for alleged overpayment for Harley-Davidson parts (Compl. ¶¶ 5, 98-100), seven of

the fifteen Plaintiffs—Plaintiffs Billings, Chelenyak, Harris, Hawkins, Plinck, Romeo, and

Weaver—do not allege that they purchased such parts (*id.* ¶¶ 6-19). Thus, they have failed to

plausibly allege any such damages caused by the challenged conduct, which requires dismissal of

their claims. *See, e.g., Marion Healthcare, LLC v. S. Ill. Hosp. Servs.*, 2022 U.S. Dist. LEXIS

114392, *13-14 (S.D. Ill. June 28, 2022) (dismissing for failure to allege "actual, quantifiable

damages by reason of the antitrust violation.") (quotation omitted); *Moroz v. Alexico Corp.*, 2008

---

[39] *See also* 15 U.S.C. § 2310(d)(1) (providing cause of action to consumers damaged by a warrantor's failure to comply with obligations under the MMWA); Mass. Ann. Laws ch. 93A, § 9 (providing cause of action to injured person); Mich. Comp. Laws §§ 445.778 and 445.911(2)-(4) (same); Nev. Rev. Stat. Ann. § 598A.210 (same); N.C. Gen. Stat. § 75-16 (same); Fla. Stat. Ann. § 501.211 (same for person suffering a loss); NY CLS Gen Bus § 340 (same for person suffering damages); NY CLS Gen. Bus. Law § 349(h) (providing cause of action for injured person); Wash. Rev. Code Ann. § 19.86.090 (same) and Compl. ¶ 1140 (same); *Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588, 592 (7th Cir. 1998) ("A private suit under the antitrust laws is a suit seeking relief against a statutory tort, and the principle that there is no tort without an injury is applicable to it."); *O.K. Sand & Gravel v. Martin Marietta Technologies*, 36 F.3d 565, 573 (7th Cir. 1994) ("'The plaintiff must establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury.'") (quoting *Greater Rockford Energy & Technology v. Shell Oil*, 998 F.2d 391, 401 (7th Cir. 1993)); *Ames v. Caesars Entm't Corporation*, 2019 U.S. Dist. LEXIS 237024, at *5 (D. Nev. Nov. 26, 2019) ("Damages are an essential element of NDTPA, common law negligence, and fraudulent concealment claims."); *Simon v. Celebration Co.*, 883 So. 2d 826, 833 (Fla. Dist. Ct. App. 2004) ("actual damages is an element of an action for fraud."); *Thompson v. Main St. Auto Sales & Serv., Inc.*, 1999 Mass. App. Div. 260, 263 (1999) ("Damages are an essential element of the tort of deceit"); *Willis v. Green Tree Servicing, LLC*, 2015 U.S. Dist. LEXIS 117047, at *19 (E.D. Mich. Aug. 12, 2015) (damages required for fraud and silent fraud claims); *Consol. Bus Transit, Inc. v. Treiber Grp., LLC*, 97 A.D.3d 778, 779 (N.Y. App. Div.) (same for fraud and fraudulent concealment claims); *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC 128, 140 (N.C. Sup. Ct. Dec. 10, 2018) (dismissing fraud and fraudulent concealment claims and noting that each claim requires "actual damages as an element of the claim"); *Riste v. Estate of McAnally*, 2020 Wash. App. LEXIS 32, at *22 (Wash. Ct. App. Jan. 9, 2020) (noting that damages is a required element of fraud claims under Washington law and affirming summary dismissal of fraud claims in part because plaintiffs could not "show how they were damaged"). This requirement is separate from proving a violation. *See, e.g.*, *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("[P]roof of a [antitrust] violation and of antitrust injury are distinct matters that must be shown independently.").

U.S. Dist. LEXIS 1166, at *18 (E.D. Pa. Jan. 7, 2008) (dismissing MMWA claim for failure to allege damages resulting from alleged violation); *Ames*, 2019 U.S. Dist. LEXIS 237024, at *5 (same for statutory and common law fraudulent concealment claims).

## VI. THE STATUTE OF LIMITATIONS BARS CERTAIN PLAINTIFFS' CLAIMS.

"[T]he statute of limitations may be raised in a motion to dismiss 'if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Sommerfield v. Citigroup Global Mkts. Inc.*, 2016 U.S. Dist. LEXIS 156258, *7 (E.D. Wis. Nov. 10, 2016) (Griesbach, J.) (quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Dismissal is warranted "if the 'relevant dates are set forth unambiguously in the complaint,' and if the plaintiff effectively 'pleads himself out of court' by providing enough facts in his pleading to establish a timing defect in his complaint." *Id.* (quoting *Brooks*, 578 F.3d at 579; *Cancer Found. v. Cerberus Capital Mgmt.*, 559 F.3d 61, 674-75 (7th Cir. 2009)). Here, the Complaint makes clear that certain claims brought by Plaintiffs Demkiv and Koller are time barred.

The statute of limitations for Demkiv's Illinois Consumer Fraud and Deceptive Business Practices Act (Count 27) and the Illinois Antitrust Act (Count 26) claims is three and four years, respectively. 815 Ill. Comp. Stat. Ann. § 505/10a(e); 740 Ill. Comp. Stat. Ann. 10/7. The statute of limitations for Koller's California common law fraud, fraudulent omission, and unjust enrichment claims (Counts 3-5) is three years. Cal. Code Civ. Proc. § 338(d); *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008) (unjust enrichment).

