UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE: HARLEY-DAVIDSON AFTERMARKET
PARTS MARKETING, SALES PRACTICES,
AND ANTITRUST LITIGATION

Case No. 23-MD-3064
Honorable William C. Griesbach

This document relates to:
All Cases

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

In this multidistrict litigation, fifteen plaintiffs, who purchased Harley-Davidson motorcycles from various dealerships and reside in eleven different states, claim that Defendants Harley-Davidson Motor Company Group LLC and Harley Davidson Motor Company Inc. (collectively, Harley-Davidson) used its warranty to force Harley owners under warranty to purchase Harley-Davidson-branded parts, instead of other available aftermarket parts. Plaintiffs assert that Harley-Davidson's conduct violates the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.*, as well as state antitrust and consumer protection laws. They also assert claims of fraud and unjust enrichment. This case was transferred to this court by the United States Judicial Panel on Multidistrict Litigation on February 8, 2023. On July 17, 2023, Plaintiffs filed a consolidated amended class action complaint. This matter comes before the court on Harley-Davidson's motion to dismiss. For the following reasons, the motion will be granted.

### LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme

Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004). Under the incorporation-by-reference doctrine, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ALLEGATIONS CONTAINED IN THE CONSOLIDATED CLASS ACTION AMENDED COMPLAINT

Harley-Davidson was founded in 1903 and, by 1920, had quickly become the largest motorcycle manufacturer in the world. Consolidated Amended Complaint (CAC) ¶ 26, Dkt. No. 33. Plaintiffs are fifteen individuals who purchased Harley-Davidson motorcycles from dealerships in various states between June 2016 and February 2022. *Id.* ¶¶ 6–19. As of June 2022, Harley-Davidson sold, as a bundle, a motorcycle and a warranty valid for 24 months. *Id.* ¶ 30. This limited warranty begins "from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle." *Id.*

Plaintiffs assert that the limited warranty covers repairs only if the consumer has all services and repairs undertaken by an authorized Harley-Davidson dealer and uses only replacement parts and accessories from authorized Harley-Davidson manufacturers for the

duration of the limited warranty. *Id.* ¶ 102. In other words, customers cannot use third-party manufactured parts or other aftermarket parts for repairs. Plaintiffs contend that, by conditioning sales of motorcycles to the limited warranty's restrictions, authorized Harley-Davidson dealers sell warranty-related services, replacement parts, and accessories at a premium compared to other motorcycle repairers and that Harley-Davidson is able to extract higher-than-usual profits from the repair business. *Id.* Plaintiffs claim that Harley-Davidson illegally tied its motorcycles, and the factory warranties that go with them, to its parts, and that Harley-Davidson parts are overpriced as a result.

Plaintiffs also assert that, even when customers have endeavored to obey Harley-Davidson's dictate to choose only Harley-Davidson-branded parts, they still risk losing warranty coverage. *Id.* ¶ 32. They allege that Harley-Davidson seeks to limit warranty coverage even beyond the scope of the warranty's language. *Id.* Plaintiffs claim that, by incentivizing dealers to void warranties, Harley-Davidson is able to profit by selling the part but avoiding the repair labor costs. *Id.* ¶ 35.

Plaintiffs allege that Harley-Davidson has substantial market power in both the American-made, new, large roadgoing motorcycle market and the Harley-Davidson compatible parts market. *Id.* ¶¶ 39, 93. They assert that Harley-Davidson monopolizes the large American-manufactured motorcycle market to coerce customers into not purchasing compatible parts from its competitors by unlawfully tying its warranty to its parts. *Id.* ¶¶ 97–98.

The consolidated class action amended complaint contains 90 counts: Wisconsin antitrust law, Wis. Stat. §§ 133.01 *et seq.* (Count 1); Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count 2); unjust enrichment – common law (Count 3); fraud – common law (Count 4);

fraudulent concealment/omission – common law (Count 5); various state fraud and antitrust laws (Counts 6–90).