Demkiv and Koller allege they purchased Harley-Davidson motorcycles in June 2016 and March 2017, respectively, with warranties that expired two years later. (*Id.* ¶¶ 9, 10, 112.) Thus, June 2018 and March 2019 are the latest dates that they could have been both injured from purchases influenced by the warranty terms and discovered those terms because Plaintiffs had to know of the terms for them to be the cause of their purchase. (*Id.* ¶ 4; *see also id.* ¶¶ 98, 124, 166,

179.)[40] And that is the latest possible accrual date. *See Smith v. Sterling Nat'l Bank,* 2020 IL App (1st) 190940-U, ¶ 35 ("[K]nowledge that an injury is 'wrongfully caused' is not equated with knowledge of the existence of a cause of action. Rather, when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed.") (quotation omitted); *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 397 (1999) ("[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.' He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements.") (quotations omitted).[41]

Thus, the statute of limitations for Demkiv's Illinois statutory claims ran, at the latest, in June 2021 and 2022, respectively, but she did not sue until January 2023. (Dkt. No. 1, Case No. 1-23-cv-00413.) And the statute of limitations for Koller's common law claims ran, at the latest, in

---

[40] The Illinois antitrust claim generally accrues upon an act that injures plaintiff. *See Farag v. Health Care Serv. Corp*., 2017 U.S. Dist. LEXIS 103302, *33 (N.D. Ill. July 5, 2017) (statute of limitations under Illinois Antitrust Act follows federal law); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) (Sherman Act). The Illinois consumer protection claim accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 78 (2011); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1997) (citing *Knox College v. Celotex Corp*., 88 Ill. 2d 407, 415 (1981)). The California common law claims do not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud." Cal. Code Civ. Proc. § 338(d); *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995) (courts "have read into the statute a duty to exercise diligence to discover the facts"). But the Court need not decide whether the claims accrue upon injury or discovery because they are barred regardless.

[41] Defendants do not concede that this is the correct accrual date, but are not asking the Court to decide the issue on this motion.

March 2022, but he did not sue until August 2022. (Dkt. No. 1, Case No. 3:22-cv-04534.) Accordingly, these claims are time barred and should be dismissed.

## VII.       PLAINTIFFS LACK STANDING TO PURSUE INJUNCTIVE RELIEF.

Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "To have standing for prospective injunctive relief"—one form of relief Plaintiffs seek here (*see, e.g.,* Compl. ¶¶ 101, 146)—"a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). And they must allege such a threat consistent with "the *Twombly-Iqbal* facial plausibility requirement." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Plaintiffs here do not.

Instead, Plaintiffs merely allege past injuries, but "past injury alone is insufficient" to establish standing to seek injunctive relief. *Simic*, 851 F.3d at 738. And because Plaintiffs allege the claimed injurious conduct has stopped (Compl. ¶ 97), their unsupported speculation that the conduct "may" resume (*id.* ¶ 101) is also not enough. *See Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489-90 (7th Cir. 2004) (no standing based on "conjectural" allegations that defendant might seek to enforce a statute previously declared unconstitutional); *Separation of Hinduism from Our Sch. v. Chi. Pub. Sch.*, 2021 U.S. Dist. LEXIS 96490, at *32-35 (N.D. Ill. May 21, 2021) (no standing based on "purely speculative" allegations that the defendant might restart a previously ended program). This is particularly true here where Plaintiffs do not even allege that they still own a Harley-Davidson motorcycle covered by a limited warranty that could possibly be impacted by any resumption of the alleged conduct. (*See* Compl. ¶¶ 6-21.)

The FTC Order also negates any threat of future injury here. *See* Exhibit K (Order) §§ I.A, II.1. "A plaintiff is not entitled to injunctive relief to the extent other existing relief is adequate and

provides substantially the same relief." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1055 (8th Cir. 2018) (quotation omitted) (affirming dismissal for lack of standing where an FTC consent order provided the relief sought by plaintiffs); *see also In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 18 (D.D.C. 2004) (dismissing for lack of standing where plaintiff failed to "articulate any specific action that they seek to enjoin that is not already prohibited by the [Consent] Order"). Because the FTC Order subsumes Plaintiffs' request for injunctive relief here, that request should be dismissed for lack standing. *Id.*; *see also In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 142466, at *19-24 (D.N.J. Oct. 2, 2013) (dismissing injunction claim because a consent order provided the same relief).[42]

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that, pursuant to Fed. R. Civ. P. 12(b), the Court dismiss Plaintiffs' Complaint with prejudice for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction as to Plaintiffs' claims for injunctive relief.

---

[42] Courts reach the same conclusion based on an injunction, *In re Plavix Indirect Purchaser Antitrust Litig.*, 2011 U.S. Dist. LEXIS 8940, at *12-14 (S.D. Ohio Jan. 31, 2011), and a post-suit consent decree, *Imortgage Servs. v. La. Real Estate Appraisers Bd.*, 2023 U.S. Dist. LEXIS 33519, at *9 (M.D. La. Feb. 27, 2023) ("[T]he threat of future enforcement action by the FTC" pursuant to a consent decree "precludes a reasonable expectation that the wrong will be repeated.").

60

Dated:  September 15, 2023                    **DYKEMA GOSSETT PLLC**

By: /s/ Howard B. Iwrey
     Howard B. Iwrey
     Paul L. Nystrom
     39577 Woodward Avenue, Suite 300
     Bloomfield Hills, MI 48304
     Telephone: (248) 203-0700
     hiwrey@dykema.com
     pnystrom@dykema.com

     John M. Thomas
     2723 South State Street, Suite 400
     Ann Arbor, MI 48104
     Telephone: (734) 214-7660
     jthomas@dykema.com

     *Attorneys for Defendants*