ANALYSIS

A. Magnuson-Moss Warranty Act Claims

Plaintiffs assert that the terms of Harley-Davidson's limited warranty violates the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq*. The MMWA is a "consumer protection statute that requires transparency in warranties on consumer products and establishes minimum criteria for different types of warranties and warranty-like products." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 728 (7th Cir. 2021). Plaintiffs assert that Harley-Davidson violated the MMWA in a number of ways. The court will address each theory in turn.

**1. Tying Provision**

Plaintiffs claim that Harley-Davidson's limited warranty violates the MMWA's so-called "tying provision" by conditioning the limited warranty on the use of authorized Harley-Davidson dealers and authorized Harley-Davidson manufacturer replacement parts and accessories. CAC ¶ 102. The MMWA provides that a warrantor may not condition its written or implied warranty "on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302(c). The Federal Trade Commission's (FTC) interpretation of the MMWA states that "[n]o warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. § 2302(c))." 16 C.F.R. § 700.10(c). It explains that "provisions such as,

4

'This warranty is void if service is performed by anyone other than an authorized "ABC" dealer and all replacement parts must be genuine "ABC" parts,' and the like, are prohibited where the service or parts are not covered by the warranty." *Id.* Plaintiffs argue that the language of the limited warranty itself, as well as statements contained in the Owner's Manual, fall within the group of statements prohibited by the MMWA and § 700.10(c).

Harley-Davidson argues that the MMWA regulations allow a warrantor to limit liability for damage caused by unauthorized parts or modifications. Section 700.10(c) "does not preclude a warrantor from expressly excluding liability for defects or damage caused by 'unauthorized' articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damage was so caused." Harley-Davidson contends that, when all of the statements Plaintiffs rely on are read in context, it is clear the limited warranty excludes warranty coverage for damage caused by unauthorized parts, consistent with § 700.10(c), and implements an EPA Consent Decree under which certain performance modifications will void the powertrain warranty.

As to the limited warranty itself, the Harley-Davidson Limited Motorcycle Warranty is valid for 24 months "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer or (b) the third anniversary of the last day of the model year of the motorcycle." CAC ¶ 30. The exclusions section of the warranty, states, in relevant part:

> This limited warranty will not apply to any motorcycle . . . 1. Which has not been operated or maintained as specified in the owner's manual . . . [and] 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details.

*Id.* ¶ 31. The warranty also excludes coverage for "[d]efects or damage impacting the functionality of powertrain components in a motorcycle that has been tuned using a tuner or calibration that was not covered by a California ARB Executive Order or otherwise approved by EPA." *2019 Harley-Davidson® Owner's Manual: Sportster® Models*, H-D SERVICE INFORMATION PORTAL, https://serviceinfo.harley-davidson.com/sip/content/document/view?viewLatest=true&id=18075 47410618958196&groupId=16#443844!!12!6625 (last visited June 5, 2024). Under the 2017 Consent Decree entered into between the EPA and Harley-Davidson, Harley-Davidson was required to "deny all warranty claims for functional defects of powertrain components if any Defendants have any information to show that such vehicle was tuned using a Tuning Product that was not covered by California ARB Executive Order or otherwise approved by EPA." Dkt. No. 42-12, at ¶ 14(a).

Harley-Davidson asserts that, under general principles of contract interpretation, "contract language is given its plain and ordinary meaning." *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (citing *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996)). It contends that the fact that the limited warranty states that the use of unauthorized parts "may void" the warranty does not mean that it "will void" the warranty and thus does not create a prohibited tie. *See* Defs.' Reply Br. at 14, Dkt. No. 54 (citing *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) ("An unsophisticated consumer would not understand the word 'may' to mean 'will.'")).

Plaintiffs argue that the court should not differentiate between "may" and "will" because "may" merely means "will in some circumstances." Pls.' Br. at 21, Dkt. No. 52. Even under this construction, Harley-Davidson's warranty does not include a prohibited tie by conditioning "the continued validity of a warranty on the use of only authorized repair service and/or authorized

6

replacement parts for non-warranty service and maintenance." *See* § 700.10(c). In other words, because Harley-Davidson's limited warranty does not state that using non-Harley-Davidson parts *will* affect the warranty, it has not improperly tied the warranty to use of Harley-Davidson parts.

Harley-Davidson further asserts that the Owner's Manual provisions referenced in the CAC do not create tie-in provisions that violate the MMWA. First, Plaintiffs point to the first sentence of the "Note" in the "Service Records" section, which provides that "[t]he use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty." CAC ¶ 116. Harley-Davidson contends that Plaintiffs have read this provision out of context because they ignore the second sentence in the paragraph. "Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement." *Young*, 615 F.3d at 823. The second sentence states, "Any alterations to the emission system components, such as the intake and exhaust system, may be in violation of motor vehicle laws." *2019 Harley-Davidson® Owner's Manual: Sportster® Models*, H-D SERVICE INFORMATION PORTAL, *supra*. When the provision is read as a whole, the Service Records Note does not create an impermissible tie. Instead, the provision addresses the types of modifications that may void the powertrain warranty as mandated by the EPA Consent Decree. In any event, like the warranty itself, this provision does not provide that using non-Harley-Davidson parts *will* affect the warranty and thus does not contain an improper tie.

Plaintiffs also refer to certain provisions in the "Warranty and Maintenance" and "Keeping It All Harley-Davidson" sections of the Owner's Manual that state:

> Use only Harley-Davidson approved parts and accessories that have been designed, tested, and approved for your model and model year motorcycle. . . . Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact.

7

CAC ¶ 114.  They also refer to a provision in the "Warranty and Maintenance" section stating that "[u]se of aftermarket performance parts may void all or parts of your limited warranty.  See an authorized Harley-Davidson dealer for details."  *Id.* ¶ 116.

Harley-Davidson asserts that when the Warranty and Maintenance and Keeping It All Harley-Davidson provisions are read as a whole, Harley-Davidson is only warning that "unapproved and untested parts can cause performance and quality problems."  Defs.' Reply Br. at 14.  Those sections provide:

> **Warranty and Maintenance**
>
> This owner's manual contains your new motorcycle limited warranty and your owner's maintenance record.
>
> It is your responsibility as the owner to follow the maintenance schedule at the mileage intervals as specified in the owner's manual.  All of the specified maintenance services must be performed on schedule to keep your limited warranty valid.
>
> Some countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your limited warranty to remain in effect.  Check with your authorized Harley-Davidson dealer for local requirements.
>
> 1. Make an appointment with a Harley-Davidson dealer for inspection and service prior to the first 1,600 km (1000 mi), and as soon as possible after any issues arise.
> 2. Bring this owner's manual with you when you visit your authorized Harley-Davidson dealer to have your motorcycle inspected and serviced.
> 3. Have the dealer technician sign the maintenance record in the owner's manual at the proper mileage interval.  These records should be retained by the owner as proof of proper maintenance.
> 4. Keep receipts covering parts, service or maintenance performed.
>
> These records should be transferred to each subsequent owner.
>
> Use only Harley-Davidson approved parts and accessories that have been designed, tested and approved for your model and model year motorcycle.

8

Case 2:23-md-03064-WCG    Filed 06/05/24    Page 8 of 19    Document 55

> Use of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details.
>
> Harley-Davidson authorized dealerships are independently owned and operated and may sell and install parts and accessories that are not manufactured or approved by Harley-Davidson for use on your motorcycle. Therefore, you should understand that Harley-Davidson is not and cannot be responsible for the quality, suitability, or safety of any non-Harley-Davidson part, accessory or design modification, including labor, which may be sold and/or installed by authorized Harley-Davidson dealerships.
>
> **Keeping It All Harley-Davidson**
>
> Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact. Not all Harley-Davidson parts and accessories are appropriate for your model or model year motorcycle.
>
> **NOTICE**
>
> It is possible to overload the vehicle's charging system by adding too many electrical accessories. If the combined electrical accessories operating at any one time consume more electrical current than the vehicle's charging system can produce, the electrical consumption can discharge the battery and cause damage to the vehicle's electrical system. (00211d)
>
> **NOTE**
>
> Installing off-road or competition parts to enhance performance may void all or parts of your limited warranty. See the Harley-Davidson Motorcycle Limited Warranty in this owner's manual or an authorized Harley-Davidson dealer for details.

*2019 Harley-Davidson® Owner's Manual: Sportster® Models*, H-D SERVICE INFORMATION PORTAL, *supra*.

When the provisions are read in their entirety, Harley-Davidson is simply noting that it would not be responsible for defects or damage caused by "unauthorized" articles or service. This limitation is proper under § 700.10(c). As to the provision indicating that "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-

Davidson dealer for details," CAC ¶ 116, use of aftermarket *performance* parts may void the powertrain warranty under the EPA Consent Decree.

In short, Harley-Davidson explains to buyers that the limited warranty does not cover damage caused by unauthorized modifications, which is authorized by the MMWA, and that modifications to improve performance voids the powertrain warranty, as required by the EPA Consent Decree. Accordingly, Plaintiffs have failed to state a claim that Harley-Davidson's limited warranty violates the MMWA.

### 2. Disclosure Rule

Plaintiffs also allege that the warranty violates the MMWA's "disclosure rule." Under the MMWA, a warrantor must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a); *see also* 16 C.F.R. § 701.3(a)(2) (requiring warrantors to provide a "clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty"). This requirement is designed to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a).

Plaintiffs allege that Harley-Davidson violates the MMWA because "it conceals the full terms of the Limited Warranty and instead instructs consumers to consult with a Harley-Davidson dealer for full details." CAC ¶ 123. Even though Plaintiffs received the Limited Warranty documents, *id.* ¶ 124, Plaintiffs contend that Harley-Davidson has "secret standards that could only be learned, if at all, by consulting a dealer or by costly trial and error that, at best, *risked* voiding the warranty." Pls.' Br. at 27, Dkt. No. 50. But Plaintiffs have not alleged which additional warranty terms were not included in the warranty documents they received or how the lack of such

10

information in the warranty impacted them. Therefore, Plaintiffs have failed to state a "disclosure rule" violation.

### 3. Pre-Sale Availability Rule

Plaintiffs allege that Harley-Davidson failed to comply with the MMWA's pre-sale warranty obligations. *See* 15 U.S.C. § 3202(b). The MMWA requires the FTC to promulgate rules "requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him." 15 U.S.C. § 2302(b)(1)(A). The FTC's pre-sale availability rule is codified at 16 C.F.R. § 702.3. Section 702.3 describes the obligations of a warrantor, such as Harley-Davidson, to provide a copy of its warranty with its product. That section states:

> (1) A warrantor who gives a written warranty warranting to a consumer a consumer product actually costing the consumer more than $15.00 shall:
>
> (i) Provide sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more of the following means:
>
> (A) Providing a copy of the written warranty with every warranted consumer product;
>
> (B) Providing a tag, sign, sticker, label, decal or other attachment to the product, which contains the full text of the written warranty;
>
> (C) Printing on or otherwise attaching the text of the written warranty to the package, carton, or other container if that package, carton or other container is normally used for display purposes. If the warrantor elects this option a copy of the written warranty must also accompany the warranted product; or
>
> (D) Providing a notice, sign, or poster disclosing the text of a consumer product warranty. If the warrantor elects this option, a copy of the written warranty must also accompany each warranted product.
>
> (ii) Provide catalog, mail order, and door-to-door sellers with copies of written warranties necessary for such sellers to comply with the requirements set forth in paragraphs (c) and (d) of this section.

16 C.F.R. § 702.3(b)(1).

Plaintiffs allege that "Harley-Davidson violates this regulation because it does not provide its authorized dealers with signs displaying the text of the Limited Warranty, or otherwise require its dealers to make the Limited Warranty terms available to all customers before purchase." CAC ¶ 121. But providing a sign with the text of the consumer product warranty is only one way that a warrantor may comply with the requirements of § 702.3. In this case, Harley-Davidson provides a copy of the written warranty with every warranted consumer product, in accordance with § 702.3(b)(1)(i)(A). Plaintiffs do not allege in the CAC that Harley-Davidson did not include a copy of the written warranty with each motorcycle. Therefore, Plaintiffs have failed to state a claim for a violation of the MMWA and § 702.3(b)'s "pre-sale availability rule."

**B. Antitrust Claims**

Plaintiffs allege that Harley-Davidson's conduct created an unlawful tying arrangement, which they contend constitutes a restraint of trade and attempted monopolization. Agreements in restraint of trade and attempted monopolization are prohibited under the Sherman Act, 15 U.S.C. §§ 1–2. Because federal law prohibits indirect purchasers, like Plaintiffs, who purchased motorcycles through dealers, rather than directly from Harley-Davidson, from pursuing damages under the Sherman Act, Plaintiffs make claims under various state antitrust laws. The parties nevertheless agree that federal and state antitrust laws are generally subject to a similar analysis, and they did not attempt to distinguish between federal and state law in their briefs. Accordingly, for purposes of determining whether Plaintiffs have adequately alleged antitrust violations, the court will also rely on federal cases.

"A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product.'" *Siva v. Am. Board of*

12

*Radiology*, 38 F.4th 569, 573 (7th Cir. 2022) (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)). "The traditional antitrust concern with such an arrangement is that if the seller of the tying product is a monopolist, the tie-in will force anyone who wants the monopolized product to buy the tied product from him as well, and the result will be a second monopoly." *Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 592 (7th Cir. 2008). Not all ties are prohibited, however, as "many 'are fully consistent with a free, competitive market.'" *Siva*, 38 F.4th at 573 (quoting *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006)). "A tie is illegal only when the seller exploits its control over the tying product to force the buyer into the purchase of a tied product and in so doing coerces the abdication of buyers' independent judgment as to the tied product's merits and insulates it from the competitive stresses of the open market." *Id.* (cleaned up). To state a claim of an illegal tying arrangement, a plaintiff must allege four elements: (1) the challenged tying arrangement must involve two separate products or services; (2) the defendant has sufficient economic power in the tying market to restrain free competition in the tied market product; (3) the tie affects a not-insubstantial amount of interstate commerce; and (4) the defendant has some economic interest in the sales of the tied product. *Id.* at 574 (citing *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 316 (7th Cir. 2006)). As to attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citation omitted).

Harley-Davidson asserts that the CAC does not contain sufficient allegations to establish a tying arrangement because "Plaintiffs have not alleged that consumers were forced to buy Harley-Davidson parts in order to buy a motorcycle." Defs.' Br. at 42, Dkt. No. 20. It contends that, because consumers could buy a motorcycle without buying Harley-Davidson parts, there is no

13

Case 2:23-md-03064-WCG   Filed 06/05/24   Page 13 of 19   Document 55

tying problem. *Id.* (citing *Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*, 96 F.3d 10, 18 (1st Cir. 1996) ("Where a tying product has not been withheld, there is no tie.")).

Plaintiffs cite *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), for the proposition that an illegal tying arrangement can consist of forcing a promise not to buy from a competitor, which it contends Harley-Davidson has done here. In *Eastman Kodak Co.*, Kodak sold photocopiers and micrographic equipment as well as services and replacement parts for its equipment. *Id.* at 454. Independent service organizations (ISOs) also serviced and repaired Kodak's equipment. *Id.* Kodak implemented a policy to make it more difficult for ISOs to compete with Kodak in servicing its equipment. In particular, Kodak implemented a policy that it would only sell replacement parts to "buyers of Kodak equipment who use Kodak service or repair their own machines." *Id.* at 458. It also limited "ISO access to other sources of Kodak parts." *Id.* Independent original-equipment manufacturers agreed that they "would not sell parts that fit Kodak equipment to anyone other than Kodak." *Id.* As a result of Kodak's policy, ISOs were unable to obtain parts from reliable sources, many ISOs were forced out of business, and customers were forced to switch to Kodak service, even though they preferred ISO service. *Id.* at 459. The Supreme Court recognized a tie between repair services and replacement parts: "[t]he record indicates that Kodak would sell parts to third parties only if they agreed not to buy service from ISO's." *Id.* at 463.

While Kodak imposed tying conditions on the purchase of parts, Harley-Davidson has not forced such conditions here. "A tie only exists where 'the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one.'" *Aerotec Int'l, Inc. v. Honeywell Int'l., Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (quoting 10 PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 1752b (3d ed. 2011)).

14

In this case, Harley-Davidson has not tied the sale of motorcycles to parts. It has not imposed tying conditions on the purchase of parts or forced buyers to promise not to buy parts from a competitor. The CAC contains no allegations that buyers were explicitly precluded from buying a motorcycle without agreeing to purchase Harley-Davidson parts.

Plaintiffs nevertheless assert that ties can be implied when a seller makes it too expensive or burdensome to use a competitor's product. Indeed, a tie need not be explicit to be found actionable. *See id.* at 1179 (citations omitted). "When a defendant adopts a policy that makes it unreasonably difficult or costly to buy the tying product (over which the defendant has market power) without buying the tied product from the defendant, it 'forces' buyers to buy the tied product from the defendant and not from competitors." *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 272 (6th Cir. 2015) (citations omitted).

Plaintiffs' theory is that customers purchasing new Harley-Davidson motorcycles (bundled with warranties) were forced to buy Harley-Davidson parts or risk losing warranty coverage or completely revoking warranty protection. Plaintiffs assert that, as a result, the terms of the warranty make it too expensive or burdensome to use a competitor product. The CAC does not contain allegations plausibly suggesting that foregoing warranty coverage is so costly as to be considered economic forcing. Plaintiffs contend that they cannot effectively forecast the amounts of any potential repairs or calculate the lifecycle cost of their motorcycles. Instead, they conclusorily assert that the risk of losing warranty coverage drives up the cost of owning a motorcycle altogether.

But the alleged risk of losing warranty coverage in itself is not the type of economic coercion or forcing that constitutes a tie under antitrust law. *See DXS, Inc. v. Siemens Med. Sys., Inc.*, 991 F. Supp. 859, 864 (E.D. Mich. 1997) ("Plaintiff's claim based on tying of warranted parts

15

and service cannot succeed because Defendant never required parts and service to be purchased together."). "[I]t is well established that warranties that are not sold as a separate product do not result in consumer coercion if the warranty sets forth requirements" of the warranty's applicability. *Fido's Fences v. Canine Fence Co.*, 672 F. Supp. 2d 303, 312 (E.D.N.Y. 2009). That is because limits to warranty protection "reflect a defendant's unwillingness to extend free repair or replacement services to usage of its products that it cannot control." *See Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 871 (Fed. Cir. 1997). In this case, new Harley-Davidson motorcycles are bundled with a two-year limited warranty that lists certain restrictions that may void the warranty. "Such language is a long way from requiring a buyer to purchase [the tied product] from defendant as a condition of purchasing [the tying product]." *RX Sys., Inc. v. Med. Tech. Sys., Inc.*, No. 94C50358, 1995 WL 577659, at *5 (N.D. Ill. Sept. 29, 1995); *see also Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (holding that manufacturer's recommendation using approved fluid in automatic transmissions and warning that damage to transmissions caused by the use of other fluids may not be covered by the automobile warranty "is not the degree of coercion necessary to a tying arrangement"). In other words, even if buyers of Harley-Davidson motorcycles had to forego warranty coverage to buy a non-Harley-Davidson part, there is no illegal tying arrangement. *See Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996) (holding that plaintiff did not establish a tying arrangement when the buyer is free to take either the tying or tied product by itself—"[a]n owner of a new Xerox copier could forego the benefits of the warranty, buy service from Xerox or an independent provider, and purchase cartridges from the vendor of its choice"); *RX Sys.*, 1995 WL 577659, at *5 ("A purchaser remains free to buy pill cards from other suppliers and modify the machine accordingly so long as it is

willing to forego the protections provided by the warranty."). For these reasons, Plaintiffs have failed to allege an illegal tying arrangement that violates antitrust laws.

As to their attempted monopolization claim, Plaintiffs rely on the same purported anticompetitive conduct they relied on for their tying claim. Because Plaintiffs have not alleged a tying violation, they have failed to allege facts to support that Harley-Davidson's actions also constitute an attempt to monopolize. *See Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1191 n.3 (9th Cir. 1984) ("[Plaintiff's] failure to prove a substantive tying violation precludes it from claiming that [defendant's] actions in that respect also constituted an attempt to monopolize."). Accordingly, Plaintiffs' antitrust claims are dismissed.

## C. Fraud-Based Claims

Plaintiffs assert claims of common law fraud and fraudulent concealment as well as various claims based on allegations of fraudulent conduct. Harley-Davidson asserts that Plaintiffs have failed to plead these claims with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A plaintiff satisfies the heightened pleading requirements of Rule 9(b) by alleging the "who, what, when, where, and how" of the alleged fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted).

Plaintiffs allege that Harley-Davidson's limited warranty provided Plaintiffs and class members with false or misleading information. But what exactly Plaintiffs claim Harley-Davidson misrepresented or omitted is not entirely clear from the allegations in the CAC. Plaintiffs allege that the limited warranty indicated that Plaintiffs and class members would be unable to use unauthorized Harley-Davidson parts on their motorcycles. CAC ¶¶ 165–66. Yet, the limited

17

warranty states that "unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle) . . . may void all or parts of your new motorcycle limited warranty." *Id.* ¶ 31. In other words, the warranty did not explicitly foreclose the use of non-Harley-Davidson parts as Plaintiffs suggest. Plaintiffs also allege that Harley-Davidson indicated to Plaintiffs and class members that they would be unable to repair their motorcycle unless they used authorized service providers. *Id.* ¶ 167. At the same time, Plaintiffs claim that Harley-Davidson failed to disclose that the limited warranty prevented Plaintiffs from repairing their motorcycles with their preferred service personnel or by themselves. *Id.* ¶ 178. Because the allegations are internally inconsistent, they cannot state a claim upon which relief can be granted.

To the extent Plaintiffs' claims are based on their allegation that Harley-Davidson misrepresented that Harley-Davidson's repair restrictions were binding, even though such restrictions are unlawful and unenforceable, Plaintiffs have failed to state a claim. *Id.* ¶ 168. The warranty does not explicitly state that its restrictions "were binding and enforceable," and the CAC does not contain allegations to suggest when, where, or how Harley-Davidson made such misrepresentations or omissions. *See Schaer v. Newell Brands Inc.*, No. 22-C-30004, 2023 WL 2033765, at *2 (D. Mass. Feb. 16, 2023). Because the CAC fails to state a claim in accordance with Rule 9(b), Plaintiffs' fraud claims against Harley-Davidson must be dismissed.

## D. Unjust Enrichment Claims

Plaintiffs also assert claims of unjust enrichment. They allege that, due to Harley-Davidson's unlawful conduct, Harley-Davidson received and/or was conferred a benefit from Plaintiffs through the purchase of Harley-Davidson motorcycles and compatible parts at supra-competitive prices. CAC ¶ 160. Plaintiffs assert that Harley-Davidson has and will continue to

18

be unjustly enriched by the receipt of unlawfully inflated prices and profits for comparable parts and that it is inequitable and unjust for Harley-Davidson to retain these profits. *Id.* ¶¶ 160–62. Plaintiffs' allegations of unlawful conduct are based on the same allegations as Plaintiffs' other claims. Because Plaintiffs' other claims do not survive, Plaintiffs' unjust enrichment claims suffer the same fate. *See Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). Accordingly, Plaintiffs' unjust enrichment claims must be dismissed.

## CONCLUSION

For these reasons, Harley-Davidson's motion to dismiss (Dkt. No. 41) is **GRANTED**. Harley-Davidson's motion to strike certain class allegations (Dkt. No. 44) and motion to stay the claims of certain Plaintiffs pending arbitration (Dkt. No. 39) are **DENIED as moot**. Plaintiffs' consolidated amended complaint is dismissed. The dismissal is without prejudice, and Plaintiffs will be allowed 30 days from the date of this order in which to file an amended complaint. If no amended complaint is filed within the time allowed, the case will be dismissed.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of June, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge